# 23-8093

## United States Court of Appeals
## for the Second Circuit

JEREMY KELLOGG and JONATHAN HARMON,

*Plaintiffs-Appellants,*

*against*

JONATHAN C. NICHOLS, *individually and in his capacity as statutory licensing officer pursuant to Penal Law 265.00 (10); 400.00, et seq.*

*Defendant-Appellee.*

On Appeal from the United States District Court for the
Northern District of New York

## BRIEF FOR APPELLANTS

THE BELLANTONI LAW FIRM PLLC
Attorneys for Plaintiffs-Appellants
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090
abell@bellantoni-law.com

Amy L. Bellantoni
March 14, 2024

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ...................................................................... i

PRELIMINARY STATEMENT ............................................................... 1

SUMMARY OF ARGUMENTS ............................................................... 3

ISSUE PRESENTED FOR REVIEW ....................................................... 6

JURISDICTIONAL STATEMENT ......................................................... 6

PROCEEDINGS BELOW ...................................................................... 7

STANDARD OF REVIEW ..................................................................... 7

ARGUMENT ......................................................................................... 8

I. *LIBERTARIAN PARTY* CONFLICTS WITH NEW YORK STATE'S
   INTERPRETATION OF ITS JUDICIAL LICENSING OFFICERS ................... 8

   A. Federal Courts Are Bound To Defer To State Interpretation ..................... 8

   B. As a Matter of New York Law, Nichols Was Not Acting In A
      'Judicial Capacity' .......................................................................... 9

   C. The Question is: Under What Authority was Nichols Acting When He
      Denied Appellants' Handgun License Applications? The Answer is:
      Penal Law 265.00(10), Not the Judiciary Law or Common Law ............. 10

        *i. County Court Judges Have No Jurisdiction to Issue
            Pistol Licenses* ......................................................... 10

        *ii. Handgun 'Licensing Officer' is a Creature of Statute* ............... 11

        *iii. Immunity Historically Accorded At Common Law; There is No
             Common Law Counterpart* ......................................... 12

D. Unlike Judicial Orders and Judgments, Licensing Determinations Cannot Be Directly Appealed; New York Established A 'Special Proceeding' Under CPLR Article 78 For Licensing Officer Challenges ........................ 14

E. Further Distinctions Between Pistol Licensing and Judicial Process ......... 16

II. JUDICIAL IMMUNITY WAS CREATED TO PROTECT DECISIONS INVOLVING 'CONTROVERSIES' ................................................. 19

A. No Immunity From Nonjudicial Acts .......................................... 21

B. Firearm Licensing Is Not A Judicial Act ...................................... 21

III. INJUNCTIVE AND DECLARATORY RELIEF IS PROPER HERE ............. 24

A. The 1996 Amendment Does Not Apply to Executive Action ...................... 24

B. Nevertheless, Prospective Declaratory Relief is Proper ............................. 26

IV. THE DISTRICT COURT'S ANALYSIS OF APPELLANTS' CLAIMS FOR DECLARATORY RELIEF WAS ERRONEOUS................................................. 27

A. Pistol Licensing Officers Do Not 'Adjudicate Claims' ............................. 28

B. Complaint *Does* Allege That Nichols Enforces The Licensing Scheme ..... 29

C. New York's County Court Judges Had Direct Input into the 1963 Revisions to the State Licensing Regime ...................................... 30

V. A CASE AND CONTROVERSY EXISTED BELOW.................................... 31

VI. APPELLANTS COULD NOT, AND HAD NO OBLIGATION TO, SEEK A REMEDY IN STATE COURT .................................................... 33

A. Declaratory Relief is Not Available Under CPLR Article 78 .................... 33

B. § 1983 Plaintiffs Are Not Required to Seek A State Court Remedy........... 33

VII. APPELLANTS' REMEDY AT LAW IS INADEQUATE.............................. 34

VIII. AFFIRMING THE DISTRICT COURT FACILITATES THE VIOLATION OF APPELLANTS' RIGHT TO EQUAL PROTECTION............................ 36

IX. IF REVERSING THE DISTRICT COURT IS DEEMED A REVERSAL OF *LIBERTARIAN PARTY*, MINI EN-BANC IS REQUESTED ............................ 36

CONCLUSION ..................................................................... 38

CERTIFICATE OF COMPLIANCE......................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abekassis v. New York City, New York*,
  2021 WL 852081 (2d Cir. Mar. 4, 2021) .................................................. 4

*Allen v. DeBello*,
  861 F.3d 433 (3d Cir. 2017) ...................................................................... 28

*Antoine v. Byers & Anderson, Inc.*,
  508 U.S. 429 (1993) ................................................................................... 22

*Baughcum v. Jackson*,
  92 F.4th 1024 (11th Cir. 2024) ........................................................... 23, 24

*Beacon Theatres, Inc. v. Westover*,
  359 U.S. 500 (1959) ................................................................................... 34

*Bell v. Tofany*,
  43 A.D.2d 652 (1973) ................................................................................ 15

*Bliven v. Hunt*,
  579 F.3d 204 (2d Cir. 2009) ............................................................... 20, 21

*Blouin ex rel. Est. of Pouliot v. Spitzer*,
  356 F.3d 348 (2d Cir. 2004) ...................................................................... 14

*Boothe v. Hammock*,
  605 F.2d 661 (2d Cir. 1979) ...................................................................... 37

*Bradley v. Fisher*,
  80 U.S. (13 Wall.) 335 (1871) ................................................................... 21

*Brandon E. ex rel. Listenbee v. Reynolds*,
  201 F.3d 194 (3d Cir. 2000) ...................................................................... 27

*Buckley v. Fitzsimmons*,
  509 U.S. 259 (1993) ................................................................................... 14

i

*Burns v. Reed*,
   500 U.S. 478 (1991) ........................................................................ 12

*Bush v. Palm Beach County Canvassing Bd.*,
   531 U.S. 70 (2000) .......................................................................... 8

*Butz v. Economou*,
   438 U.S. 478 (1978) ....................................................................... 19

*Caetano v. Massachusetts*,
   577 U.S. 411 (2016) ......................................................................... 3

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016) .............................................................. 8

*Choudary v. Limandri*,
   38 Misc. 3d 1227(A) (2012) .......................................................... 15

*Clavin v. Mitchell*,
   131 A.D.3d 612 (2015) ................................................................... 15

*Cnty. of Westchester v. D'Ambrosio*,
   244 A.D.2d 334 (2d Dept. 1997) ............................................ 10, 14

*Damico v. California*,
   389 U.S. 416 (1967) ....................................................................... 34

*De Milio v. Borghard*,
   55 N.Y.2d 216 (1982) .................................................................... 17

*Derry v. Fufidio*,
   192 A.D.3d 1099 (2d Dept. 2021) ................................................. 17

*Deshawn E. by Charlotte E. v. Safir*,
   156 F.3d 340 (2d Cir. 1998) .......................................................... 32

*Diamond v. Pennsylvania State Educ. Ass'n*,
   972 F.3d 262 (3d Cir. 2020) .......................................................... 13

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ................................................................ 3, 16

*Doscher v. Sea Port Grp. Sec.*, LLC,
    832 F.3d 372 (2d Cir. 2016) ............................................... 37

*Elias v. Rolling Stone LLC*,
    872 F.3d 97 (2d Cir. 2017) ................................................... 7

*Ex parte Fahey*,
    332 U.S. 258 (1947) ............................................................. 35

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ............................................................. 15

*Falso v. McLaughlin*,
    72 A.D.2d 641 (1979) ........................................................... 15

*Federal Power Comm'n v. Idaho Power Co.*,
    344 U.S. 17 (1952) ............................................................... 22

*Federal Radio Comm'n v. General Electric Co.*,
    281 U.S. 464 (1930) ............................................................. 23

*Ferrick v. State*,
    198 A.D.2d 822 (4th Dept. 1993) ....................................... 17

*Finkel v. Stratton Corp.*,
    962 F.2d 169 (2d Cir. 1992) ............................................... 37

*Forrester v. White*,
    484 U.S. 219 (1988) ...................................................... 21, 22

*Goldstein v. Galvin*,
    719 F.3d 16 (1st Cir. 2013) ................................................. 22

*Green v. Mansour*,
    474 U.S. 64 (1985) ............................................................... 26

*Harper v. Neary*,
2024 WL 950149 (2d Dept. 2024) ........................................................ 18, 33, 35

*Heck v. Humphrey*,
512 U.S. 477 (1994) ................................................................................. 13

*Horizons Int'l, Inc. v. Baldrige*,
811 F.2d 154 (3d Cir. 1987) ................................................................. 16

*Husejnovic v. DeProspo*,
2024 WL 950125 (N.Y. App. Div. Mar. 6, 2024) ........................................... 15, 16

*Imbler v. Pachtman*,
424 U.S. 409 (1976) ................................................................................. 12, 14

*In re Dairy Mart Convenience Stores, Inc.*,
411 F.3d 367 (2d Cir. 2005) ................................................................. 25

*In re Shuler*,
67 A.D.3d 1020 (2d Dept. 2009) ......................................................... 10

*Ingram v. Kumar*,
585 F.2d 566 (2d Cir. 1978) ................................................................. 37

*Jackson v. Anderson*,
149 A.D.3d 933 (2d Dept. 2017) ......................................................... 33

*Jenkins v. City of New York*,
478 F.3d 76 (2d Cir. 2007) ................................................................. 13

*Katz v. Donna Karan Co.*,
872 F.3d 114 (2d Cir. 2017) ................................................................. 7

*Kelsey v. Clark*,
2023 WL 1980307 (2d Cir. Feb. 14, 2023) ........................................... 26, 27

*LaCorte Elec. Const. & Maint., Inc. v. Centron Sec. Sys., Inc.*,
894 F. Supp. 80 (N.D.N.Y. 1995) ......................................................... 9

*Lander v. Hartford Life & Annuity Ins. Co.*,
   251 F.3d 101 (2d Cir. 2001) ........................................................... 9

*Libertarian Party of Erie Cnty. v. Cuomo*,
   970 F.3d 106 (2d Cir. 2020) ....................................................... 2, 8

*Lindke v. Tomlinson*,
   31 F.4th 487 (6th Cir. 2022) ........................................................ 27

*M.M. v. New York State Ct. of Appeals*,
   2022 WL 1565694 (2d Cir. May 18, 2022) ................................ 5, 25

*Malley v. Briggs*,
   475 U.S. 335 (1986) ..................................................................... 13

*Mantena v. Johnson*,
   809 F.3d 721 (2d Cir. 2015) ........................................................... 7

*Matter of Panaro*,
   250 A.D.2d 616 (2d Dept. 1998) ................................................. 10

*Matter of Schnell v. Spano*,
   120 A.D.2d 669 (2d Dept. 1986) ................................................. 10

*McShane v. Moldovan*,
   172 F.2d 1016 (6th Cir. 1949) ..................................................... 19

*Memphis Cmty. Sch. Dist. v. Stachura*,
   477 U.S. 299 (1986) ..................................................................... 13

*Mireles v. Waco*,
   502 U.S. 9 (1991) ........................................................................... 8

*Monroe v. Pape*,
   365 U.S. 167 (1961) ..................................................................... 13

*Morrison v. Lipscomb*,
   877 F.2d 463 (6th Cir. 1989) ....................................................... 22

*Mountainview Coach Lines, Inc. v. Storms*,
　102 A.D.2d 663 (2nd Dept 1984) .......................................................... 10

*Muldoon v. Cuomo*,
　54 A.D.2d 566 (1976).......................................................................... 15

*Nieves v. Bartlett*,
　⸺ U.S. ⸺, 139 S. Ct. 1715 (2019) ................................................ 13

*Patsy v. Bd. of Regents of State of Fla.*,
　457 U.S. 496 (1982) ............................................................................ 34

*Pierson v. Ray*,
　386 U.S. 547 (1967) ....................................................................... 12, 19

*Portalatin v. Graham*,
　624 F.3d 69 (2d Cir. 2010) ................................................................... 8

*Pulliam v. Allen*,
　466 U.S. 522 (1984) .............................................................. 26, 34, 35

*Raymond Loubier Irrevocable Tr. v. Loubier*,
　858 F.3d 719 (2d Cir. 2017) ............................................................. 7, 8

*Rehberg v. Paulk*,
　566 U.S. 356 (2012) ....................................................................... 12, 13

*Robbins v. Warhit*,
　198 A.D.3d 790 (2d Dept. 2021) ........................................................ 33

*Sanchez v. Kelly*,
　799 N.Y.S.2d 164 (Sup. Ct. 2004) ..................................................... 17

*Shipping Corp. of India Ltd. v. Jaldhi*,
　585 F.3d 58 (2d Cir. 2009) ................................................................. 37

*Shuttlesworth v. Birmingham*,
　394 U.S. 147 (1969) ........................................................................... 18

vi

*Steffel v. Thompson*,
　　415 U.S. 452 (1974) ............................................................ 34

*Stone v. Monaghan*,
　　286 A.D. 878 (1955) ............................................................ 15

*Supreme Court of Virginia v. Consumers Union of United States, Inc.*,
　　446 U.S. 719 (1980) ............................................................ 21

*Taveras v. New York City, New York*,
　　2023 WL 3026871 (S.D.N.Y. Apr. 20, 2023) ............................ 4

*United States v. Crosby*,
　　397 F.3d 103 (2d Cir. 2005) .......................................... 6, 37

*United States v. Fernandez-Antonia*,
　　278 F.3d 150 (2d Cir. 2002) .......................................... 2, 8

*United States v. Parkes*,
　　497 F.3d 220 (2d Cir. 2007) ............................................ 37

*United States v. Roglieri*,
　　700 F.2d 883 (2d Cir. 1983) ............................................ 37

*United States v. Wilkerson*,
　　361 F.3d 717 (2d Cir. 2004) ............................................ 37

*Waltier v. N.Y. Police Dep't*,
　　856 F. Supp. 196 (S.D.N.Y. 1994) .................................... 34

*Weinstein v Ryder*,
　　2021 US Dist. LEXIS 55410, at *8 .................................... 34

*Whole Woman's Health*,
　　595 U.S. 30 (2021) .......................................................... 5, 25

## Statutes

18 U.S.C. 922(g) ........................................................................... 18

28 U.S.C. §1291 ............................................................................ 6

28 U.S.C. § 1331 ........................................................................... 6

42 U.S.C. § 1983 ................................................................... Passim

N.Y. Penal Law § 265.00 (10) ...................................................... 1

N.Y. Const .Art. VI, § 11 ...................................................... 10, 11

Pub. L. No. 104–317, 110 Stat. 3847 ......................................... 26

## Rules

CPLR 217 ...................................................................................... 17

CPLR 506(b)(1) ........................................................................... 10

CPLR 5513 .................................................................................... 17

CPLR 7801 ............................................................................ 10, 12

## Other Authorities

In Banc Practice in the Second Circuit, 1984–1988,
    55 Brook. L.Rev. 355 (1989) .................................................. 38

New York State Governor's Bill Jacket, Senate Bill 136 (1963) ........................... 30

## PRELIMINARY STATEMENT

To lawfully possess handguns in New York, individuals must apply for and obtain a license. Applications are made to the statutorily defined handgun licensing officer for the county of residence. See, Penal Law § 400.00(3).

In New York City, Nassau County, and Suffolk County ("Downstate"), the statutory licensing officer also employed as a police commissioner.[1] In every other county in New York ("Upstate"), the statutory licensing officer is also employed as a "judge or justice of a court of record having his office in the county of issuance"[2], typically, a county court judge.

Downstate residents aggrieved by the denial of the right to possess handguns may institute an action under 42 U.S.C. § 1983 against the licensing officer, individually and in their official capacity, for compensatory damages and equitable relief for violations of their Second Amendment rights.

Upstate residents, however, are being deprived of recourse to seek the same redress. Through a misunderstanding of New York State law, and/or failure to defer to New York's interpretation of its own statutes, existing caselaw of this Court is

---

[1] The Suffolk County Sheriff is the licensing officer for the eastern part of Suffolk County.

[2] "Licensing officer" means in the city of New York the police commissioner of that city; in the county of Nassau the commissioner of police of that county; in the county of Suffolk the sheriff of that county except in the towns of Babylon, Brookhaven, Huntington, Islip and Smithtown, the commissioner of police of that county; for the purposes of section 400.01 of this chapter the superintendent of state police; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance. N.Y. Penal Law § 265.00 (10).

1

depriving Upstate residents of that right. See, e.g., *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), abrogated on other grounds by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

When Upstate residents Jeremy Kellogg and Jonathan Harmon brought a § 1983 action against the licensing officer in their county for denying their applications to lawfully possess handguns, the district court followed the path set by this Court *Libertarian Party*.

"Thus, because the judges were acting in their judicial capacities when ruling on the applications, the Circuit held [in *Libertarian Party*] that they were entitled to absolute immunity from the claims asserted against them in their individual capacities." [A37] citing *Libertarian Party*, at 125.

But *Libertarian Party* decided the issue of judicial immunity without regard to New York's interpretation of its own laws, which led to an error of law in this Circuit that prevents Upstate New Yorkers of the right to seek redress against administrative licensing officers who violate their constitutional rights.

It is well established that federal courts must defer to a state's interpretation of its own laws. *United States v. Fernandez-Antonia*, 278 F.3d 150, 162 (2d Cir. 2002). According to New York's appellate courts and legislature, a county court judge acting in his capacity as a statutory pistol licensing officer pursuant to Penal

2

Law 400.00, *et. seq.* is "acting in an *administrative capacity*" -- not a judicial one.

This Circuit should not continue to hold otherwise.

## SUMMARY OF ARGUMENTS

Jeremy Kellogg and Jonathan Harmon ("Appellants") are Upstate residents who sought to exercise the preexisting, guaranteed, individual right to possess and carry weapons in common use for self-defense. *District of Columbia v. Heller,* 554 U.S. 570, 592 (2008).

Appellants have no disqualifiers to firearm possession under federal or state law [A17]. Each lawfully owns long guns, which were purchased after passing a federal background check through NICS (National Instant Criminal Background Check System) [A18]. Notwithstanding Appellants' entitlement to possess *all* weapons in common use[3] for self-defense, their applications were denied by the statutory pistol licensing officer for Columbia County, Appellee Jonathan Nichols ("Nichols"). As an Upstate licensing officer, Nichols is also a county court judge.

Appellants commenced a § 1983 action in the Northern District court for, *inter alia,* violations of their Second Amendment rights, as applied to the states through the Fourteenth Amendment.

---

[3]  *Caetano v. Massachusetts*, 577 U.S. 411, 411–412 (2016) (per curiam) (stun guns).

Appellants sued Nichols in his official capacity as a statutory licensing officer, seeking declaration that the state licensing statutes were unconstitutional and an injunction against their enforcement.

And, to avoid the unilateral issuance of a pistol license by Nichols to moot Appellants' claims for equitable relief [see, e.g., *Abekassis v. New York City, New York*, No. 20-3038, 2021 WL 852081, at *1 (2d Cir. Mar. 4, 2021); *Taveras v. New York City, New York*, No. 20 CIV. 1200 (KPF), 2023 WL 3026871, at *7 (S.D.N.Y. Apr. 20, 2023)], Appellants also sought an award of nominal monetary damages against Nichols in his individual capacity.[4]

The district court granted the State's motion to dismiss the individual capacity claims against Nichols based on this Circuit's holding in *Libertarian Party*, where this Circuit held that the defendant licensing officers were acting in their judicial capacities and, therefore, "entitled to absolute immunity from the claims asserted against them in their individual capacities."

Building on the flawed premise that Nichols was performing a judicial function when issuing and denying handgun licenses under the state licensing scheme, the equitable relief claims were dismissed as well. The district court reasoned that the *Ex parte Young* exception "does not normally permit federal courts

---

[4] Appellants also alleged violations of their right to Equal Protection under the Fourteenth Amendment, which was based on the disparity between Downstate and Upstate residents to seek redress for violations of their Second Amendment rights, for the reasons set forth herein.

to issue injunctions against state-court judges or clerks," because "[u]sually, those individuals do not enforce state laws as executive officials might..." [A40, n. 6].[5]

But when Nichols denies a handgun license application he is *de facto* enforcing the state licensing regime 'as an executive official might' – like the police commissioner licensing officers of New York City, Nassau County and Suffolk County do.

*Libertarian Party* was decided on an incomplete record that conflicts with New York State law.

Federal courts are required to defer to a state's interpretation of its own laws, but the plaintiffs in *Libertarian Party* did not inform[6], and the panel did not consider, decades of caselaw from New York Appellate Courts holding that county court judges are acting in an *administrative capacity* when enforcing the state handgun licensing regime under Penal Law 400.00 - not a judicial capacity.

The *Libertarian Party* panel also did not consider that, unlike judicial orders and judgments, determinations by judicial licensing officers in New York are not subject to direct appeal; rather, they must be challenged in a legislatively created

---

[5] Citing *Whole Woman's Health*, 595 U.S. 30, 39 (2021) and *M.M. v. New York State Ct. of Appeals*, 2022 WL 1565694, at *2 (2d Cir. May 18, 2022) (summary order) (a plaintiff must name as defendant a state official rather than the state itself or a state agency).
[6] See, Brief for Plaintiffs-Appellants, Second Circuit Case No. 18-386 at Doc. 38.

"special proceeding" under New York Civil Practice Laws and Rules (CPLR) Article 78 like all other agency determinations.

Deference to New York State's interpretation of its judicial licensing officers, among other factors, requires a finding that Appellants' individual and official capacity claims were properly brought.

To the extent that reversing the district court requires overruling *Libertarian Party,* Appellants request mini-en banc review. See, e.g., *United States v. Crosby*, 397 F.3d 103, 105 n. 1 (2d Cir.2005).

## ISSUE PRESENTED FOR REVIEW

Whether New York State handgun licensing officers outside of New York City, Nassau County, and Suffolk County are immune from suit for constitutional violations (i) seeking prospective injunctive/declaratory relief; and/or (ii) individual capacity claims arising from the enforcement of the New York State licensing regime under Penal Law § 400.00, *et seq*.

## JURISDICTIONAL STATEMENT

Subject matter jurisdiction was proper in the district court pursuant to 28 U.S.C. § 1331, as the causes of action arose from violations of the U.S. Constitution. The Decision and Order appealed from was entered by the Clerk of the Court on November 21, 2023. Appellants timely filed a Notice of Appeal on December 20, 2023. Jurisdiction in this court is proper pursuant to 28 U.S.C. §1291.

## PROCEEDINGS BELOW

The complaint was filed in the United States District Court for the Northern District of New York on June 2, 2023 and assigned to the Hon. David N. Hurd [A1-2]. On July 13, 2023, the Office of the New York State Attorney General State, counsel for Nichols (the "State"), moved to dismiss the complaint under Federal Rule of Civil Practice 12(b)(1) and 12(b)(6) [A2]. Appellants filed their opposition on August 28, 2023; the State filed its reply on September 11, 2023 [A3]. On November 21, 2023 the Decision and Order of the district court was filed [A3, A30]. Appellants timely filed a Notice of Appeal on December 20, 2023 [A3].

This appeal follows.

## STANDARD OF REVIEW

Appeals from a dismissal under Rule 12(b)(1) and 12(b)(6) are reviewed *de novo*. *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017); *Katz v. Donna Karan Co.*, 872 F.3d 114, 118 (2d Cir. 2017).

A district court's factual findings in a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) are reviewed for clear error. *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017). The court must accept all material allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *Id.* citing *Mantena v. Johnson*, 809 F.3d 721, 727 (2d Cir. 2015). The court may also consider all extrinsic evidence offered by the parties to

7

the district court in support of their jurisdictional positions. *Id.* citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

## ARGUMENT

## I. *LIBERTARIAN PARTY* CONFLICTS WITH NEW YORK STATE'S INTERPRETATION OF ITS JUDICIAL LICENSING OFFICERS

In *Libertarian Party*, the plaintiffs sued two Erie County judicial licensing officers in their (i) official capacities to enjoin enforcement of the licensing regulations and (ii) individual capacities for monetary damages. The district court rejected the plaintiffs' contention that ruling on firearm license applications is an administrative function, not a judicial one.

On appeal in this Court, the panel affirmed the district court, reasoning that judges are entitled to absolute immunity for performing a judicial function. *Libertarian Party*, at 123 citing *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (damages); 42 U.S.C. § 1983 (injunctive relief).

### A. Federal Courts Are Bound To Defer To State Interpretation

It is axiomatic that when interpreting state statutes, federal courts defer to the state courts' interpretation of their own statutes. *United States v. Fernandez-Antonia*, 278 F.3d 150, 162 (2d Cir. 2002) citing *Bush v. Palm Beach County Canvassing Bd.*, 531 U.S. 70, 76 (2000) (per curiam) ("As a general rule, this Court defers to a state court's interpretation of a state statute."); *Portalatin v. Graham*, 624 F.3d 69, 84 (2d Cir. 2010) ("Of course, we do not defer to [the New York Court of Appeals']

8

interpretation of federal law, but we are bound by its construction of New York law in conducting our analysis."); *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 119 (2d Cir. 2001) (noting that "we must defer to the [state] [s]upreme [c]ourt on issues of state law"); *LaCorte Elec. Const. & Maint., Inc. v. Centron Sec. Sys., Inc.*, 894 F. Supp. 80, 81 (N.D.N.Y. 1995) (New York State's interpretation of its own statutory construct controls).

### B. As a Matter of New York Law, Nichols Was Not Acting In A 'Judicial Capacity'

New York's Legislature has placed certain members of the judiciary in a position where, instead of interpreting the state's laws, they are performing acts of an executive and administrative nature by enforcing the state handgun licensing regulations from their chambers.[7]

According to New York State Appellate Court and the Civil Practice Laws and Rules (CPLR), decisions made by Upstate licensing officers in the enforcement of Penal Law § 400.00 are made in an *administrative* capacity -- not a judicial one.

"The appropriate procedure to seek review of a determination of a County Court Judge, *acting in his administrative capacity* as the firearms licensing officer for Westchester County under Penal Law §§ 400.00(11) and 265.00(10), is not by

---

[7] The district court correctly acknowledged that Appellants' pistol license applications were "assigned to Judge Nichols *in his capacity as a statutory licensing officer* for Columbia County" [A33 (emphasis added)] but went on to find that Nichols acted in a *judicial capacity* – the opposite result. Acts performed in separate and distinct government positions cannot simultaneously be both executive *and* a judicial functions.

direct appeal but by commencement of a CPLR article 78 proceeding in the Appellate Division." *Cnty. of Westchester v. D'Ambrosio*, 244 A.D.2d 334, 334 (2d Dept. 1997) (emphasis added) citing CPLR 7801; CPLR 506(b)(1); *Matter of Schnell v. Spano*, 120 A.D.2d 669, *In re Shuler*, 67 A.D.3d 1020 (2d Dept. 2009) (appropriate procedure for seeking review of a determination of a County Court Judge acting in "*administrative capacity* as the firearms licensing officer for Westchester County" is Article 78) (emphasis added); *Matter of Panaro*, 250 A.D.2d 616 (2d Dept. 1998) (appropriate procedure for seeking review of a determination of a County Court Judge acting in "*administrative capacity* as the firearms licensing officer for Westchester County" is Article 78) (emphasis added).[8]

### C. The Question is: Under What <u>Authority</u> was Nichols Acting When He Denied Appellants' Handgun License Applications? The Answer is: Penal Law 265.00(10), Not the Judiciary Law or Common Law

#### i. *County Court Judges Have No Jurisdiction to Issue Pistol Licenses*

New York Judiciary Law, NY Const Art. VI, § 11 defines the general scope of jurisdiction for a county court judge.[9] County court judges have jurisdiction over (a)

---

[8] The courts of the 1st, 3rd, and 4th Department are bound by the Second Department's interpretation. See, *Mountainview Coach Lines, Inc. v. Storms*, 102 A.D.2d 663 (2nd Dept 1984). Although the cases cited are from the Second Department, it has been held that "the Appellate Division" is a statewide court that has been divided into departments for administrative convenience. Thus, *stare decisis* requires that in the absence of controlling authority, departments follow precedent set by other departments unless, of course, the Court of Appeals has previously ruled on the issue.

[9] The State's motion to dismiss acknowledged that Nichols is a Columbia County Court Judge. However, the State incorrectly represented that Nichols was being sued in his "official capacity as County Court Judge" [ECF No. 6-6 at 1]. He was not. The complaint (and caption) identify that

specified classes of actions and proceedings; (b) limited equity jurisdiction; and (c) appeals of a limited type of actions and proceedings. *Id.*

A plain read of § 11 reveals that the Judiciary Law does not authorize county court judges to consider, issue or deny handgun license applications pursuant to Penal Law § 400.00.

The general scope of jurisdiction for a county court judge does not encompass enforcing the state handgun licensing scheme; thus, there is no legal support for concluding that Nichols was acting in a judicial capacity when he denied Appellants' handgun licenses.

### ii. Handgun 'Licensing Officer' is a Creature of Statute

Handgun licensing exists outside of the judicial process and falls under the purview of the executive branch. The judicial function is to interpret the law, the executive branch is to enforce it. In contrast, by the authority of Penal Law 265.00(10) judicial licensing officers are the signatories for the executive branch, implementing and enforcing the law.

The role of the judiciary was derived from English common law; there is no common law firearm licensing officer. Licensing officers are a creation of statute. And there is no 'remedy at law' for the decisions made by licensing officers.

---

Nichols was sued in his "capacity as statutory licensing officer pursuant to Penal Law 265.00(10); 400.00" [ECF No. 1 at caption, ¶ 15].

11

Aggrieved individuals must seek limited redress through a state-created special proceeding under CPLR 7801, *et seq* (Article 78).

Nichols has no common law authority to issue a handgun license. For one, there was no such thing as a 'license requirement' in the Founding Era. Even so, Nichols derives his authority to issue, deny, suspend, and revoke pistol licenses from a statute (Penal Law § 265.00(10)).

### iii. Immunity Historically Accorded At Common Law; There is No Common Law Counterpart

Congress gave "no clear indication" in passing § 1983 that it "meant to abolish wholesale all common-law immunities." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). When an official asserts absolute immunity, the court must conduct "a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." *Imbler v. Pachtman*, 424 U.S. 409, 421 (1976). This inquiry involves "consulting the common law to identify those governmental functions that were historically viewed as so important and vulnerable to interference by means of litigation that some form of absolute immunity from civil liability was needed." *Rehberg v. Paulk*, 566 U.S. 356, 363 (2012) (cleaned up) citing *Burns v. Reed*, 500 U.S. 478, 484-86 (1991) (citations omitted).

While the scope of immunity at common law in 1871 does not exclusively define its scope under § 1983 - the statute is not "simply a federalized amalgamation of pre-existing common-law claims," *Rehberg*, at 366. The inquiry nevertheless

remains grounded in historical analogy. Judges "do not have a license to create immunities based solely on [their] view of sound policy." *Id.* at 363.

To define the contours and prerequisites of a § 1983 claim, the Supreme Court has read the statute "against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Diamond v. Pennsylvania State Educ. Ass'n*, 972 F.3d 262, 275 (3d Cir. 2020) quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06 (1986). The Supreme Court has looked to the common-law cause of action that provides the closest analogy to claims of the type considered pursuant to § 1983. *Diamond*, at 275 (cleaned up) quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Nieves v. Bartlett*, —— U.S. ——, 139 S. Ct. 1715, 1726 (2019).

A court must first determine whether an official claiming immunity under § 1983 can point to a common-law counterpart to the privilege he asserts; if a sufficiently analogous counterpart exists, the court is then to consider whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions. *Diamond*, at 276 (cleaned up) quoting *Malley v. Briggs*, 475 U.S. 335, 339-40; see, *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (section 1983 "creates a species of tort liability that on its face admits of no immunities," the section "is to be read in harmony with general principles of tort

immunities and defenses rather than in derogation of them") quoting *Imbler v. Pachtman*, 424 U.S. 409, 417–18 (1976).

The very enactment of Penal Law 265.00(10) proves that there is "no historical or common-law support for the application of absolute immunity" to government officials who license the possession of common weapons. See, e.g., *Blouin ex rel. Est. of Pouliot v. Spitzer*, 356 F.3d 348, 357 (2d Cir. 2004) (defendants have not carried their burden of identifying any historical or common-law support).

If common law licensing officials had existed, there would have been no need to statutorily create them.

This absence of support at common law is dispositive. *Blouin*, at 357 citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n. 5 (1993) (denying absolute immunity for state actor where "there is no common-law tradition of immunity for it").

### D. Unlike Judicial Orders and Judgments, Licensing Determinations Cannot Be Directly Appealed; New York Established A 'Special Proceeding' Under CPLR Article 78 For Licensing Officer Challenges

Unlike state court judgments and orders, determinations made by pistol licensing officers under Penal Law 400.00 are not subject to direct appeal. Challenges to final decisions made by licensing officers (judicial and non-judicial) must be brought by "special proceeding" under CPLR Article 78. *D'Ambrosio*, at 334 (appropriate procedure to seek review of a determination of a County Court

Judge, acting in his administrative capacity as the firearms licensing officer is by Article 78 proceeding, not direct appeal).

Article 78 is the same procedure for challenging all other administrative licensing determinations in New York. See, e.g., *Falso v. McLaughlin*, 72 A.D.2d 641 (1979) (proceeding pursuant to CPLR article 78 to review a determination of the New York State Liquor Authority suspending liquor license); *Muldoon v. Cuomo*, 54 A.D.2d 566 (1976) (suspending real estate license); *Clavin v. Mitchell*, 131 A.D.3d 612 (2015) (refusal to issue master's electrician license); *Bell v. Tofany*, 43 A.D.2d 652 (1973) (revoking driver's license); *Stone v. Monaghan*, 286 A.D. 878 (1955) (revoking taxi driver license); *Choudary v. Limandri*, 38 Misc. 3d 1227(A) (2012) (reinstating rigger license).

The standard applied to Article 78 proceedings is also proscribed by statute. The petitioner must prove the determination was "arbitrary and capricious." See, *Husejnovic v. DeProspo*, No. 2023-02771, 2024 WL 950125, at *1 (N.Y. App. Div. Mar. 6, 2024) (court held - post-*Bruen* – that the denial of a handgun license was "rationally based, and neither arbitrary nor capricious"). *De novo* review is not allowed.

New York reviews the denial of a handgun license like the federal courts review administrative agency determinations under the Administrative Procedure Law. See, e.g., *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009)

15

(discussing federal courts' authority to review executive agency action for procedural correctness, which allows courts to set aside of "agency action that is arbitrary or capricious"); *Horizons Int'l, Inc. v. Baldrige*, 811 F.2d 154, 169 (3d Cir. 1987) (Secretary of Commerce decision to issue a certificate was "not arbitrary, capricious, an abuse of discretion"). See, *Husejnovic v. DeProspo*, No. 2023-02771, 2024 WL 950125, at *1 (N.Y. App. Div. Mar. 6, 2024) (finding the denial of the right to possess handguns for self-defense "was rationally based, and neither arbitrary nor capricious") (relying on pre-*Bruen* caselaw).

### E.  Further Distinctions Between Pistol Licensing and Judicial Process

Appellants were simply trying to exercise an enumerated constitutional right[10] when they filed an application for a handgun license. There was no 'case or controversy' involved in the licensing process; no dispute needed to be 'adjudicated.' Appellants were not seeking a 'legal remedy.'

The handgun licensing process, unlike a judicial proceeding, does not involve pleadings, there is no discovery or motion practice,  no adversary, no controversy, no index number, no trial by jury, no right to direct appeal, and none of the guidelines and protections afforded by civil procedure under the CPLR.

---

[10] *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (the plain text of the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," a "pre-existing" right).

16

The time to appeal court orders and judgments is 30 days from the date of service of a Notice of Entry [CPLR 5513]. Challenges to a final determination of a handgun licensing officer under Article 78 have a four-month statute of limitations. See, e.g., *De Milio v. Borghard*, 55 N.Y.2d 216, 220 (1982) citing CPLR 217.

All Article 78 proceedings challenging a licensing determination are properly captioned and brought against the licensing officer in his "capacity as a statutory licensing officer" – not in his capacity as a police commissioner or as a county court judge. See, e.g., *Ferrick v. State*, 198 A.D.2d 822 (4th Dept. 1993); *Derry v. Fufidio*, 192 A.D.3d 1099 (2d Dept. 2021); *Sanchez v. Kelly*, 799 N.Y.S.2d 164 (Sup. Ct. 2004).

Pistol license suspension and revocation proceedings have no analogy in litigation. Judges adjudicate claims, causes of action, declare the rights and responsibilities of the parties, decide motions, preside over trials, sentence criminal defendants, render judgments and orders; licensing officers have no jurisdictional authority to perform any of those acts.

And when a judge issues a decision and order in favor of a plaintiff, they are not "granting permission." Rather, the court is weighing evidence submitted by the parties and applying the law, or making declarations of law based on evidence.

Misguided by an obstructed view of the rights protected by the Second Amendment, New York continues to press the idea that the issuance of a handgun

license is a privilege. *Matter of Harper v. Neary*, 2024 WL 950149, at *1 (2d Dept. 2024).[11],[12] So, when a licensing officer issues a handgun license in New York, they are granting *permission* to possess handguns.[13]

Conversely, the suspension and revocation of a handgun license is the *revocation of permission*. Yet, Penal Law 400.00(11)(a) and (b) *require* the revocation of a pistol license - leaving no discretion to the licensing officer,[14] which is an automatic and unappealable administrative function.

The absence of *any* discretion for the licensing officer under 400.00(11)(a) and (b) lies in stark contrast to the broad discretion to perform judicial functions that absolute immunity was created to protect.

The New York legislature and appellate courts have drawn a clear distinction between licensing determinations and judicial conduct, to which this Court must defer.

---

[11] Ignoring the plain text of the Second Amendment and the precedent set by *Heller*, *McDonald* and *Bruen*, the Appellate Division held on March 6, 2024 that "Penal Law § 400.00 does not establish a clear legal right to a pistol license."

[12] And that is the mentality mandating the abolition of New York State's 'may issue' licensing scheme.

[13] Compare, *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969) ("an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms").

[14] Excluding the objective statutory disqualifier conviction of a felony and/or 'serious offense' under 400.00(11)(a), which are automatic prohibitors to firearm possession. 18 U.S.C. 922(g), Penal Law 265.01(4), 400.00(1)(c).

## II.  JUDICIAL IMMUNITY WAS CREATED TO PROTECT DECISIONS INVOLVING 'CONTROVERSIES'

The value of absolute judicial immunity "was proved by experience. Judges were often called to decide controversies involving not merely great pecuniary interests, but the liberty and character of the parties, and consequently exciting the deepest feelings. Such adjudications invariably produced at least one losing party, who would accept anything but the soundness of the decision in explanation of the action of the judge." *Butz v. Economou*, 438 U.S. 478, 508–09 (1978) (cleaned up) (citation omitted).

Judges were held to be immune from civil suit "for malice or corruption in their action whilst exercising their judicial functions within the *general scope of their jurisdiction*." *Butz*, at 509 (citation omitted) (emphasis added).

The doctrine of judicial immunity from federal civil rights suits began with the 1967 Supreme Court decision in *Pierson v. Ray*, 386 U.S. 547 (1967), which found a Mississippi justice of the peace immune from a civil rights suit when he tried to enforce illegal segregation laws.[15] Until that time, several courts addressing the issue concluded that Congress never intended to immunize state-court judges from federal civil rights suits. See, e.g., *McShane v. Moldovan*, 172 F.2d 1016 (6th Cir.

---

[15] Robert Craig Waters, *Judicial Immunity vs. Due Process: When Should a Judge Be Subject to Suit?*, 7 CATO J. 461 (1987) (referencing many dangers of judicial immunity with respect to corruption and error in the judiciary) at p. 461.
https://www.cato.org/sites/cato.org/files/serials/files/cato-journal/1987/11/cj7n2-13.pdf

1949). Indeed, the 1871 Act provides that "every person" who violates the civil rights of a citizen by acting under state authority is liable for a federal civil action for money damages. This judge-made exception to the landmark Civil Rights Act of 1871, the chief vehicle for redress of civil rights violations, deprives citizens of redress, encourages flagrant violations of the Constitution, and ensures that state judges who knowingly, intentionally, and/or recklessly violate individual constitutional rights will not be held accountable. This cloak of unaccountability is self-serving and only reviewable by - other judges. The absence of any constitutional check and balance supports its rejection, at least in this case.

> In no other area of American life are public officials granted such license to engage in abuse of power and intentional disregard of the Constitution and laws they are sworn to defend. Those who are harmed, no matter how extensive and irreparable the injury, are deprived of any method of obtaining compensation.
>
> They are confined to disciplinary actions that only rarely result in the judge's removal from office despite the troubling frequency of judicial abuses.

*Waters*, at 462 (citation omitted).

This "sweeping" immunity doctrine is "at odds both with American legal history and the Constitution. Congress never intended to exempt state judges from suit when it passed the 1871 Civil Rights Act. *Waters*, at 462.

Today, judges generally have absolute immunity from suits for money damages for their judicial actions. *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).

20

The purpose of judicial immunity is to ensure that a judge "shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* citing, *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871).

But there are exceptions to the rule, including nonjudicial acts.

### A.  No Immunity From Nonjudicial Acts

Judges do not enjoy absolute immunity from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. *Bliven*, at 209. In determining whether an act by a judge is "judicial," courts take a 'functional approach.'

Immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches. *Id.* For instance, administrative decisions, even though they may be essential to the very functioning of the courts, have not been regarded as judicial acts. *Forrester v. White*, 484 U.S. 219, 228 (1988) (no immunity for employment decision); *Bliven*, at 214 (ruling on 18-B vouchers was a case-related judicial act); *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980) (judges acting to *enforce* the Bar Code would be treated like prosecutors, and thus amenable to suit for injunctive and declaratory relief).

### B.  Firearm Licensing Is Not A Judicial Act

While judges enjoy absolute immunity from liability in damages for their judicial or adjudicatory acts, judges are not absolutely immune from liability and damages for administrative, legislative, or executive functions that judges may

21

occasionally be assigned by law to perform; it is nature of function performed—adjudication—rather than identity of actor who performed it—judge—that determines whether absolute immunity attaches to act. *Forrester v. White*, 484 U.S. 219 (1988) (terminating employee not a judicial act).

'Judicial acts' are those that are 'intimately associated' with the judicial function. The bedrock judicial function is, of course, the adjudication of disputes. Other traditional judicial functions include such things as weighing evidence, making factual findings, reaching legal determinations, choosing sanctions, and expounding reasons for decisions. *Goldstein v. Galvin*, 719 F.3d 16, 25 (1st Cir. 2013) (cleaned up) (citations omitted); *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36 (1993) ('touchstone' for judicial immunity has been "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights")..

From a functional standpoint, pistol licensing is an "act that simply happens to be done by judges" in upstate New York; it is not a "truly judicial act." *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989).[16] See also, *Federal Power Comm'n*

---

[16] When defendant, acting in his capacity as Chief Judge of the 36th District Court, declared a moratorium on the issuance of writs of restitution, his order was "was an administrative, not judicial, act…absolute immunity does not apply." *Morrison*, at 466. "Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one." The Circuit noted that the judge's order was not connected to any particular litigation, did not alter the rights and liabilities of any parties, and no direct appeal was available, "making the absence of judicial liability far less reasonable." *Id.*

*v. Idaho Power Co.*, 344 U.S. 17 (1952) (modification of license not a judicial function); *Federal Radio Comm'n v. General Electric Co.*, 281 U.S. 464 (1930) (licensing is not a judicial function; judgment requiring Federal Radio Commission to renew broadcasting license was not reviewable by Supreme Court, since proceeding was not "case or controversy").

In *Baughcum v. Jackson*, the Eleventh Circuit recently considered whether a probate court judge was acting in a judicial capacity when determining an application for a pistol license. 92 F.4th 1024, 1029 (11th Cir. 2024).[17] The defendant judges argued that a federal court cannot redress the plaintiffs' injuries with an injunction against them because 42 U.S.C. § 1983 generally forbids an injunction against "a judicial officer for an act or omission taken in such officer's judicial capacity;" that, to the extent issuing a carry license is a judicial function, any order the trial court entered against them could not legally redress the plaintiffs' injuries because the judges would be immune. *Baughcum*, at 1032–33.

The Eleventh Circuit disagreed. The Circuit reached its decision by looking to how Georgia defined the probate judge's conduct. Under Georgia state law, processing a weapons carry license was an administrative function the legislature happened to assign to probate judges. *Baughcum*, at 1033.

---

[17] Georgia has since become a "constitutional carry" state for individuals aged 21 and older. Like the Upstate process in New York, a county judge issues the licenses and the state law enforcement agency (like the New York State Police) publishes the license application. *Baughcum*, at 1029.

The 11th Circuit held that declaratory and injunctive relief against the probate judges was proper. "Because the probate judges are responsible for issuing licenses, the challenged action is also redressable by a court order against them. The district court could, if the suit is meritorious, order the probate judges to issue licenses to the plaintiffs." *Baughcum*, at 1032.

Likewise, the New York legislature made certain judges responsible for administrative functions, to wit, handgun licensing. Because Nichols is responsible for issuing handgun licenses, Appellants' constitutional challenge is redressable by a court order against him. Enjoining Nichols from enforcing an unconstitutional licensing regulation is proper.

## III. INJUNCTIVE AND DECLARATORY RELIEF IS PROPER HERE

### A. The 1996 Amendment Does Not Apply to Executive Action

The district court relied on an amendment to 42 U.S.C. 1983 to hold that injunctive relief is not available against Nichols. The 1996 amendment provides that "in any action brought against a judicial officer for an act or omission taken in such officer's *judicial capacity*, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983 (emphasis added).

But the amendment to § 1983 is not inapplicable here. As previously discussed, denying a handgun license application is an executive/administrative act

enforcing the licensing statute, and can only be performed by the enumerated statutory licensing officers. All licensing officers are subject to injunctive relief to prevent further enforcement of unconstitutional statutes.

Under the *Ex parte Young* exception, injunctive relief to prevent a state actor from enforcing an unconstitutional state statute is an appropriate remedy to prevent further constitutional violations. *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005) ("*Ex parte Young* ... held that sovereign immunity did not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law because a state does not have the power to shield its officials by granting them immunity from responsibility to the supreme authority of the United States.").

The district court observed that the *Ex parte Young* exception "does not normally permit federal courts to issue injunctions against state-court judges or clerks," because "[u]sually, those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties." [A40, n. 6][18]

---

[18] citing *Whole Woman's Health*, 595 U.S. at 39 and *M.M. v. New York State Ct. of Appeals*, 2022 WL 1565694, at *2 (2d Cir. May 18, 2022) (summary order) (a plaintiff must name as defendant a state official rather than the state itself or a state agency).

But that is exactly what Nichols does as a licensing officer – he "enforces state laws as an executive official does." Nor does the licensing process involve resolution of a "dispute between parties."

The district court went on to mischaracterize Appellants' request for injunctive relief as seeking redress 'against a state court judge.' Not so. Appellants are seeking injunctive relief against a licensing officer's enforcement of unconstitutional state laws, not against Nichols' performance of a judicial function.

## B. Nevertheless, Prospective Declaratory Relief is Proper

Even if Nichols were acting in a judicial capacity, this Circuit has held that judicial immunity does not preclude "purely prospective declaratory relief."

In *Kelsey v. Clark*, this Circuit observed that the "doctrine of judicial immunity has never barred plaintiffs from seeking *purely* prospective declaratory relief." *Kelsey v. Clark*, No. 22-22, 2023 WL 1980307, at *1 (2d Cir. Feb. 14, 2023) quoting *Pulliam v. Allen*, 466 U.S. 522, 536 (1984), superseded by statute on other grounds; *also* at 541–42 ("We conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity"); Federal Courts Improvement Act of 1996, Pub. L. No. 104–317, 110 Stat. 3847; *Green v. Mansour*, 474 U.S. 64, 65, 73 (1985) (emphasis supplied).

A declaration that, in his capacity as a licensing officer, Nichols' future enforcement of the challenged statutes violates the Second Amendment (if found by the district court), would not be barred by judicial immunity.

## IV. THE DISTRICT COURT'S ANALYSIS OF APPELLANTS' CLAIMS FOR DECLARATORY RELIEF WAS ERRONEOUS

The district court noted that an action under 42 U.S.C. 1983 implicitly recognizes the availability of declaratory relief against a state court judge "depending on the circumstances, which the statute does not delineate" [A40] citing *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 198 (3d Cir. 2000); see also *Lindke v. Tomlinson*, 31 F.4th 487, 490–91 (6th Cir. 2022). As discussed above, this Circuit also recognizes the availability of declaratory relief against a state court judge under § 1983. See, *Kelsey v. Clark,* supra.

But the district court's characterization of Appellants' claim  for declaratory relief as being "against a state court judge" is inaccurate and continues to sidestep the fact that Appellants brought against Nichols in his capacity as a licensing officer, disconnected from any judicial act. Appellants are not challenging a state court judgment or order,[19] they are not litigants dissatisfied with a court ruling, they are not seeking to set aside a judgment, nor are they criminal defendants complaining

---

[19] Adding a caption to a licensing determination, as if it were a court case, does not magically convert an administrative decision into a judicial order or judgment, which would be an improper enlargement of a licensing officers' authority. None of the police commissioner decisions are captioned as if it were a judicial order, nor could they be. Licensing officers do not adjudicate claims or controversies.

27

that a judge violated their constitutional rights at trial. Nothing about Appellants' claims involves a judicial function. But see, *Allen v. DeBello*, 861 F.3d 433, 440 (3d Cir. 2017) (a judge who acts as an enforcer or administrator of a statute can be sued under Section 1983 for declaratory or (if declaratory relief is unavailable) injunctive relief).

### A. Pistol Licensing Officers Do Not 'Adjudicate Claims'

The district court pointed to the Supreme Court's view that "'no case or controversy' exists 'between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute...because under such circumstances, the judge and litigant are not sufficiently adverse to one another." [A41] quoting *Whole Women's Health*, at 40.

But the Supreme Court also stated, "To be sure, in *Ex parte Young*, this Court recognized a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health*, at 39. And after finding that the judges and court clerks in that case were not proper parties, the Supreme Court held that the licensing-official defendants who take enforcement actions under the challenged statute were properly sued. *Id.* at 46. Nichols was also properly sued below.

Because no court may purport to enjoin challenged laws themselves, but only those who enforce them.[20] To prevent the enforcement of an unconstitutional licensing regulation, an injunction preventing the licensing officer from enforcing that regulation is required. As a Columbia County licensing officer, and the one who enforced the challenged regulations to cause the denial of Appellants' license applications, Nichols is a proper defendant.

### B. Complaint *Does* Allege That Nichols Enforces The Licensing Scheme

The district court erred when finding Appellants "do not allege that defendant initiates actions or engages in any independent enforcement activity pursuant to New York's firearm licensing scheme." [A42].

The very heart of this lawsuit is the fact that Nichols enforced an unconstitutional licensing scheme against Appellants, which violated their constitutional rights [A12-17; A19-25].

The district court's conclusion that Appellants failed to allege that Nichols enforces the state licensing scheme is perplexing – and contrary to the allegations in the Complaint and state law. [A12-17; A19-25]. The very purpose for creating the statutory licensing officers enumerated in 265.00(10) is to enforce 400.00 *et seq.* –

---

[20]Because no court may purport to enjoin challenged laws themselves, but only those who enforce them, [*Whole Woman's Health*, at 44] Nichols is a proper defendant. To be sure, only a Columbia County pistol licensing officer has the authority to issue a pistol license to Appellants. To prevent the continued enforcement of unconstitutional licensing regulations against Appellants, it is proper to enjoin Nichols, in his official capacity as a pistol licensing officer, from continuing such enforcement.

the state licensing regime. And it was Nichols' enforcement of 400.00 that caused Appellants' injury-in-fact.

### C. New York's County Court Judges Had Direct Input into the 1963 Revisions into the State Licensing Regime

In 1963, New York undertook to "reorder and rearrange in standardized manner" the original Sullivan Law because the former sections were confusing, facially defective, and "scattered through almost a hundred numbered provisions." [see, New York Governor's Bill Jacket, Senate Bill 136 at A49, A110].

The Governor's Bill Jacket for Senate Bill 136 ("SB136") reveals that each of the 83 county court judges, among other officials, had direct input into the state pistol licensing scheme. SB136 amended the Penal Law "in relation to the carrying, sale, possession and use of firearms and other dangerous weapons, and the issuance of licenses therefore…"

When drafting SB136, "a detailed fifty-point questionnaire was sent to each of the sixty-two district attorneys, nearly all criminal court judges (83 County Judges and General Session Justices), police chiefs (87) and numerous rod-and-gun associations of the State" that "sought to elicit concrete opinion on specific, concrete proposals to reorder, rearrange, standardize and conform to judicial construction existing New York statutes" to create a "comprehensive bill embodying the reordering, rearrangement, standardization and conformation to judicial construction

30

of the New York statutes dealing with firearms, ammunition, weapons, dangerous appliances, instruments and substances…" [A95].

The Bill Jacket further reveals that the county court judges in "fifty-six counties of New York" were the source of "considerable comment" to "the responses to the questionnaire of the Joint Legislative Committee" regarding "the appropriate authority for licensing" [A81]. The consensus was that the enumerated licensing officers would be the police commissioners in New York City and Nassau County, and "the county judge having his office in the county in which application may duly be made" [A81].

The legislative history of the state's licensing officers demonstrates that the county court judges "played a role in the licensing scheme's enactment." [A81; A95-101]. The county court judges were directly involved in revising the Sullivan Law and codifying the permissive, may-issue licensing regime that exists today.

## V. A CASE AND CONTROVERSY EXISTED BELOW

The district court opined that the issue below was "whether the interests of Judge Nichols are sufficiently adverse to those of plaintiffs as necessary to give rise to a case or controversy within the meaning of Article III." [A40]. The court explained that "no case or controversy exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the

31

statute…[because] under such circumstances, the judge and litigant are not sufficiently adverse to one another." [A41] (citations omitted).

To establish standing in federal court, any party bringing a lawsuit must allege an actual case or controversy. *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citation omitted). A plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendant's conduct; and (3) a federal court decision is likely to redress the injury. *Id.* A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future. *Id.*

Appellants applied for a license and were denied by a licensing officer's enforcement of the state's licensing statutes. They suffered constitutional harm by way of the preclusion of rights protected by the plain text of the Second Amendment; the harm is directly traceable to Nichols' application of the licensing statute; and an injunction of the licensing statute will provide Appellants with the redress they seek. Future harm is not speculative, as Nichols' application of the challenged regulations against a future application are also substantially likely to result in constitutional harm.

The constitutional harm suffered by Appellants was caused by, and is directly traceable to, Nichols' actions in his capacity as a licensing officer. Appellants and Nichols are sufficiently 'adverse' to confer Article III standing.

## VI.  APPELLANTS COULD NOT, AND HAD NO OBLIGATION TO, SEEK A REMEDY IN STATE COURT

The district court erred by finding that Appellants "could have sought declaratory relief by filing an Article 78 proceeding in the New York Supreme Court." [A11, n. 5].

### A. Declaratory relief is not available under CPLR Article 78

Declaratory relief is not available in a proceeding under CPLR Article 78. *Matter of Harper v. Neary*, 2024 WL 950149, at *1 (2d Dept. 2024) (declaratory judgment is not properly before the court in Article 78 proceeding); *Robbins v. Warhit*, 198 A.D.3d 790, 791 (2d Dept. 2021) (constitutional challenge seeking declaratory relief is not properly before the court under Article 78) citing *Matter of Jackson v. Anderson*, 149 A.D.3d 933, 934 (2d Dept. 2017) (Second Amendment challenge not properly before the court in an original proceeding pursuant to CPLR article 78, as a declaratory judgment action is the proper vehicle for challenging the constitutionality of a statute).

### B. § 1983 Plaintiffs Are Not Required to Seek A State Court Remedy

Appellants have no obligation to seek a state court remedy before pursuing claims for civil rights violations under 42 U.S.C. 1983.

33

"When federal claims are premised on [§ 1983]—as they are here—we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 472–473 (1974); see also, *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 498 (1982) (cases cited); *Damico v. California*, 389 U.S. 416 (1967); *Waltier v. N.Y. Police Dep't*, 856 F. Supp. 196, 199 (S.D.N.Y. 1994), aff'd, 52 F.3d 311 (2d Cir. 1995); *Weinstein v Ryder*, 2021 US Dist. LEXIS 55410, at *8 [EDNY Mar. 23, 2021, No. 19-cv-6236 (SJF)(AKT)]).

## VII. APPELLANTS' REMEDY AT LAW IS INADEQUATE

The limitations already imposed by the requirements for obtaining equitable relief against any defendant -- a showing of an inadequate remedy at law and of a serious risk of irreparable harm severely curtail the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by 1979 disgruntled litigants. *Pulliam*, 466 U.S. at 538 citing, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–507 (1959).

Similar limitations serve to prevent harassment of judges through use of the writ of mandamus. Because mandamus has "the unfortunate consequence of making the judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants before him, the Court has stressed that it should be reserved for really

34

extraordinary causes. *Pulliam,* 466 U.S. at 537–38 quoting, *Ex parte Fahey*, 332 U.S. 258, 260 (1947) (internal quotation marks omitted).

*First,* a writ of mandamus to compel the issuance of a handgun license to an individual who has no disqualifiers to firearm possession under state or federal law, like Appellants, is not available in state court. See, *Harper*, at \*2 (N.Y. App. Div. Mar. 6, 2024) (because "Penal Law § 400.00 does not establish a clear legal right to a pistol license" there is no right to a mandamus).

*Second*, Second Amendment challenges to the denial of a handgun license cannot be brought under Article 78. *Harper*, at \*2 (reiterating the longstanding precedent that constitutional challenges to the denial of a pistol license are not properly before the court in an Article 78 proceeding).

*Third,* the standard of review under Article 78 that is applied to all challenges involving handgun licensing determinations is "arbitrary and capricious" even though the Supreme Court abrogated all means-end scrutiny review of government action that implicates the rights protected by the Second Amendment. See, *Harper*, at \*1 ("Where an applicant challenges a determination that either revokes a firearm license or denies an application for a firearm license, the court can only review 'whether a rational basis exists for the licensing authority's determination, or whether the determination is arbitrary or capricious'); *accord Matter of Selma Husejnovic v. DeProspo*, Case No. 2023-02771 (N.Y. App. Div. March 6, 2024).

*Fourth*, with this Circuit's decision in *Libertarian Party* looming over the district courts, there is no ability for Upstate residents to seek relief in federal court.

## VIII. AFFIRMING THE DISTRICT COURT FACILITATES THE VIOLATION OF APPELLANTS' RIGHT TO EQUAL PROTECTION

As pled in the Complaint, but not addressed by the district court, the precedent set by *Libertarian Party* is violating the rights of Upstate residents, including Appellants, of equal protection under the law.

And while Second Amendment jurisprudence in this Circuit seemingly defaults to the Superintendent of the New York State Police as the proper party, and rightly so when the plaintiffs bring a pre-enforcement action or allege an intention to engage in acts that subject them to criminal enforcement by the NYSP, the Superintendent of the State Police did not cause the harm to Appellants, Nichols did. The Superintendent has no authority to issue a handgun license, Nichols does.

Prospective injunctive and declaratory relief concerning the issuance of a handgun license and/or enforcement of the challenged provisions of Penal Law § 400.00 is properly traced to a statutory handgun licensing officer.

## IX. IF REVERSING THE DISTRICT COURT IS DEEMED A REVERSAL OF *LIBERTARIAN PARTY*, MINI EN-BANC IS REQUESTED

It is a longstanding rule in this Circuit that a three-judge panel is bound by a prior panel's decision until it is overruled either by this Court sitting *en banc* or by

the Supreme Court. *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004); *Ingram v. Kumar*, 585 F.2d 566, 568 (2d Cir. 1978).

Nonetheless, this Circuit has "consistently recognized two instances in which a three-judge panel may issue an opinion that overrules Circuit precedent. The first is often called a 'mini-en banc,' in which the panel circulates its opinion among all active judges and receives no objections to its filing.[21] The second is 'where an intervening Supreme Court decision casts doubt on the prior ruling.'"[22]

The precedent set by *Libertarian Party* is in direct conflict with New York State's interpretation that judicial licensing officers enforcing the State's licensing regime under Penal Law 400.00 are acting in an administrative capacity, and not a judicial capacity.

To the extent that this panel concludes that deferring to New York State's interpretation constitutes a reversal of *Libertarian Party*, Appellants request a mini-*en banc* for consideration of whether the active judges in this Circuit voice any objections. See, *Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 (2d Cir. 2009); *United States v. Crosby*, 397 F.3d 103, 105 n. 1 (2d Cir.2005); *United States v. Parkes*, 497 F.3d 220, 230 n. 7 (2d Cir.2007); Jon O. Newman, The Second

---

[21] *Doscher v. Sea Port Grp. Sec.*, LLC, 832 F.3d 372, 378 (2d Cir. 2016), abrogated on other grounds by *Badgerow v. Walters*, 596 U.S. 1 (2022) quoting *Shipping Corp. of India Ltd. v. Jaldhi*, 585 F.3d 58, 67 & n.9 (2d Cir. 2009); *United States v. Roglieri*, 700 F.2d 883, 887 n.2 (2d Cir. 1983).

[22] *Doscher*, at 378 quoting *Finkel v. Stratton Corp.*, 962 F.2d 169, 174–75 (2d Cir. 1992); cf. *Boothe v. Hammock*, 605 F.2d 661, 663 (2d Cir. 1979).

Circuit Review—1987–1988 Term: Foreword: In Banc Practice in the Second Circuit, 1984–1988, 55 Brook. L.Rev. 355, 367–68 (1989) (noting that judges will occasionally circulate particularly important panel opinions before filing).

## CONCLUSION

The district court decision should be vacated and the matter remanded for further proceedings.

Dated: March 14, 2024

                    Respectfully submitted,

                    THE BELLANTONI LAW FIRM, PLLC
                    *Attorneys for Plaintiff-Appellant*

By:     *Amy L. Bellantoni*
                    Amy L. Bellantoni
                    2 Overhill Road, Suite 400
                    Scarsdale, New York 10583
                    abell@bellantoni-law.com

### CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7). It contains 8,966 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated:  March 14, 2024