# 23-8093

## United States Court of Appeals for the Second Circuit

JEREMY KELLOGG, JONATHAN HARMON,

*Plaintiff-Appellants,*

v.

JONATHAN C. NICHOLS, individually and in his capacity as statutory licensing officer pursuant to Penal Law 265.00(10); 400.00, et seq.,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern District of New York

## BRIEF FOR APPELLEE

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellee
The Capitol
Albany, New York 12224
(518) 776-2044

BARBARA D. UNDERWOOD
  *Solicitor General*
ANDREA OSER
  *Deputy Solicitor General*
JONATHAN D. HITSOUS
  *Assistant Solicitor General*
    *of Counsel*

Dated: April 18, 2024

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................iii

PRELIMINARY STATEMENT ......................................................... 1

QUESTIONS PRESENTED ............................................................... 2

STATEMENT OF THE CASE ............................................................ 3

    A.    Judge Nichols' denials of plaintiffs' applications ..................... 3

    B.    Plaintiffs' federal lawsuit against Judge Nichols ................... 5

    C.    The district court's dismissal of the action............................. 8

STANDARD OF REVIEW.................................................................. 9

SUMMARY OF ARGUMENT ........................................................... 10

ARGUMENT ...................................................................................... 12

POINT I

ABSOLUTE JUDICIAL IMMUNITY BARS THE INDIVIDUAL-CAPACITY
CLAIMS AGAINST JUDGE NICHOLS ........................................ 12

    A.    Under *Libertarian Party*, Judge Nichols Is Entitled to
           Judicial Immunity.................................................................. 13

    B.    In Ruling on Plaintiffs' Pistol-License Applications,
           Judge Nichols Performed a Judicial Function Within
           His Jurisdiction, for Purposes of Immunity to Suit in
           Federal Court. ....................................................................... 18

    C.    The Application of Judicial Immunity to Judge Nichols
           Does Not Give Rise to an Equal-Protection Claim................. 25

**Page**

POINT II

    PLAINTIFFS CANNOT OBTAIN ANY RELIEF AGAINST JUDGE
NICHOLS IN HIS OFFICIAL CAPACITY ...................................................26

      A.   There Is No Actual Controversy Between Plaintiffs and
Judge Nichols. .......................................................................27

      B.   Plaintiffs Are Not Entitled to Injunctive Relief Against
Judge Nichols for Additional Reasons. ...................................33

CONCLUSION ......................................................................................37

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Allen v. DeBello*,
   861 F.3d 433 (3d Cir. 2017) ................................................................ 28

*Antonyuk v. Chiumento*,
   89 F.4th 271 (2d Cir. 2023) ........................................................ 17, 36

*Applewhite v. Briber*,
   506 F.3d 181 (2d Cir. 2007) ........................................................ 16, 26

*Baughcum v. Jackson*,
   92 F.4th 1024 (11th Cir. 2024) .................................................... 16-17

*Bliven v. Hunt*,
   579 F.3d 204 (2d Cir. 2009) ........................................................ 15, 20

*County of Westchester v. D'Ambrosio*,
   244 A.D.2d 334 (2d Dep't 1997) .................................................... 15

*Deem v. DiMella-Deem*,
   941 F.3d 618 (2d Cir. 2019) ............................................................ 14

*Doe v. Bin Laden*,
   663 F.3d 64 (2d Cir. 2011) .............................................................. 18

*Ex parte Young*,
   209 U.S. 123 (1908) ........................................................................ 34

*Forrester v. White*,
   484 U.S. 219 (1988) .................................................................... 15, 24

*Francis v. Elmsford Sch. Dist.*,
   442 F.3d 123 (2d Cir. 2006) .......................................................... 8, 34

*Gingras v. Think Finance, Inc.*,
   922 F.3d 112 (2d Cir. 2019) ............................................................ 27

iii

| Cases | Page(s) |
|---|---|

*Gross v. Rell,*
 585 F.3d 72 (2d Cir. 2009) ........................................................ 15, 19

*Hogan v. Fischer,*
 738 F.3d 509 (2d Cir. 2013) ........................................................9-10

*Hollingsworth v. Perry,*
 570 U.S. 693 (2013) ........................................................................ 27

*Huminski v. Corsones,*
 396 F.3d 53 (2d Cir. 2004) ...................................................... 19, 24

*In re Justices of Supreme Court of Puerto Rico,*
 695 F.2d 17 (1st Cir. 1982) ...................................................... 28, 30

*Justice Network Inc. v. Craighead Cnty.,*
 931 F.3d 753 (8th Cir. 2019)......................................................... 34

*Kelsey v. Clark,*
 No. 22-22, 2023 WL 1980307 (2d Cir. Feb. 14, 2023) ........................ 32

*Libertarian Party of Erie Cnty. v. Cuomo,*
 970 F.3d 106 (2d Cir. 2020) ...................................................... passim

*Licci by Licci v. Lebanese Canadian Bank, SAL,*
 834 F.3d 201 (2d Cir. 2016) .......................................................... 14

*Lindke v. Tomlinson,*
 31 F.4th 487 (6th Cir. 2022) ........................................................28-29

*Maestri v. Jutkofsky,*
 860 F.2d 50 (2d Cir. 1988) ............................................................ 23

*Matter of Diperna-Gillen v. Ryba,*
 215 A.D.3d 1193 (3d Dep't 2023) .................................................. 21

*Matter of Feerick v. McGuire,*
 159 A.D.3d 1155 (3d Dep't 2018) .................................................. 20

| Cases | Page(s) |
|---|---|

*Matter of Gaul v. Sober,*
    186 A.D.3d 1821 (3d Dep't 2020) ........................................ 36

*Matter of Hock v. Scarpino,*
    185 A.D.2d 237 (2d Cir. 1992) .......................................... 20

*Matter of Husenjovic v. DeProspo,*
    No. 2023-02771, 2024 WL 950125 (2d Dep't March 6, 2024) ............ 35

*Matter of Schiavone v. Punch,*
    34 A.D.3d 1366 (4th Dep't 2006) ....................................... 24

*Matter of Unger v. Rozzi,*
    206 A.D.2d 974 (2d Dep't 1994) ........................................ 21

*Matter of Vicari v. Shea,*
    215 A.D.3d 510 (1st Dep't 2023) ....................................... 21

*McGinty v. New York,*
    251 F.3d 84 (2d Cir. 2001) ............................................ 31

*Mireles v. Waco,*
    502 U.S. 9 (1991) ..................................................... 12

*Montero v. Travis,*
    171 F.3d 757 (2d Cir. 1999) ........................................... 16

*New York State Rifle & Pistol Association v. Bruen,*
    597 U.S. 1 (2022) ...................................................... 5

*Opala v. Watt,*
    454 F.3d 1154 (10th Cir. 2006) ........................................ 32

*Pierson v. Ray,*
    386 U.S. 547 (1967) ................................................... 25

*Pulliam v. Allen,*
    466 U.S. 522 (1984) ................................................... 34

| Cases | Page(s) |
|---|---|

*Saleh v. Sulka Trading Ltd.*,
   957 F.3d 348 (2d Cir. 2020) ............................................................... 27

*Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*,
   585 F.3d 58 (2d Cir. 2009) ................................................................ 18

*Sibley v. Lando*,
   437 F.3d 1067 (11th Cir. 2005) ........................................................ 22

*Sibley v. Watches*,
   194 A.D.3d 1385 (4th Dep't 2021) ................................................... 35

*Stern v. Nix*,
   840 F.2d 208 (3d Cir. 1988) ............................................................. 32

*Stump v. Sparkman*,
   435 U.S. 349 (1978) .......................................................................... 22

*Tewari v. Sattler*,
   No. 23-36-cv, 2024 WL 177445 (2d Cir. Jan. 17, 2024) ................... 22

*Whiteside v. Hover-Davis, Inc.*,
   995 F.3d 315 (2d Cir. 2021) ....................................................... 10, 26

*Whole Woman's Health v. Jackson*,
   595 U.S. 30 (2021) ..................................................................... 28, 36-37

*Young v. Selsky*,
   41 F.3d 47 (2d Cir. 1994) ................................................................. 13

## Federal Statutes

42 U.S.C.
   § 1983 ................................................................................... passim

## State Statutes

L. 1973
   ch. 546, § 1 ...................................................................................... 30

**State Statutes**                                                            **Page(s)**

L. 1988
    ch. 437, § 1 ............................................................... 30

L. 1994
    ch. 637, § 1 ............................................................... 30

L. 2005
    ch. 195, § 1 ............................................................... 30

L. 2013
    ch. 98, § 3 ................................................................. 30

N.Y. C.P.L.R.
    art. 56 ....................................................................... 21
    506(b)(1) .................................................................... 21
    7804(b) ...................................................................... 21
    7804(d) ...................................................................... 21
    7804(e) ...................................................................... 21

N.Y. Penal Law
    § 265.00(10) ......................................................... 3, 23
    § 265.01 .................................................................... 30
    §§ 265.01 through 265.04 ............................................ 3
    § 400.00 ........................................................... passim
    § 400.00(1) ............................................................... 29
    § 400.00(1)(b) ...................................................... 3, 20
    § 400.00(1)(o) .......................................................... 19

**Rules**

Fed. R. Civ. Pro.
    12(b)(6) ...................................................................... 7

## PRELIMINARY STATEMENT

At all relevant times, defendant-appellee Jonathan Nichols was a state-court judge who served as the statutory firearm-licensing officer for Columbia County, New York. Plaintiffs-appellants Jeremy Kellogg and Jonathan Harmon sued Judge Nichols in federal court in his individual and official capacities, claiming that he violated their Second Amendment rights by denying their applications for pistol licenses. As relief, plaintiffs sought damages and a declaration that New York's firearm-licensing statutes are unconstitutional. Although plaintiffs also sought injunctive relief, they did not ask the court to enjoin Judge Nichols from applying the licensing statutes but rather the state statutes that criminalize the unlicensed possession of firearms and permit consideration of sealed dispositions in criminal cases during the licensing process. The United States District Court for the Northern District of New York (Hurd, J.) concluded that Judge Nichols could not be sued in federal court and granted his motion to dismiss.

The Court should affirm. Under the Court's controlling precedent, plaintiffs' individual-capacity claims against Judge Nichols are barred by absolute judicial immunity. Plaintiffs' official-capacity claims against

Judge Nichols fail for want of an actual Article III controversy. And plaintiffs cannot obtain injunctive relief against Judge Nichols in his official capacity for additional reasons, including that they do not establish the applicability of any of the limited exceptions to the general rule that federal courts may not enjoin state-court judges from exercising their jurisdiction.

## QUESTIONS PRESENTED

1. Does absolute judicial immunity bar plaintiffs' individual-capacity claims against Judge Nichols?

2. Do plaintiffs' official-capacity claims against Judge Nichols fail on the ground that plaintiffs' interests are not sufficiently adverse to those of Judge Nichols to create Article III controversy between the parties?

3. Do plaintiffs' official-capacity claims against Judge Nichols for injunctive relief fail for the additional reason that plaintiffs cannot establish the applicability of any of the exceptions to the general rule that federal courts may not enjoin state-court judges from exercising their jurisdiction?

## STATEMENT OF THE CASE

**A.    Judge Nichols' denials of plaintiffs' applications**

Plaintiffs reside in Columbia County, New York. (Appendix ["A"]6.) At the time of the events relevant to this matter, defendant Jonathan Nichols served as a Judge on the Columbia County Court. (*See* ECF No. 14-3.) Judge Nichols' duties as a judge included ruling on applications for licenses to carry concealed firearms, also known as pistol licenses, within that county. N.Y. Penal Law § 265.00(10).

New York Penal Law § 400.00 governs the licensing process. Under this statute, licenses are reserved for those who, among other things, possess "good moral character," defined as "the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others." *Id.* § 400.00(1)(b). Possession of firearms without a license is a criminal offense. *Id.* §§ 265.01 through 265.04.

In 2022, Kellogg and Harmon each submitted a pistol-license application that was assigned to Judge Nichols. (A19, 22.) Judge Nichols directed Kellogg and Harmon to appear before him for a hearing on

September 9, 2022, and September 26, 2022, respectively. (ECF No. 6-1 at 16; ECF No. 6-2 at 21.)

At the beginning of each hearing, the applicant was advised of his rights to be represented by an attorney and to call witnesses; both applicants chose not to exercise those rights and to rely instead on their own sworn testimony. (ECF No. 6-4 at 3-4; ECF No. 6-5 at 3-4.) In Kellogg's case, Judge Nichols observed that Kellogg failed to disclose two criminal prosecutions on his application. (ECF No. 6-4 at 4-5.) Kellogg first explained that he had forgotten about the prosecutions and then changed his explanation and claimed that he did not know he had to disclose the prosecutions because their dispositions were sealed. (ECF No. 6-4 at 4-7.) In Harmon's case, Judge Nichols observed that Harmon's criminal history included a "whole series of offenses," including a 2008 youthful-offender adjudication for first-degree robbery. (ECF No. 6-5 at 4-5, 8, 11.) Harmon responded that he had since grown as a person but admitted that he "did get into some trouble after that," including in two incidents from 2015, one involving illegal possession of a knife and the other involving drunk driving. (ECF No. 6-5 at 5-7, 12-16.)

In 2023, Judge Nichols issued a signed "Decision and Order" in each case denying the application. Each order advised that the court had reviewed the information contained in the application and the sworn testimony of the applicant. (ECF No. 14-3 at 1-2.) As to Kellogg, Judge Nichols determined that Kellogg's shifting and non-credible explanations when asked about his omission of material information from his application demonstrated that he lacked the requisite maturity and responsibility to hold a pistol license. (ECF No. 14-3 at 1.) As to Harmon, Judge Nichols determined that Harmon's criminal history displayed a persistent aversion to rules. (ECF No. 14-3 at 2.)

## B.    Plaintiffs' federal lawsuit against Judge Nichols

In March 2024, plaintiffs filed the underlying federal lawsuit against Judge Nichols in his individual and official capacities. (A6.) Plaintiffs maintained that New York Penal Law § 400.00 defied the "unambiguous directive" set forth in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), that the Second Amendment prohibits discretionary or subjective judgments from factoring into firearm licensing. (A11-13.) Plaintiffs relied on Judge Nichols' status as a judge to allege that, even if Penal Law § 400.00 allowed judges to exercise discretion, *Bruen*

5

compelled Judge Nichols to disregard that statute. (A15, 25.) Plaintiffs asserted that if Judge Nichols had considered only unspecified "[o]bjective criteria," he would have been constrained to grant their applications. (A25.) By denying their applications based on purportedly subjective findings that they lacked the maturity and responsibility to carry concealed weapons, Judge Nichols had allegedly engaged in conduct that *Bruen* prohibited: the "appraisal of facts, the exercise of judgment, and the formation of an opinion." (A24.)

In their enumerated causes of action, plaintiffs claimed that various provisions of Penal Law § 400.00, along with the very concept of pistol-licensing generally, violated their Second Amendment rights. (A26-27.) They claimed that extending immunity to Judge Nichols on account of his status as a state-court judge would violate their rights under the Fourteenth Amendment's Equal Protection Clause by giving unsuccessful applicants different legal rights depending on whether the licensing officer was a police commissioner, as is the case for applications made in New York City and Nassau and Suffolk Counties, or a judge, as is the case for applications made elsewhere in the State. (A27.) For relief, plaintiffs requested damages against Judge Nichols in his individual capacity in order to hold

6

Judge Nichols individually accountable for his purported disregard of *Bruen* (A16) and to assure that other judges will "be motivated to soberly adhere to the Constitution" (A25). Plaintiffs further sought declarations that Penal Law § 400.00 was unconstitutional and that Judge Nichols violated their rights. (A28-29.) As for injunctive relief, plaintiffs did not seek an injunction enjoining Judge Nichols from applying Penal Law § 400.00, the licensing statute, but rather sought an order enjoining Judge Nichols from applying New York's statutes that criminalize the unlicensed possession of firearms and permit consideration of sealed dispositions in criminal cases during the licensing process. (A28-29.) Plaintiffs, however, do not pursue that injunctive relief in their brief to this Court.

Judge Nichols moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6) on the basis that, as a state-court judge, he could not be sued in federal court. (ECF No. 6-6 at 6-9, 14-15, 18-19.) In opposition, plaintiffs contended that Judge Nichols was subject to suit because when ruling on their pistol-license applications he performed an administrative, rather than judicial, function. (ECF No. 14 at 6-11, 13-14, 20-21.)

7

## C. The district court's dismissal of the action

The district court granted Judge Nichols' motion to dismiss. The district court determined that absolute judicial immunity barred plaintiffs' individual-capacity claims. (A37-38.)[1] In rejecting plaintiffs' argument that Judge Nichols performed an administrative rather than judicial function, the court reasoned that the immunity issue was controlled by this Court's decision in *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), *abrogated on other grounds by Bruen*, 597 U.S. at 19, which similarly involved individual-capacity claims against a state-court judge who had denied pistol-license applications. (A36-37.) The district court reasoned further that there was no plausible argument that Judge Nichols acted in the complete absence of jurisdiction. (A36 n.3.)

---

[1] The district court concluded that plaintiffs sought damages against Judge Nichols only in his individual capacity and sought declaratory and injunctive relief against him only in his official capacity. (A35 n.1, 28 n.2.) The court also declined to exercise supplemental jurisdiction over a claim arising under New York law. (A43-44.) Plaintiffs have abandoned any potential challenges to these findings by failing to brief them. *Francis v. Elmsford Sch. Dist.*, 442 F.3d 123, 124 (2d Cir. 2006).

Addressing plaintiffs' official-capacity claims for declaratory and injunctive relief against Judge Nichols, the district court concluded that their claims failed for want of an actual controversy. The court reasoned that, in ruling on plaintiffs' applications, Judge Nichols had applied N.Y. Penal Law § 400.00's standards as a neutral adjudicator rather than an enforcer of those standards, and thus lacked a legal interest that was adverse to plaintiffs' legal interests. The district court further found that plaintiffs could not obtain the injunctive relief requested—a request it construed as a request for an order enjoining Judge Nichols from applying Penal Law § 400.00—for the additional reason that the Eleventh Amendment bars any such relief against judges and plaintiffs' claims do not qualify under the narrow exception to that bar that Congress established in an amendment to 42 U.S.C. § 1983. (A39-40 & n.5.)

The district court accordingly dismissed plaintiffs' action in its entirety. (A44.) This appeal followed. (A45.)

## STANDARD OF REVIEW

This Court reviews the district court's ruling on a motion to dismiss *de novo*. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). The Court

accepts all factual allegations in the complaint as true and draws all reasonable inferences in plaintiffs' favor. *Id.* The Court does not, however, afford the same deference to legal conclusions stated in a complaint. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

## SUMMARY OF ARGUMENT

As the district court recognized, individuals seeking to challenge a state-court judge's rulings generally cannot sue the judge in federal court, and this case does not present one of the rare exceptions to that general rule.

The doctrine of absolute judicial immunity bars plaintiffs' individual-capacity claims against Judge Nichols. As the district court correctly recognized, this Court's decision in *Libertarian Party* controls. While plaintiffs disagree with *Libertarian Party,* they provide no reason to revisit it on this issue, which the Court correctly decided in any event. Judge Nichols, like the state-court judges named as defendants in *Libertarian Party*, performed a function that was judicial for federal immunity purposes when ruling on plaintiffs' applications—a question that has not been addressed by New York courts. Indeed, plaintiffs all but concede that Judge Nichols applied New York's pistol-licensing

10

statute to the facts of each case and thereafter advised each applicant in writing of his conclusions and supporting reasons. If plaintiffs believed that Judge Nichols erred, their recourse was to persuade a state appellate court to vacate his rulings, not to hold him individually accountable for his error in a federal lawsuit for damages. While plaintiffs additionally argue that affording Judge Nichols judicial immunity gives rise to an equal-protection violation by allowing only non-judicial licensing officers to be sued in federal court, that argument fails because it rests on the unsupported legal conclusion that non-judicial licensing officers are not similarly entitled to immunity.

Plaintiffs' official-capacity claims against Judge Nichols fail because they do not give rise to an Article III controversy. Plaintiffs named Judge Nichols as the sole defendant in their challenge to the constitutionality of New York's pistol-licensing statute, but Judge Nichols is not a proper defendant for that challenge. As a state-court judge, Judge Nichols had no legal interest adverse to plaintiffs' interests. His role was simply to apply the law as he understood it. While the lack of an Article III controversy defeats plaintiffs' official-capacity claims in toto, plaintiffs cannot obtain injunctive relief on their official-capacity

11

claims for the additional reasons that they have abandoned the request for injunctive relief that they made in their complaint, they failed to preserve the request for injunctive relief that they present on appeal by failing to seek that request in the district court, and 42 U.S.C. § 1983 in any event precludes a federal court from granting them injunctive relief against a state-court judge.

Accordingly, this Court should affirm.

# ARGUMENT

## POINT I

### ABSOLUTE JUDICIAL IMMUNITY BARS THE INDIVIDUAL-CAPACITY CLAIMS AGAINST JUDGE NICHOLS

The district court properly concluded that absolute judicial immunity protected Judge Nichols, a state-court judge, from a federal lawsuit against him in his individual capacity for any relief sought. Judicial immunity is immunity from suit, not just from the ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "The absolute immunity of a judge applies however erroneous the act may have been, and however injurious in its consequences it may have proved

to the plaintiff." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quotation omitted).

This Court has already held that judicial immunity bars suit against state-court judges sued in their individual capacities in federal court for rulings rendered on pistol-license applications. That precedent controls, and the Court should not revisit it.

## A. Under *Libertarian Party*, Judge Nichols Is Entitled to Judicial Immunity.

The district court's dismissal of plaintiffs' individual-capacity claims against Judge Nichols was required by *Libertarian Party of Erie Cnty. v. Cuomo*, where this Court held that judicial immunity barred such claims against state-court judges who allegedly relied on unconstitutional New York laws in denying pistol-license applications. 970 F.3d at 122-23. In rejecting the argument that the defendant judges performed an administrative, rather than judicial, function when ruling on pistol-license applications—the same argument plaintiffs raise here (ECF No. 14 at 6)—this Court reasoned that the judges rendered "[a]ctual rulings" on the merits of the individual applications before them, applying

controlling law to the facts of each case and explaining the bases for their conclusions. *Id.* at 123-25.

A "published panel decision is binding on future panels unless and until it is overruled by the Court en banc or by the Supreme Court." *Deem v. DiMella-Deem,* 941 F.3d 618, 623 (2d Cir. 2019). Indisputably, neither the Supreme Court nor this Court sitting en banc have held that New York judges do not perform a judicial function when they rule on pistol-license applications. And there is no material difference between Judge Nichols' rulings on plaintiffs' applications and the rulings by the judges in *Libertarian Party*. As a result, *Libertarian Party* controls.

Indeed, plaintiffs do not attempt to distinguish *Libertarian Party*. Instead, they attack its reasoning as conflicting with statements from New York courts purportedly characterizing the adjudication of pistol applications as administrative. (Br. at 5-6). But an assertion that a prior panel wrongly decided a case is not a sufficient basis for another panel to disturb that decision. *Licci by Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 219-20 (2d Cir. 2016).

Plaintiffs are also mistaken as a substantive matter. This Court has rejected the "suggest[ion] that judicial immunity [to suit in federal court]

14

always turns on state law." *Gross v. Rell*, 585 F.3d 72, 82 (2d Cir. 2009). Rather, judicial immunity, as a defense to claims in federal court, is "defined by the *functions* it protects and serves." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (emphasis in original). Thus in *Gross,* this Court applied settled federal law to hold that a state-court judge was immune from suit on federal claims. 585 F.3d at 80. And in *Forrester v. White*, the Supreme Court held, without any reference to state law, that the act of demoting an employee was an administrative function not entitled to immunity, because there is no material difference between the employment decisions of a judge and the employment decisions of any other supervisor. 484 U.S. 219, 229 (1988).

Plaintiffs misplace their reliance on decisions from New York intermediate appellate courts that refer to judges acting in an "administrative capacity" as firearms licensing officers. (Br. at 9-10.) Those decisions hold only that rulings on pistol-license applications, like determinations of administrative agencies, are reviewable through a proceeding under article 78 of New York's Civil Practice Law and Rules. *See, e.g., County of Westchester v. D'Ambrosio,* 244 A.D.2d 334 (2d Dep't 1997). They do not purport to address the question presented here, namely whether the

act of ruling on a pistol-license application is judicial in character and thus renders those who perform that act immune from suit. To date, New York state courts do not appear to have confronted that question at all.

Judicial immunity may attach even to administrative officials who perform judicial functions—like the members of a state medical board who revoke a medical license. *See Applewhite v. Briber*, 506 F.3d 181, 182 (2d Cir. 2007); *see also Montero v. Travis*, 171 F.3d 757, 760-61 (2d Cir. 1999) (extending absolute immunity to parole board members who decide whether to grant parole release upon finding their functions "quasi-judicial").

Plaintiffs therefore fail to cast doubt on *Libertarian Party*'s conclusion that, for purposes of immunity from suit in federal court, the act of ruling on pistol-license applications is judicial in character.

Plaintiffs nonetheless argue that this Court's decision in *Libertarian Party* conflicts with the Eleventh Circuit's decision in *Baughcum v. Jackson*, 92 F.4th 1024 (11th Cir. 2024). Even if that were so, it would not provide a basis to revisit *Libertarian Party*. In fact, however, there is no conflict between these decisions. In *Baughcum*, the Eleventh Circuit held that judicial immunity did not apply to Georgia probate court judges

16

who processed pistol-license applications. (Br. at 23-24.) Central to *Baughcum*'s reasoning was that "[w]hen issuing these licenses, the probate judges act more like a municipal clerk than a judicial decisionmaker"; in other words: "[i]f a person meets the statutorily defined criteria, he gets a license. If not, he doesn't." 92 F.4th at 1033. Nothing in *Baughcum* suggests that the Eleventh Circuit would similarly decline to apply judicial immunity to state-court judges that must exercise a degree of judgment in reviewing whether an applicant satisfies the statutory criteria for a pistol license. *See Antonyuk v. Chiumento*, 89 F.4th 271, 307 (2d Cir. 2023) (describing "bounded discretion afforded to licensing officers by the character provision"). In fact, the ability of state-court judges to exercise some degree of judgment under New York law is the root of plaintiffs' Second Amendment challenge (A11-13), dispelling any contention that Judge Nichols performed "a ministerial function that the legislature happened to assign to [state-court] judges." *Baughcum*, 92 F.4th at 1033.

In short, *Libertarian Party* remains good law and squarely bars individual-capacity claims of the type plaintiffs asserted against Judge

Nichols. For this reason alone, the district court properly dismissed those claims.

**B. In Ruling on Plaintiffs' Pistol-License Applications, Judge Nichols Performed a Judicial Function Within His Jurisdiction, for Purposes of Immunity to Suit in Federal Court.**

Plaintiffs ask the Court to overrule *Libertarian Party* by way of its "mini en banc" procedure (Br. at 37), which permits it to overrule a prior panel if it polls all active judges and receives no objection. *See Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 & n.9 (2d Cir. 2009) (describing procedure). The cases where the Court has utilized this procedure presented unique circumstances. In *Doe v. Bin Laden*, for example, the Court overruled a holding that was neither adequately briefed nor central to the dispute in the previous case. *See* 663 F.3d 64, 70 n.10 (2d Cir. 2011). And in *Shipping Corp. of India*, the Court overruled a prior ruling with significant but unforeseen consequences. 585 F.3d 58, 61-62 (2d Cir. 2009). Plaintiffs do not present the Court with any such unique circumstances.

Moreover, Judge Nichols would be entitled to judicial immunity even if *Libertarian Party* had not been decided. In determining whether

18

judicial immunity applies, courts must determine whether the allegedly unlawful act was: (1) judicial in nature, and (2) taken "in the complete absence of jurisdiction." *Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2004). In assessing whether an act qualifies as a judicial function, courts look to a number of factors, including the defendant's insulation from political influence; the presence of safeguards that reduce the need for an action for damages; the existence of an adversarial process; the importance of precedent; the possibility of correction on appeal; and "the need to assure that the individual can perform his functions without harassment or intimidation." *Gross*, 585 F.3d at 88.

These factors strongly support Judge Nichols' immunity from suit. Procedurally, plaintiffs received abundant safeguards. Judge Nichols gave plaintiffs an opportunity to appear at a formal hearing, even though the statute required only an "interview," Penal Law § 400.00(1)(o), and at that hearing plaintiffs were afforded the rights to an attorney and to call witnesses. Both plaintiffs declined these rights, but availed themselves of an opportunity to testify under oath to facts they believed established their qualifications to hold a pistol license. (ECF No. 6-4 at 3; ECF No. 6-5 at 3.)

19

This process led to Judge Nichols' rulings on plaintiffs' pistol-license applications. Judge Nichols' opinion that plaintiffs lacked the "maturity and responsibility" to safely possess firearms (ECF No. 14-3) mirrored Penal Law § 400.00(1)(b)'s requirement that applicants must possess "the essential character, temperament and judgement necessary to be entrusted with a weapon." And his reasons—that Kellogg was evasive about omitting material information from his application and Harmon had a lengthy criminal history (ECF No. 14-3)—find ample support in precedent. *See, e.g.*, *Matter of Feerick v. McGuire*, 159 A.D.3d 1155, 1156 (3d Dep't 2018) (denial of pistol license supported by nondisclosure of criminal history); *Matter of Hock v. Scarpino*, 185 A.D.2d 237, 238 (2d Cir. 1992) (same, as to criminal history that included a robbery charge that terminated with a youthful-offender adjudication). Plaintiffs do not suggest that Judge Nichols' rulings were influenced by any considerations unrelated to the statutory definition of good moral character. In other words, Judge Nichols simply rendered rulings on the merits—the "principal hallmark of the judicial function." *Bliven*, 579 F.3d at 211.

20

To the extent plaintiffs believed that Judge Nichols misapplied the good moral character requirement (or any other licensing criterion) or wished to argue that the licensing criteria were unconstitutional in application, they had an adequate remedy. The rulings of a state-court judge on the merits of a pistol-license application are subject to review and correction under state law through a proceeding under article 78 of New York's Civil Practice Law and Rules that functions much like an appeal. Had plaintiffs commenced such proceedings, a state appellate court—rather than a state supreme court—would have reviewed the merits of Judge Nichols' rulings, based on the record that was before Judge Nichols in each case, with further review potentially available by the New York Court of Appeals. *See* N.Y. C.P.L.R. 506(b)(1), art. 56, & 7804(b), (d), (e); *see also Matter of Unger v. Rozzi*, 206 A.D.2d 974, 975 (2d Dep't 1994). Indeed, New York's courts have vacated pistol-license rulings based on *Bruen* challenges, *see, e.g., Matter of Diperna-Gillen v. Ryba*, 215 A.D.3d 1193, 1194 (3d Dep't 2023); *Matter of Vicari v. Shea*, 215 A.D.3d 510, 510 (1st Dep't 2023), and plaintiffs fail to show that this remedy is inadequate. At the same time, unlike federal § 1983 actions, article 78 proceedings do not require state-court judges to sit for depositions,

21

potentially incur financial liability, or expose them to contempt sanctions on remittal based on misinterpretations of an appellate court's decree or new errors of law. As courts applying judicial immunity recognize, such proceedings are thus consistent with the rationale underlying state-court judges' immunity to federal lawsuits. *See Sibley v. Lando*, 437 F.3d 1067, 1071 n.5 (11th Cir. 2005).

Plaintiffs nonetheless argue (Br. at 16-17) that judicial immunity should not apply because the pistol-license application process was informal and non-adversarial. They are mistaken. Judicial immunity does not depend on the presence of formalities like motion practice and discovery. *See Libertarian Party*, 970 F.3d at 123. Nor does the absence of an adversary in the application process make Judge Nichols' rulings any less judicial. Courts and judges perform other judicial acts with no adverse party present, such as issuing search warrants ex parte, *Stump v. Sparkman*, 435 U.S. 349, 363 n.12 (1978), or issuing domestic-violence restraining orders, to which judicial immunity also applies. *Tewari v. Sattler*, No. 23-36-cv, 2024 WL 177445 at *1 (2d Cir. Jan. 17, 2024) (summary order).

Moreover, while judicial immunity can be overcome by a showing that a judge acted in the complete absence of jurisdiction, there was no such showing here. For purposes of judicial immunity, "jurisdiction" is synonymous with subject-matter jurisdiction. Thus, judicial immunity does not protect a probate-court judge who sentences criminal defendants to prison, but it does protect a criminal-court judge who imposes a sentence in excess of the statutory maximum. *Maestri v. Jutkofsky*, 860 F.2d 50, 53 (2d Cir. 1988). That Judge Nichols had the authority to rule on the pistol-license applications in front of him is readily apparent, given that New York law expressly tasked him with ruling on such applications in his county and plaintiffs resided in his county. Penal Law § 265.00(10).

Plaintiffs agree that Judge Nichols had the authority to rule on pistol-license applications, but nonetheless assert that he acted without jurisdiction because he derived his authority from New York's Penal Law, rather than its Judiciary Law. (Br. at 10-11.) If the authority exists, however, its source is irrelevant. In fact, the Judiciary Law does not mention domestic-violence restraining orders or search warrants, even though a judge's issuance of either is entitled to judicial immunity. New York courts have specifically remarked that pistol-license rulings lie

23

within the "jurisdiction" of County Court judges like Judge Nichols. *See Matter of Schiavone v. Punch*, 34 A.D.3d 1366, 1366 (4th Dep't 2006).

Plaintiffs do not advance their cause by relying on the lack of pistol licenses during the Founding Era to argue that judicial immunity cannot attach to rulings on pistol-license applications today. (Br. at 12-14.) What matters is that *judicial immunity* existed during the Founding Era; the doctrine actually originated in medieval times. *Huminski*, 396 F.3d at 74 n.22. If plaintiffs' historical argument were correct, then judges' risk of personal liability would increase with the novelty of the issues they decide. And the result of accepting such an argument would be to expose judges to the type of intimidation that would undermine their independence, which in turn would "detract from the rule of law instead of contributing to it." *Forrester*, 484 U.S. at 223.

Plaintiffs seek to minimize this potential for harassment and intimidation by relying on the heightened showing required to obtain equitable relief. (Br. at 34-35.) They ignore the fact that the district court applied judicial immunity to Judge Nichols only for purposes of their individual-capacity claims for retrospective relief, including damages. Indeed, in their complaint, they specifically allege that money damages

24

are necessary to hold Judge Nichols "individually accountable" for ruling against them (A16), and to "motivate[ ]" other judges to adopt their reading of *Bruen* (A25). Judicial immunity exists precisely to protect judges from the coercive effect of money damages. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967). Accordingly, judicial immunity properly shielded Judge Nichols from an individual-capacity suit.[2]

## C.     The Application of Judicial Immunity to Judge Nichols Does Not Give Rise to an Equal-Protection Claim.

Plaintiffs are also incorrect to argue that treating Judge Nichols as a judicial officer protected by absolute judicial immunity would give rise to an equal-protection violation, because in certain downstate counties licensing officers are not judges.

In support of their equal-protection claim, plaintiffs rely on the assumption that pistol-license applicants residing in New York City or Long Island can maintain federal lawsuits against the non-judge officials who rule on pistol-license applications in those areas. This is not a factual

---

[2] To the extent plaintiffs suggest that the state remedies of mandamus and article 78 review are insufficient to provide adequate relief, they are mistaken, as demonstrated *supra,* at 21.

allegation, but an unsupported legal conclusion that, on a motion to dismiss, need not be accepted as true. *See Whiteside*, 995 F.3d at 321. Indeed, judicial immunity may well extend to all pistol-licensing officers, regardless of whether they hold the title of "judge." *See Applewhite*, 506 F.3d at 182. And even if judicial immunity did not extend to all pistol-licensing officers, those who are not judges would be protected by qualified immunity, and plaintiffs make no claim that the difference between those immunities as applied in their particular circumstances would be sufficient for them to state an equal-protection claim. Plaintiffs' allegations thus fail to support an equal-protection claim.

## POINT II

### PLAINTIFFS CANNOT OBTAIN ANY RELIEF AGAINST JUDGE NICHOLS IN HIS OFFICIAL CAPACITY

When this Court in *Libertarian Party* applied absolute judicial immunity to the individual-capacity claims against the judge defendants who had denied pistol-license applications, it noted that those defendants had declined to oppose review of the merits of the official-capacity claims against them. *Id.* at 117. Though *Libertarian Party* thus does not control

the viability of plaintiffs' official-capacity claims against Judge Nichols,[3]

those claims necessarily fail under Supreme Court precedent.

## A. There Is No Actual Controversy Between Plaintiffs and Judge Nichols.

As the district court correctly concluded, plaintiffs' official-capacity

claims against Judge Nichols fail for want of an actual controversy.

Under Article III of the Constitution, federal courts may only decide

questions as necessary to resolve an actual "case" or "controversy."

*Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). For Article III purposes,

an actual controversy requires a dispute that: (1) is "definite and

concrete, touching the legal relations of parties having adverse legal

interests"; and (2) remediable by "specific relief through a decree of a

conclusive character." *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 354 (2d

Cir. 2020) (quotation omitted). Plaintiffs' official-capacity claims do not

satisfy either requirement.

---

[3] Judge Nichols is no longer a state-court judge, having retired in 2023. That development does not moot plaintiffs' official-capacity claims against him, however, because a judgment in plaintiffs' favor would be enforceable against "future successive officers." *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 123 (2d Cir. 2019).

As to the adversity requirement, plaintiffs and Judge Nichols are not parties with adverse legal interests. Plaintiffs describe their injury as Judge Nichols' application of N.Y. Penal Law § 400.00, a statute they assert establishes an "unconstitutional licensing scheme" (A25). However, as the Supreme Court recently explained, "no case or controversy exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 40 (2021) (quotations omitted). And as the First Circuit explained in *In re Justices of Supreme Court of Puerto Rico,* when judges serve as neutral adjudicators rather than administrators, enforcers, or advocates of a statute challenged as invalid, no actual controversy exists. 695 F.2d 17, 21-22 (1st Cir. 1982); *see also Lindke v. Tomlinson*, 31 F.4th 487, 493 (6th Cir. 2022) (describing *In re Justices* as the "seminal case" on official-capacity claims against judges); *Allen v. DeBello*, 861 F.3d 433, 440 (3d Cir. 2017) (same).

The nature of the judge's function in relation to the challenged statutes is a matter of state law. *Lindke*, 31 F.4th at 493. The Sixth Circuit recently applied this principle to hold that no actual controversy existed between a state-court judge who issued a domestic violence

restraining order and a litigant who sought a declaration that the statute authorizing such orders was unconstitutional. *Id.* at 489. The Sixth Circuit observed that private parties, not the judge, initiated the underlying action, and that law enforcement, not the judge, was responsible for enforcing any orders the judge issued. *Id.* at 493-94.

Like the judge sued in *Lindke*, Judge Nichols served as an adjudicator, rather than an enforcer or advocate. Just as the judge in *Lindke* was responsible for determining whether the applicant for a restraining order had satisfied a definition of "reasonable cause," Judge Nichols was responsible for determining whether plaintiffs satisfied the criteria on which Penal Law § 400.00(1) conditions the issuance of a pistol license. In other words, Judge Nichols "simply decides the questions at issue." *Lindke*, 31 F.4th at 493. Judge Nichols played no role in fashioning Penal Law § 400.00(1)'s criteria. Nor did his views about the wisdom of that statute factor into his rulings. If Penal Law § 400.00 changed for any reason, Judge Nichols would be obliged as a judge to apply the statute as revised.

Relatedly, Judge Nichols' involvement with plaintiffs ended once he denied their pistol-license applications. As plaintiffs acknowledge (A28),

29

New York enforces its licensing regime by criminalizing the unlicensed possession of a concealed firearm. *See* N.Y. Penal Law § 265.01. If plaintiffs chose to carry firearms without a license and someone alerted Judge Nichols, he would have no enforcement authority, and could do no more than notify the police or the appropriate district attorney. As to New York's pistol-licensing statutes, then, Judge Nichols lacked *any* "personal or institutional stake on either side of the constitutional controversy," and his legal interests were not adverse to plaintiffs' interests. *In re Justices of Supreme Court of Puerto Rico*, 695 F.2d at 21.

In arguing to the contrary, plaintiffs seek to rely on the fact that a group of judges commented about the 1963 bill that was later codified as Penal Law § 400.00. (Br. at 30-31.) Those same historical materials demonstrate that the 1963 bill simply rearranged preexisting statutory standards (A49, 52, 56-57, 62, 64, 69, 71, 77, 87) with "absolutely no substantive changes" (A62). And since 1963, the Legislature has amended Penal Law § 400.00 numerous times. *See, e.g.*, L. 1973, ch. 546, § 1; L. 1988, ch. 437, § 1; L. 1994, ch. 637, § 1; L. 2005, ch. 195, § 1; L. 2013, ch. 98, § 3. The comments of a group of individual judges on which

30

plaintiffs rely thus fail to demonstrate that even those particular state-court judges shaped the standards plaintiffs allege are unconstitutional.

As to the requirement for a remediable controversy, neither a declaration nor an injunction issued against Judge Nichols would remedy plaintiffs' claimed injuries. Plaintiffs acknowledge that Judge Nichols has already ruled on their applications. If a federal court agreed that Judge Nichols had erred by applying N.Y. Penal Law § 400.00 as written, a declaration to that effect and an order enjoining Judge Nichols from applying that law to future pistol-license applications would not alter plaintiffs' legal rights as to the applications that were previously denied. Plaintiffs would need to submit new applications, and Judge Nichols' successor would need to rule on them under whatever law controlled. And a declaration that Judge Nichols violated plaintiffs' rights when he denied their applications amounts to a retrospective declaration that Judge Nichols *had* violated federal law, which the Eleventh Amendment does not permit. *McGinty v. New York*, 251 F.3d 84, 101 (2d Cir. 2001). Given that plaintiffs have nothing to gain from their requested relief, the

district court correctly determined that it should proceed no further. *See Opala v. Watt*, 454 F.3d 1154, 1158-59 (10th Cir. 2006).[4]

Plaintiffs also assert that federal courts may entertain a request for "purely prospective declaratory relief" against a judge. (Br. at 26.) Plaintiffs rely on language to that effect from this Court's summary order in *Kelsey v. Clark*, No. 22-22, 2023 WL 1980307 (2d Cir. Feb. 14, 2023). In that case, however, the Court affirmed the dismissal of an action where the appellant, like plaintiffs here, sought a declaration that a state-court judge applied an unconstitutional legal standard in a "*now-concluded* state-court action." 2023 WL 1980307 at *1 (emphasis in original). Indeed, the Court expressly stated that the appellant could not manufacture an Article III controversy by asserting an interest in preventing the judge from *potentially* applying unconstitutional law in the future. *Id.* at *2. Far from supporting plaintiffs' asserted right to declaratory relief, *Kelsey* suggests that the assertion is "frivolous." *Id.* at *1.

---

[4] Plaintiffs concede that they are "not seeking to set aside a judgment" (Br. at 27), and the district court would not have had the jurisdiction to issue an injunction that "would effectively reverse the state court judgment" in any case. *Stern v. Nix*, 840 F.2d 208, 212 (3d Cir. 1988).

**B.     Plaintiffs Are Not Entitled to Injunctive Relief Against Judge Nichols for Additional Reasons.**

The absence of an Article III controversy prevents plaintiffs from proceeding with any of their official-capacity claims, regardless of the relief they seek. Nevertheless, the district court correctly found that plaintiffs cannot obtain injunctive relief against Judge Nichols for the additional reason that they cannot establish the applicability of any of the limited exceptions under which federal courts may enjoin state-court judges from exercising their jurisdiction.

Preliminarily, the district court appears to have assumed that plaintiffs sought injunctive relief to enjoin Judge Nichols from enforcing New York's pistol-licensing law against them, and the court then proceeded to hold that no such relief was available. While plaintiffs' brief to the Court asserts that they sought that injunctive relief (Br. at 4), plaintiffs' complaint in fact sought to enjoin only enforcement of *other* state statutes, namely those that criminalize the unlicensed possession of firearms and permit consideration of sealed criminal dispositions (A28). Plaintiffs thus failed to preserve for this Court's review the request for injunctive relief that the district court addressed. And because plaintiffs do not meaningfully address in their brief to the Court the only form

of injunctive relief that they actually sought below—an injunction to enjoin enforcement of the state statutes that criminalize the unlicensed possession of firearms and permit consideration of sealed criminal dispositions—they have abandoned that request on appeal. *Francis v. Elmsford Sch. Dist.*, 442 F.3d at 124.

In any event, and as the district court correctly explained, the Eleventh Amendment bars suits for any form of relief against state entities or officials in their official capacities, including state-court judges. While the Supreme Court carved out an exception to Eleventh Amendment immunity to address ongoing violations of federal law in *Ex parte Young*, 209 U.S. 123 (1908), that opinion specifically exempted state-court judges, cautioning that to subject them to injunctive relief "would be a violation of the whole scheme of our government." 209 U.S. at 163.

It is true that, in *Pulliam v. Allen*, 466 U.S. 522 (1984), on which plaintiffs rely (Br. at 26, 34-35), the Supreme Court broadly permitted suits for prospective injunctive relief to go forward against state-court judges. *Id.* at 541-42. However, Congress thereafter amended 42 U.S.C. § 1983 specifically to abrogate that holding. *See Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019) (discussing this

history). As amended, 42 U.S.C. § 1983 now establishes the sole basis on which a federal court may award injunctive relief against a judge, and it provides that:

> in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Because plaintiffs do not—and cannot—allege either that Judge Nichols violated a declaratory decree or that there was no court (including a state court) where they could obtain declaratory relief, the district court had no basis to award an injunction against Judge Nichols.

Plaintiffs now argue (Br. at 24-26) that an article 78 proceeding would not have provided an appropriate vehicle to obtain declaratory relief. While it is true that facial constitutional challenges may not be raised in an article 78 proceeding challenging a state judge's denial of a pistol license, the state courts that have so held have instructed litigants who have sought to do so that they may bring such challenges in declaratory judgment actions in state Supreme Court. *See Matter of Husenjovic v. DeProspo*, No. 2023-02771, 2024 WL 950125 at *1 (2d Dep't March 6, 2024); *accord Sibley v. Watches*, 194 A.D.3d 1385, 1388 (4th Dep't 2021);

35

*Matter of Gaul v. Sober*, 186 A.D.3d 1821, 1822 (3d Dep't 2020). And litigants can always raise as-applied constitutional challenges in article 78 actions challenging the denial of their applications and can obtain reversals of the denials on such grounds. See *supra* at 21. Having failed to pursue available avenues for state-court relief, plaintiffs may not pursue injunctive relief against Judge Nichols as a state-court judge.

Even if plaintiffs were correct that dismissal of their action would effectively render them unable to obtain any federal relief based on the denial of a pistol application (Br. at 36), they have no "unqualified right" to bring their constitutional claims by suing state-court judges in federal court.[5] *Whole Woman's Health*, 595 U.S. at 49. Plaintiffs can vindicate their Second Amendment rights in C.P.L.R. article 78 proceedings, in stand-alone declaratory judgment actions in state court and, if necessary, as defenses in criminal cases. Despite plaintiffs' preference for a federal forum, "those seeking to challenge the constitutionality of state laws are

_____

[5] In *Antonyuk*, this Court held that a plaintiff who has not applied for a license based on objections to the statutory requirements may seek declaratory relief in federal court against defendants who "refus[e] to process applications omitting the required information." 89 F. 4th at 308. Plaintiffs have not argued that they may bring this suit under the theory recognized in *Antonyuk*.

36

not always able to pick and choose the timing and preferred forum for their arguments." *Id*. In short, the district court rightly declined to interfere with Judge Nichols' exercise of jurisdiction as a state-court judge.

## CONCLUSION

This Court should affirm the district court's judgment.

Dated:  April 18, 2024
        Albany, New York

                        Respectfully submitted,

                        LETITIA JAMES
                          *Attorney General*
                          *State of New York*
                        Attorney for Appellee

                  By:   */s/ Jonathan D. Hitsous*
                        JONATHAN D. HITSOUS
BARBARA D. UNDERWOOD        Assistant Solicitor General
  *Solicitor General*
ANDREA OSER                 The Capitol
  *Deputy Solicitor General*      Albany, New York 12224
JONATHAN D. HITSOUS        (518) 776-2044
  *Assistant Solicitor General*
     *of Counsel*

37

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Jonathan D. Hitsous, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 7,025 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

_/s/  Jonathan D. Hitsous_