23-8093-cv
Kellogg v. Nichols

# United States Court of Appeals
# for the Second Circuit

August Term, 2024

(Argued: September 25, 2024                Decided: August 18, 2025)

Docket No. 23-8093-cv

_____

JEREMY KELLOGG, JONATHAN HARMON,

*Plaintiffs-Appellants*,

v.

JONATHAN D. NICHOLS, individually and in his capacity as statutory licensing officer pursuant to Penal Law 265.00(10); 400.00, et seq.,

*Defendant-Appellee*.[*]

_____

Before:

    RAGGI, WESLEY, and LOHIER, *Circuit Judges*.

    The Plaintiffs are New York State residents who applied for concealed carry licenses under the State's firearms licensing laws. Jonathan D. Nichols, a state court judge serving as a statutory firearms licensing officer, reviewed and denied their applications for failing to meet the statutory criteria for eligibility for

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

a license.  The Plaintiffs sued Judge Nichols in his individual and official capacities under 42 U.S.C. § 1983, alleging that New York's firearms licensing laws violate their rights under the Second and Fourteenth Amendments to the Constitution.  The United States District Court for the Northern District of New York (Hurd, *J.*) dismissed the Plaintiffs' § 1983 claims, holding that absolute immunity barred their individual-capacity claims because Judge Nichols acted in his judicial capacity in ruling on their applications, and that § 1983 and Article III's case-or-controversy requirement barred their claims for injunctive relief and declaratory relief, respectively.  We reaffirm this Court's precedent that judicial officers act in a judicial capacity when they decide firearms license applications and, therefore, enjoy absolute immunity from suit in their individual capacities.  We further hold that the Plaintiffs' specific claims for injunctive relief and declaratory relief against Judge Nichols in his official capacity are barred by Article III's case-or-controversy requirement.  **AFFIRMED**.

> AMY L. BELLANTONI, The Bellantoni Law Firm, PLLC, Scarsdale, NY, *for Plaintiffs-Appellants*.
>
> JONATHAN D. HITSOUS, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General for the State of New York, Albany, NY, *for Defendant-Appellee*.

LOHIER, *Circuit Judge*:

    This appeal from a dismissal of an action brought under 42 U.S.C. § 1983 concerns judicial immunity and federal jurisdiction to review the decisions of a state court judge.  It arises from a federal lawsuit filed by Jeremy Kellogg and Jonathan Harmon against New York state court Judge Jonathan D. Nichols.  Judge Nichols, the Plaintiffs claim, unconstitutionally rejected their applications

2

for a firearms license under New York State's Penal Law § 400.00 in violation of their Second and Fourteenth Amendment rights.

The Plaintiffs sued Judge Nichols in both his individual and official capacities. The District Court dismissed the individual-capacity claims as barred by absolute judicial immunity. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). The District Court also dismissed the Plaintiffs' official-capacity claims for injunctive and declaratory relief.

We agree with the District Court that the Plaintiffs' individual-capacity claims are barred by absolute judicial immunity. We further conclude that Article III's case-or-controversy requirement bars official-capacity claims under § 1983 against state court judges who rule on firearms license applications under New York state law. Affirmed.

## BACKGROUND

"New York maintains a general prohibition on the possession of 'firearms' absent a license." *Antonyuk v. James*, 120 F.4th 941, 974 (2d Cir. 2024) (quoting *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 85 (2d Cir. 2012)). New York Penal Law § 400.00 "is the exclusive statutory mechanism for the licensing of firearms

3

in New York State." *Id.* Other sections of New York's Penal Law provide criminal penalties for possession of a firearm without a license. *See* N.Y. Penal Law §§ 265.00(3), 265.01 *et seq.*, and 265.20(a)(3).

New York residents can be licensed to "have and carry concealed [pistols or revolvers], without regard to employment or place of possession subject to the restrictions of state and federal law." *Id.* § 400.00(2)(f). To be eligible for a concealed-carry or pistol license, an applicant must demonstrate "good moral character," defined as "the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others." *Id.* § 400.00(1).

New York residents seeking a firearms license must apply to their local licensing officer. *Id.* § 400.00(3). In Columbia County, New York, where the Plaintiffs reside, the licensing officer is "a judge or justice of a court of record having his office in the county of issuance," including, as relevant here, a county court judge.[1] *Id.* § 265.00(10). After a local police investigation, the licensing officer reviews the application and must "either deny the application for reasons

---

[1] In Nassau County, Suffolk County, and the five counties that comprise New York City, the police commissioner or county sheriff serves as the licensing officer. N.Y. Penal Law § 265.00(10).

4

specifically and concisely stated in writing or grant the application and issue the license applied for." *Id.* § 400.00(4-b).

In 2022 Kellogg and Harmon separately applied for pistol licenses with the Columbia County Sheriff's Office. Their applications were assigned to Judge Nichols in his capacity as a statutory licensing officer for Columbia County. After hearings on the applications, Judge Nichols determined that Kellogg's criminal arrest history and inadequate explanations for failing to disclose that history in his application demonstrated that he lacked the requisite maturity or responsibility to hold a license. As for Harmon, Judge Nichols ruled that Harmon's criminal history, including a youthful-offender adjudication for first-degree robbery, likewise demonstrated that he lacked the requisite maturity or responsibility to have a license.

In June 2023 Kellogg and Harmon filed this action against Judge Nichols, asserting six § 1983 claims for violating the Second and Fourteenth Amendments, as well as one state law claim. The Plaintiffs' § 1983 claims against Judge Nichols in his individual capacity sought nominal monetary damages. The federal claims against Judge Nichols in his official capacity sought both declaratory and injunctive relief. They sought a declaratory judgment that New York's licensing

5

scheme violates the Second and Fourteenth Amendments. They also sought an injunction against the enforcement of New York Penal Law Sections 265.01, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04(2), which criminalize the unlicensed possession of firearms, and New York Executive Law Section 296(16), which concerns criminal history disclosures on firearms license applications. Judge Nichols moved to dismiss the claims for lack of subject matter jurisdiction and for failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

The District Court granted the motion to dismiss. *Kellogg v. Nichols*, 703 F. Supp. 3d 367, 376 (N.D.N.Y. 2023). Relying on our decision in *Libertarian Party*, the District Court concluded that judicial immunity barred the Plaintiffs' individual-capacity claims against Judge Nichols, who had acted in his judicial capacity in denying their applications. *Id.* at 371–73. The District Court also dismissed the Plaintiffs' official-capacity claims for declaratory relief as barred by Article III's case-or-controversy requirement, and their claims for injunctive relief as barred by § 1983. *Id.* at 373–75; *see* 42 U.S.C. § 1983 (permitting suit "except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

6

declaratory decree was violated or declaratory relief was unavailable"). The District Court then declined to exercise supplemental jurisdiction over the remaining state law claim. *Kellogg*, 703 F. Supp. 3d at 375.

## DISCUSSION

We review *de novo* both the grant of a motion to dismiss under Rule 12(b)(6) as well as the grant of a Rule 12(b)(1) motion that "is based solely on the complaint and the attached exhibits." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210–11 (2d Cir. 2020); *see Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024). "[A] motion under Rule 12(b)(1) may also rely on evidence beyond the pleadings. When a defendant makes such a fact-based motion, the plaintiff may respond with evidence of its own. We then review the district court's legal conclusions de novo and its factual findings for clear error." *SM Kids*, 963 F.3d at 210 (cleaned up).

## I

We begin with the Plaintiffs' § 1983 claims against Judge Nichols in his individual capacity. "[J]udges generally have absolute [judicial] immunity from suits for money damages for their judicial actions," but not for actions taken in an administrative, legislative, or executive capacity. *Bliven v. Hunt*, 579 F.3d 204,

7

209–10 (2d Cir. 2009); *see Forrester v. White*, 484 U.S. 219, 227–30 (1988). "In determining whether an act by a judge is 'judicial,' thereby warranting absolute immunity, we are to take a functional approach, for such 'immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches.'" *Bliven*, 579 F.3d at 209–10 (quoting *Forrester*, 484 U.S. at 227). Generally speaking, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Id.* at 210. "The principal hallmark of the judicial function is a decision in relation to a particular case." *Id.* at 211.

In *Libertarian Party*, this Court addressed whether state court judges are immune from individual-capacity claims for actions taken as firearms licensing officers in New York. We determined that two New York state court judges functioned in their judicial capacity when they denied firearms license applications. *Libertarian Party*, 970 F.3d at 123–25. Firearms licensing officers render "[a]ctual rulings," we explained, that "directly address[] the specific applications, refer[] to relevant requirements of § 400.00, and decide[] the merits of the applicants' requests." *Id.* at 124. Because these rulings are "judicial decisions" rather than administrative actions, we held that state court judges are

8

entitled to absolute immunity from claims asserted against them in their individual capacities as firearms licensing officers. *Id.* at 125.

The Plaintiffs acknowledge that *Libertarian Party* forecloses their individual-capacity claims. They nevertheless ask us to overturn it as wrongly decided. Appellants' Br. 6, 36–38. They argue that *Libertarian Party* is in "conflict with New York State's interpretation" of Penal Law § 400.000 that firearms licensing officers act in an "administrative capacity." Appellants' Br. 37. As the Plaintiffs recognize, however, "we . . . are bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004). The Plaintiffs do not, and cannot, argue that either exception applies to *Libertarian Party* insofar as it addresses judicial immunity. *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 (2d Cir. 2009).

Here, the Plaintiffs' firearms license applications were referred to Judge Nichols because he served as "a judge . . . of a court of record having his office in" Columbia County, New York. N.Y. Penal Law §§ 265.00(10). In that capacity, Judge Nichols reviewed the Plaintiffs' firearms license applications, decided the merits of those applications based on the requirements of Penal Law

9

§ 400.00, and explained why he denied the licenses. Consistent with *Libertarian Party*, we must conclude, as the District Court did, that both denials constituted "judicial decisions" for which Judge Nichols was entitled to absolute judicial immunity from suit for damages in his individual capacity. 970 F.3d at 125. We therefore affirm the District Court's dismissal of the Plaintiffs' individual-capacity claims.[2]

## II

We turn next to the Plaintiffs' § 1983 claims against Judge Nichols in his official capacity. These claims seek to enjoin enforcement of New York's firearms licensing laws and criminal statutes punishing possession of firearms for self-defense and also seek a declaratory judgment that the State's licensing scheme violates the Second and Fourteenth Amendments and that Judge Nichols violated the Plaintiffs' Second and Fourteenth Amendment rights. The District Court held that Article III barred the claims for declaratory relief and that the Plaintiffs' specific claims for injunctive relief were not subject to § 1983's narrow

---

[2] Because *Libertarian Party* controls our decision under the circumstances of this case, we express no views on whether decisions legislatively entrusted to judges in certain communities and to law enforcement officers in other communities are properly viewed differently depending on the decisionmaker for the purposes of recognizing whether the officials are entitled to absolute judicial immunity.

10

exception to Eleventh Amendment immunity for judicial officers. We conclude that Article III bars the claims for both declaratory and injunctive relief.

### A

Article III of the Constitution limits the "judicial Power" of the United States to actual "Cases" or "Controversies." U.S. Const. art. III, § 2; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 431 (2d Cir. 1994). "A controversy that is appropriate for judicial determination . . . must be definite and concrete, touching the legal relations of parties having adverse legal interests." *In re Motors Liquidation Co.*, 829 F.3d 135, 168 (2d Cir. 2016) (quotation marks omitted). Without a case or controversy between adverse parties, a federal court does not have subject matter jurisdiction over an action. *S. Jackson & Son*, 24 F.3d at 431; *see also Flast v. Cohen*, 392 U.S. 83, 95 (1968) (explaining that Article III's case-or-controversy requirement "limit[s] the business of federal courts to questions presented in an adversary context"). And we may have jurisdiction over some claims but not others. Article III jurisdiction "is not dispensed in gross; rather, plaintiffs must demonstrate" that we have Article III jurisdiction over "each

11

claim that they press and for each form of relief that they seek." *TransUnion*, 594 U.S. at 431.

In general, "no case or controversy" exists "between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute." *Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984) (citing *In re Justices of Sup. Ct. of P.R.*, 695 F.2d 17, 21 (1st Cir. 1982) (Breyer, *J.*)). "Judges sit as arbiters without a personal or institutional stake on either side of the constitutional controversy." *In re Justices*, 695 F.2d at 21. That is why a litigant "seeking to enjoin the enforcement of a statute on constitutional grounds ordinarily sues the enforcement official authorized to bring suit under the statute," not "the court or judges who are supposed to adjudicate the merits of the suit that the enforcement official may bring." *Id.* at 21–22. For that reason, a litigant challenging the constitutionality of a state law under § 1983 and a state court judge tasked with applying that law in a judicial proceeding are typically not adverse parties. *Mendez v. Heller*, 530 F.2d 457, 459–61 (2d Cir. 1976).

*Mendez* is instructive. There we considered whether a New York resident challenging the state's divorce laws could properly sue a New York Supreme Court Justice in connection with the judge's adjudication of divorce proceedings.

12

*See id.* at 458–60; *Mendez v. Heller*, 380 F. Supp. 985, 987–88 (E.D.N.Y. 1974). We determined that the judge's ruling on the divorce complaint reflected "a judicial function." *Mendez*, 530 F.2d at 460. As such, we held, the plaintiff's suit against the judge was properly dismissed for lack of a justiciable controversy because it did "not present the honest and actual antagonistic assertion of rights" that is "indispens[a]ble to adjudication of constitutional questions." *Id.* (quotation marks omitted); *see id.* at 461 ("We hold that . . . this action does not present the exigent adversity . . . which is an essential condition precedent to federal court adjudication. This, of itself, was a sufficient basis for the district court's dismissal of [the] complaint." (quotation marks omitted)).

Decisions from other circuits support our conclusion that there is no live case or controversy between New York state court judges serving as firearms licensing officers and litigants challenging the State's licensing scheme. "[T]he threshold consideration is whether the judge is acting, under the statute at issue, in an adjudicatory capacity or as an enforcer or administrator." *Lindke v. Tomlinson*, 31 F.4th 487, 491 (6th Cir. 2022) (citing *In re Justices*, 695 F.2d at 21–23); *see Reule v. Jackson*, 114 F.4th 360, 365 (5th Cir. 2024); *Frazier v. Prince George's Cnty.*, 140 F.4th 556, 562 (4th Cir. 2025). Circuits have adopted a functional

13

approach to evaluate whether a state court judge has acted in a judicial capacity in adjudicating a state statutory claim that is then challenged on constitutional grounds. *See In re Justices*, 695 F.2d at 21–25; *Allen v. DeBello*, 861 F.3d 433, 440–42 (3d Cir. 2017); *Frazier*, 140 F.4th at 562–63; *Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003); *R.W.T. v. Dalton*, 712 F.2d 1225, 1232–33 (8th Cir. 1983), *abrogated in part on other grounds by Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990); *Grant v. Johnson*, 15 F.3d 146, 148 (9th Cir. 1994). Using the same approach, we consider factors such as whether the judge may initiate proceedings under the statute, *see Lindke*, 31 F.4th at 493; whether the judge who has issued the order is responsible for enforcing it, *see id.*; whether the judge played a role in enacting the statute pursuant to which the order was issued, *see Allen*, 861 F.3d at 442; whether the judge is adequately alleged to have a personal or institutional stake in upholding the statute, *see In re Justices*, 695 F.2d at 21; and whether the challenged act is "a traditionally administrative task" like "fee collection." *Mendez*, 530 F.2d at 460; *see Allen*, 861 F.3d at 442.

Applying these factors here, we conclude that Judge Nichols acted as a judicial officer in denying the Plaintiffs' firearms license applications and that the Plaintiffs and Judge Nichols are decidedly not parties "having adverse legal

14

interests" with respect to the Plaintiffs' claims for declaratory and injunctive relief. *See Motors Liquidation Co.*, 829 F.3d at 168. In particular, New York judges serving as licensing officers do not have the authority to initiate enforcement actions. While they adjudicate the merits of the applications submitted to them, *see* N.Y. Penal Law § 400.00, they have no independent enforcement authority or role in criminal prosecutions to enforce the statute. New York State, acting through various law enforcement officers, and not the judge who adjudicates a firearms license, is authorized to enforce the licensing regime by prosecuting the unlicensed possession of a concealed firearm. *See* N.Y. Penal Law §§ 265.01 *et seq*. Further, judges acting as licensing officers have no role in determining Penal Law § 400.00(1)'s criteria for issuing licenses;[3] if those criteria were ever to

---

[3] The Plaintiffs contend that a group of New York county court judges had a stake in the constitutional litigation relating to the penal statute because they commented on the 1963 bill that was later codified as Penal Law § 400.00. But a careful review of the legislative history reveals that the 1963 bill merely reordered existing statutory standards and made "absolutely no substantive changes." App'x 62. In any event, non-binding comments by judges on legislation do not suggest a substantive role in promulgating the law that affords judges a stake in any litigation on the law. Rather, for this factor to come to bear, we would expect judges to "have power to effectuate plaintiffs' request by promulgation of a rule or issuance of an order" amending the challenged criteria, rule, or law. *Georgevich v. Strauss*, 772 F.2d 1078, 1087–89 (3d Cir. 1985) (permitting suit challenging parole procedures to proceed against judges who served not as "as neutral adjudicators of disputes," but "as administrators of the parole power" who could be ordered to "follow certain due process procedures" implemented by judicial rule or order); *see In re Justs. of Supreme Ct. of Puerto Rico*, 695 F.2d at 23

15

change or be declared unconstitutional, judges who issued or declined to issue firearms licenses under the statutory scheme would "not even have an institutional interest in following their prior decisions." *In re Justices*, 695 F.2d at 21.

The lack of adversity and Article III jurisdiction applies equally to the Plaintiffs' official-capacity claims for declaratory and injunctive relief. Both sets of claims seek to bar the enforcement of a licensing scheme that Judge Nichols has no personal or institutional stake in defending. We therefore affirm the District Court's dismissal of the official-capacity claims on that basis.[4]

**B**

Our decision is narrow. The functional approach necessarily contemplates a case-by-case analysis. All that we consider is our jurisdiction to review the Plaintiffs' § 1983 claims against Judge Nichols in his official capacity under the circumstances of this case. We do not tackle whether Article III would bar claims

---

(holding that judges acting in legislative capacity had "institutional stake in the litigation's outcome"). That is not this case.

[4] We thus avoid addressing whether the injunctive relief claims against Judge Nichols fall within § 1983's bar to such relief against judicial officers "unless a declaratory decree was violated or declaratory relief was unavailable." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (quoting 42 U.S.C. § 1983).

for declaratory or injunctive relief against state court judges in other circumstances. Nor do we decide whether Article III would bar a similar action brought against a New York state police commissioner or county sheriff, say, who denies a firearms license application, *see* N.Y. Penal Law § 265.00(10), where those officers possess both the authority to adjudicate such applications and the power to enforce violations of New York's firearms licensing laws. We decide only that the Plaintiffs and Judge Nichols are not adverse parties with respect to the Plaintiffs' claims for equitable relief and that there is no live case or controversy because rulings on firearms licenses are judicial decisions and Judge Nichols lacks a personal or institutional interest in defending New York's firearms licensing scheme.

## Conclusion

We have considered the Plaintiffs' remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.