# 23-8093

## United States Court of Appeals
## for the Second Circuit

JEREMY KELLOGG and JONATHAN HARMON,

*Plaintiffs-Appellants,*

*against*

JONATHAN C. NICHOLS, *individually and in his capacity as statutory licensing officer pursuant to Penal Law 265.00 (10); 400.00, et seq.*

*Defendant-Appellee.*

On Appeal from the United States District Court for the
Northern District of New York

## PETITION FOR REHEARING EN BANC

THE BELLANTONI LAW FIRM PLLC
Attorneys for Plaintiffs-Appellants
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090
abell@bellantoni-law.com

Amy L. Bellantoni
September 1, 2025

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................ i

RULE 40(b) STATEMENT ............................................................................... 1

ARGUMENT ...................................................................................................... 2

Standard for En Banc Review .......................................................................... 2

I. The Panel, Constrained by *Libertarian Party*, Erred by Not Deferring to New York's Interpretation that Judicial Pistol Licensing Officers Are Acting as Administrators – Not Judges or Courts .................................................................. 3

    A. New York Statutory Pistol Licensing Officers, Penal Law § 265.00(10) ....... 4

    B. New York State Law: Upstate Licensing Officers are Not Acting as 'Judges' or 'Courts' When Enforcing § 400.00 ................................................................. 4

II. The Opinion and *Libertarian Party* Conflict With This Court's Precedent ........ 8

III. The Opinion and *Libertarian Party* Conflict With Other Circuit Courts .......... 9

IV. The Opinion and *Libertarian Party* Conflict With Supreme Court Precedent . 10

V. The Panel Committed Errors of Law .......................................................... 11

CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. DeBello,*
861 F.3d 433 (3d Cir. 2017) ................................................................. 16

*Baker v. Health Mgmt. Sys.,*
264 F.3d 144 (2d Cir.2001) ................................................................... 7

*Baker v. Pataki,*
85 F.3d 919 (2d Cir. 1996) ................................................................... 3

*Bauer v. Texas,*
341 F.3d 352 (5th Cir. 2003) ............................................................... 15

*Baughcum v. Jackson,*
92 F.4th 1024 (11th Cir. 2024) ...................................................... 2, 9, 10

*Broder v. Cablevision Sys. Corp.,*
418 F.3d 187 (2d Cir. 2005) ................................................................ 1, 9

*Bush v. Palm Beach County Canvassing Bd.,*
531 U.S. 70 (2000) ....................................................................... 3, 8, 11

*City of Chicago v. Morales,*
527 U.S. 41 (1999) ......................................................................... 1, 11

*Cnty. of Westchester v. D'Ambrosio,*
244 A.D.2d 334 (2d Dept. 1997) .............................................................. 4

*Copeland v. Vance,*
893 F.3d 101 (2d Cir. 2018) ................................................................ 1, 9

*Dalton v. Drago,*
72 A.D.3d 1243 (3d Dept. 2010) .............................................................. 5

i

*Estelle v. McGuire,*
502 U.S. 62 (1991) ................................................................... 1, 8, 11

*Frazier v. Prince George's Cnty., Maryland,*
140 F.4th 556 (4th Cir. 2025) ..............................................................15

*Georgevich v. Strauss,*
772 F.2d 1078 (3d Cir.1985) ............................................................ 10

*Gilliard v. Oswald,*
557 F.2d 359 (2d Cir. 1977) ............................................................... 3

*Goldstein v. Schwartz,*
185 A.D.3d 929 (2d Dept. 2020) ........................................................ 6

*Grant v. Johnson,*
15 F.3d 146 (9th Cir. 1994) ............................................................... 15

*Guthmann v. Onondaga Cnty. Sheriff's Dep't,*
237 A.D.3d 1548 (4th Dept. 2025) ..................................................... 5

*In re Ayres,*
30 N.Y.3d 59 (2017) ......................................................................... 12

*In re Justs. of Supreme Ct. of Puerto Rico,*
695 F.2d 17 (1st Cir. 1982) .............................................................. 15

*In re Shuler,*
67 A.D.3d 1020 (2d Dept. 2009) ........................................................ 5

*Knapp v. Cardwell,*
667 F.2d 1253 (9th Cir. 1982) .......................................................... 10

*Krohn v. New York City Police Dep't,*
341 F.3d 177 (2d Cir.) ..................................................................... 1, 9

*Laborers' Pension Fund v. Miscevic,*
880 F.3d 927 (7th Cir. 2018) .............................................................. 9

*Landell v. Sorrell*,
   406 F.3d 159 (2d Cir. 2005) ............................................................... 2

*Lander v. Hartford Life & Annuity Ins. Co.*,
   251 F.3d 101 (2d Cir.2001) ............................................................ 1, 8

*Libertarian Party of Erie Cnty. v. Cuomo*,
   970 F.3d 106 (2d Cir. 2020) ....................................................... Passim

*Lindke v. Tomlinson*,
   31 F.4th 487 (6th Cir. 2022) ............................................................ 15

*Litchford v. Scroggy*,
   865 F.2d 1268 (6th Cir. 1989) ........................................................... 9

*Matter of Blackburne*,
   7 N.Y.3d 213 (2006) ....................................................................... 12

*Matter of Cerbone*,
   2 N.Y.3d 479 (2004) ................................................................. 12, 13

*Matter of George*,
   22 N.Y.3d 323 (2013) ..................................................................... 12

*Matter of Panaro*,
   250 A.D.2d 616 (2d Dept. 1998) ....................................................... 5

*Matter of Schnell v. Spano*,
   120 A.D.2d 669 (2d Dep't 1986) ....................................................... 4

*Matter of Young*,
   19 N.Y.3d 621 (2012) ..................................................................... 12

*Mendez v. Heller*,
   530 F.2d 457 (2d Cir. 1976) ....................................................... 13, 14

*Mullaney v. Wilbur*,
   421 U.S. 684 (1975) ................................................................. 2, 8, 11

*Murdock v. City of Memphis*,
   20 Wall. 590 (1875) ............................................................................ 2, 11

*Oxborrow v. Eikenberry*,
   877 F.2d 1395 (9th Cir. 1989) ............................................................ 2, 9

*Policano v. Herbert*,
   453 F.3d 79 (2d Cir. 2006) ...................................................................... 8

*Portalatin v. Graham*,
   624 F.3d 69 (2d Cir. 2010) .............................................................. 1, 8, 9

*Pringle v. Wolfe*,
   88 N.Y.2d 426 (1996) ............................................................................... 7

*Reule v. Jackson*,
   114 F.4th 360 (5th Cir. 2024) ............................................................... 15

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
   977 F.2d 47 (2d Cir.1992) ........................................................................ 7

*Rodas v. Seidlin*,
   656 F.3d 610 (7th Cir. 2011) ............................................................... 2, 9

*Saenz v. Roe*,
   526 U.S. 489 (1999) ................................................................................11

*Sibley v. Watches*,
   194 A.D.3d 1385 (4th Dept. 2021)........................................................... 6

*Small v. Moss*,
   277 N.Y. 501 (1938) ................................................................................. 7

*Smith v. Hargett*,
   68 F.3d 472 (5th Cir. 1995) ..................................................................... 9

*U.S. Term Limits, Inc. v. Thornton*,
   514 U.S. 779 (1995) ................................................................................11

iv

*United States v. Fernandez-Antonia,*
    278 F.3d 150 (2d Cir. 2002) ............................................................. 1, 3, 8

*Watson v. Geren,*
    587 F.3d 156 (2d Cir. 2009) .................................................................. 2

*Wiegand v. Crandall,*
    118 A.D.3d 1355 (4th Dept. 2014)........................................................ 5

*Winters v. New York,*
    333 U.S. 507 (1948).......................................................................... 2, 11

*Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan,*
    263 F.3d 196 (2d Cir.2001) ................................................................ 1, 9

**Statutes**

42 U.S.C. § 1983 ...................................................................................... 2, 10
N.Y. Domestic Relations Law § 230............................................................. 13
N.Y. Judiciary Law 140-b .......................................................................... 14
U.S. Const., Amend. I ................................................................................. 2

**Rules**

CPLR 506(b)(1) ........................................................................................... 5
CPLR 7801................................................................................................ 5, 15
Fed. R. App. P. 40...................................................................................... 1

**Regulations**

N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17 (2000) ............................... 7

RULE 40(b) STATEMENT

Plaintiff-Appellant, Jeremy Kellogg ("Kellogg"), requests rehearing en banc of the Panel Opinion dated August 18, 2025 [DktEntry 60.1] (the "Opinion") under Fed. R. App. P. 40.

This proceeding involves review of the Opinion, constrained by *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), which conflict with well-established precedent in this Circuit that federal courts must defer to the state courts' interpretation of state laws. *United States v. Fernandez-Antonia*, 278 F.3d 150, 162 (2d Cir. 2002); *Portalatin v. Graham*, 624 F.3d 69, 84 (2d Cir. 2010); *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 119 (2d Cir.2001); *Krohn v. New York City Police Dep't*, 341 F.3d 177, 180 (2d Cir.), certified question accepted, 100 N.Y.2d 605 (2003), and certified question answered, 2 N.Y.3d 329, 811 N.E.2d 8 (2004); *Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 263 F.3d 196, 203 (2d Cir.2001); *Copeland v. Vance*, 893 F.3d 101 (2d Cir. 2018); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005).

The full court's consideration is necessary to maintain uniformity of the court's decisions.

The Opinion conflicts with decisions of the United States Supreme Court. *See, City of Chicago v. Morales*, 527 U.S. 41 (1999); *Estelle v. McGuire*, 502 U.S. 62

1

(1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Murdock v. City of Memphis*, 20 Wall. 590 (1875); *Winters v. New York*, 333 U.S. 507 (1948).

The Opinion conflicts with authoritative decisions of other United States Circuit Courts of Appeal. *See, Baughcum v. Jackson,* 92 F.4th 1024, 1029 (11th Cir. 2024); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989); *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011).

This proceeding involves a question of exceptional importance: Whether this Circuit's foreclosure of the right of residents of 55 out of 62 counties in New York to petition for redress of Second Amendment violations under 42 U.S.C. § 1983 violates the United States Constitution. U.S. Const., Amend. I.

The Panel's decision also misapprehended specific points of law and fact.

## ARGUMENT

### Standard for En Banc Review

En banc review should generally be limited to cases that raise issues of significant systemic consequences for the development of the law and the administration of justice. *Watson v. Geren*, 587 F.3d 156, 160 (2d Cir. 2009). This Court has recognized that while there may be differing views on how the law should be applied to the facts in a particular case, if the legal standard is correct, the full Court should not occupy itself with whether the law has been correctly applied to the facts. *Id.; Landell v. Sorrell*, 406 F.3d 159, 165–66 (2d Cir. 2005), as amended

2

(Apr. 20, 2005), as amended (Apr. 20, 2005); *Gilliard v. Oswald*, 557 F.2d 359, 359 (2d Cir. 1977).

A substantive disagreement with a panel decision is not sufficient reason for an en banc rehearing. *Baker v. Pataki*, 85 F.3d 919 (2d Cir. 1996). The issue to consider is whether "the proceeding involves a question of exceptional importance." *Id.*

## I. The Panel, Constrained by *Libertarian Party*, Erred by Not Deferring to New York's Interpretation that Judicial Pistol Licensing Officers Are Acting as Administrators – Not Judges or Courts

En banc review is warranted to maintain uniformity of this Court's precedent that federal courts defer to a state's interpretation of its own laws. For the residents in 88% of New York State, this issue raises questions of exceptional constitutional importance warranting rehearing en banc. Neither the Opinion nor *Libertarian Party* addressed the state deference requirement, which would have been dispositive of the appeal.

It is axiomatic that when interpreting state statutes, federal courts defer to the state courts' interpretation of their own statutes. *United States v. Fernandez-Antonia*, 278 F.3d 150, 162 (2d Cir. 2002) citing *Bush v. Palm Beach County Canvassing Bd.*, 531 U.S. 70, 76 (2000) (per curiam) ("As a general rule, this Court defers to a state court's interpretation of a state statute.").

3

### A. New York Statutory Pistol Licensing Officers, Penal Law § 265.00(10)

To legally possess a handgun in New York, residents are required to apply for and obtain a pistol license from a statutory pistol licensing officer in their county of residence. § 400.00. The only officials authorized to issue pistol licenses are the statutorily-created pistol licensing officers. In New York City, Nassau County, and Suffolk County ("Downstate"), those officials are the police commissioners[1]; everywhere else in the state ("Upstate"), the licensing officers are "judges of a court of record." Penal Law § 265.00(10). The scope of authority imbued in *all* licensing officers is defined, and limited, by the licensing regime.

### B. New York State Law: Upstate Licensing Officers are Not Acting as 'Judges' or 'Courts' When Enforcing § 400.00

Decades of Appellate Division case law, the state's civil practice rules for challenging final administrative determinations (Article 78), and the plain text of § 265.00(10) and § 400.00, which place licensing officers *statewide* on equal footing, mandate reversal of the Opinion and *Libertarian Party* based on the state's interpretation that judicial licensing officers are acting as administrators, not judges.

The Appellate Division holds that judicial licensing officers are acting in an administrative capacity, not as judges or courts. See, *Cnty. of Westchester v. D'Ambrosio*, 244 A.D.2d 334, 334 (2d Dept. 1997); *Matter of Schnell v. Spano*, 120

---

[1] In certain towns in Suffolk County, the pistol licensing officer is the Suffolk County Sheriff. *See,* § 265.00(10).

A.D.2d 669 (2d Dep't 1986); *In re Shuler*, 67 A.D.3d 1020 (2d Dept. 2009); *Matter of Panaro*, 250 A.D.2d 616 (2d Dept. 1998)];.[2]

The Fourth Department recently confirmed this fact in *Guthmann v. Onondaga Cnty. Sheriff's Dep't*, 237 A.D.3d 1548 (4th Dept. 2025). The applicant filed a 'direct appeal' of the licensing officer's denial, as if he were a litigant appealing a court order. But the Appellate Division dismissed the appeal, reiterating that the "appropriate procedure for the review of a determination of a County Court Judge, acting in [their] *administrative capacity* as the firearms licensing officer …under Penal Law § 400.00 (11) and § 265.00 (10), is not a direct appeal, but the commencement of a CPLR article 78 proceeding in this Court." *Guthmann*, 237 A.D.3d at 1548 (emphasis added) quoting, *Shuler*, supra; CPLR 506(b)(1); CPLR 7801; *Matter of Wiegand v. Crandall*, 118 A.D.3d 1355, 1356 (4th Dept. 2014). The Third Department agrees. *See, Matter of Dalton v. Drago*, 72 A.D.3d 1243 (3d Dept. 2010).

The plaintiff in *Guthmann* also erred by naming the Onondaga County Sheriff rather than "the County Court Judge who made the determination [who] is a necessary party" to an Article 78. *Guthmann*, 237 A.D.3d at 1548 (citing cases). *Guthmann* underscores the non-judicial function of pistol licensing. An appeal from

---

[2] The only Appellate Division silent on the issue is the First Department, consisting of New York and Bronx County, where the pistol licensing officer is the NYPD police commissioner.

a court judgment reflects the caption of the trial court action; obviously, an appealing litigant does not name the presiding judge as a party to the appeal. In stark contrast, an Article 78 proceeding *requires* naming the licensing officer as a "necessary party." Stated differently, the licensing applicant and the licensing officer are adverse parties in an Article 78 proceeding = a case and controversy [*see,* Op., 14-15].

In *Goldstein v. Schwartz*, 185 A.D.3d 929, 930 (2d Dept. 2020), a pistol licensee brought an Article 78 proceeding against licensing officer Justice Schwartz (the Appellee in *Oliveira v. Schwartz*, Second Circuit Case No. 25-485) for, *inter alia,* issuing a one-year injunction of any reapplication. The Second Department reversed the one-year injunction because the Upstate "licensing officer was without authority to bar the petitioner from re-applying…the injunction was not imposed by a court but by a judge acting as a licensing officer…[and] the issuance of the injunction was beyond the scope of his powers to either deny or grant the application (see Penal Law § 400.00[4–a])." *Schwartz*, 185 A.D.3d at 930 (cleaned up); *see also, Sibley v. Watches*, 194 A.D.3d 1385, 1389 (4th Dept. 2021) (respondent was "acting as a licensing officer" not as a County Court judge; issuing an injunction was "beyond the scope of [respondent's] powers to either deny or grant the application").

As noted in *Guthmann,* Article 78 - a special proceeding to challenge final administrative determinations - lends further support for the state's interpretation of its judicial pistol licensing officers.

6

Creatures of the Legislature, all licensing officers are bound by the scope of authority imbued by § 400.00. Every licensing officer, whether holding office as a police commissioner or judge of a court of record, has the exact same functions and authority, which cannot exceed the limits proscribed by the Legislature. As such, § 265.00(10) licensing officers act as executive branch administrators. *See, e.g., Small v. Moss*, 277 N.Y. 501, 512 (1938) (the commissioner acts "purely administrative" when assessing the 'character' of the applicant and determining whether to grant or deny a license).[3] And, in contrast to the state statute authorizing an arraigning court to grant a 'hardship' driver's license during the pendency of DWI charges in criminal court – a judicial function occurring *within* a court proceeding [*see, Pringle v. Wolfe*, 88 N.Y.2d 426, 433–34 (1996)], the granting or denying a pistol license is an extrajudicial function performed by an administrative officer, not a court.

---

[3] "Where an 'unsettled and significant question of state law ... will control the outcome of [the] case" the Circuit may certify that question to the New York Court of Appeals. *Baker v. Health Mgmt. Sys.*, 264 F.3d 144, 153 (2d Cir.2001) (citing 2d Cir. R. § 0.27; N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17 (2000). However, certification is only proper "where [a] statute's plain language does not indicate the answer, or when [the Circuit is] presented with a complex question of New York common law for which no New York authority can be found." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51 (2d Cir.1992). That is not the case here. This issue involves an unambiguous state statute, not common law, overwhelming and uniform Appellate Division precedent, civil practice rules of the state, and explicit legislative intent regarding the administrative capacity of judicial licensing officers.

## II. The Opinion and *Libertarian Party* Conflict With This Court's Precedent

This Court recognizes that it "is axiomatic…that when interpreting state statutes federal courts defer to state courts' interpretation of their own statutes." *United States v. Fernandez-Antonia*, 278 F.3d 150, 162 (2d Cir. 2002) citing, *Bush v. Palm Beach County Canvassing Bd.*, 531 U.S. 70, 76 (2000) (per curiam) ("As a general rule, this Court defers to a state court's interpretation of a state statute."); *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 119 (2d Cir.2001) (noting that "we must defer to the [state] [s]upreme [c]ourt on issues of state law"); *see also*, *Portalatin v. Graham*, 624 F.3d 69, 84 (2d Cir. 2010) ("Of course, we do not defer to [the New York Court of Appeals'] interpretation of federal law, but we are bound by its construction of New York law in conducting our analysis."); *Policano v. Herbert*, 453 F.3d 79, 92 (2d Cir. 2006) ("It is well established that a federal habeas court may not second-guess a state court's construction of its own law") citing, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (holding that "state courts are the ultimate expositors of state law"); *see also, Portalatin v. Graham*, 624 F.3d 69, 84 (2d Cir. 2010); *Krohn v. New York City Police Dep't*, 341 F.3d 177, 180 (2d Cir.), certified question accepted, 100 N.Y.2d 605 (2003), and certified question answered, 2 N.Y.3d 329, 811 N.E.2d 8 (2004); *Yoon v. Fordham Univ. Faculty & Admin. Ret.*

*Plan*, 263 F.3d 196, 203 (2d Cir.2001); *Copeland v. Vance*, 893 F.3d 101 (2d Cir. 2018); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005).

### III. The Opinion and *Libertarian Party* Conflict With Other Circuit Courts

The Opinion conflicts with authoritative decisions of other United States courts of appeals. See, *Baughcum v. Jackson*, 92 F.4th 1024, 1029 (11th Cir. 2024); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989); *Laborers' Pension Fund v. Miscevic*, 880 F.3d 927, 934 (7th Cir. 2018) (must defer to state court interpretation of the state statute"); *Smith v. Hargett*, 68 F.3d 472 (5th Cir. 1995) ("The federal courts must defer to the state court's interpretation of its own law"); *Litchford v. Scroggy*, 865 F.2d 1268 (6th Cir. 1989) ("we defer to the Kentucky state court's interpretation of Kentucky law").[4]

In *Baughcum*, the plaintiffs sued the probate judges who issue pistol licenses in their constitutional challenge to a Georgia law prohibiting the issuance of a carry license to individuals under 21 years of age. The Eleventh Circuit rejected the defendant judges' argument that 42 U.S.C. § 1983 generally forbids an injunction against "a judicial officer for an act or omission taken in such officer's judicial capacity."

---

[4] *See, Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011) (deferring to state appellate courts unless there "persuasive indication" state supreme court would decide differently; no indication of legislative intent is more persuasive than plain language of statute).

.

9

The Eleventh Circuit disagreed, holding that declaratory and injunctive relief against the probate judges was proper. The court reached its decision by looking to how Georgia defined the probate judge's conduct: under Georgia state law, processing a weapons carry license was an administrative function the legislature just happened to assign to probate judges. *Baughcum*, 92 F.4th at 1033. "Because the probate judges are responsible for issuing [concealed carry] licenses, the challenged action is also redressable by a court order against them. The district court could, if the suit is meritorious, order the probate judges to issue licenses to the plaintiffs." *Baughcum*, 92 F.4th at 1032. *See also, Georgevich v. Strauss*, 772 F.2d 1078 (3d Cir.1985) (en banc), cert. denied, 475 U.S. 1028 (1986) (prisoners properly sued judges who administered the parole power; they were "administering parole procedures rather than adjudicating a dispute between prisoners and third parties or some other state official charged with enforcing the statute.").

In *Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) the Ninth Circuit reaffirmed that "[f]ederal courts will not review a state supreme court's interpretation of its own statute unless that interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution." (citing cases).

However, it is this Circuit's circumvention of state law that "amounts to subterfuge to avoid federal review" of unconstitutional administrative acts.

10

## IV. The Opinion and *Libertarian Party* Conflict With Supreme Court Precedent

"The Framers split the atom of sovereignty. It was the genius of their idea that our citizens would have two political capacities, one state and one federal, each protected from incursion by the other." *Saenz v. Roe*, 526 U.S. 489, 504, n. 17 (1999) (citing *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838 (1995) (KENNEDY, J., concurring)).

"[The Supreme Court] repeatedly has held that state courts are the ultimate expositors of state law and that we are bound by their constructions except in extreme circumstances not present here." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("accept[ing] as binding the Maine Supreme Judicial Court's construction of state homicide law.") (cleaned up) citing, *Murdock v. City of Memphis*, 20 Wall. 590 (1875); *Winters v. New York*, 333 U.S. 507 (1948); *see also*, *City of Chicago v. Morales*, 527 U.S. 41 (1999); *Estelle v. McGuire*, 502 U.S. 62 (1991); *Bush v. Palm Beach Cnty. Canvassing Bd.*, 531 U.S. 70, 76 (2000) ("As a general rule, this Court defers to a state court's interpretation of a state statute.").

## V. The Panel Committed Errors of Law

Had the Panel deferred to state law, the judicial immunity issue would have been moot and dispositive of the appeal.

The Panel erred by holding that no case or controversy exists between a pistol license applicant and the statutory pistol licensing officer who denies his application

11

for a handgun license. Constrained by *Libertarian Party,* it held that licensing officers act in a "judicial" capacity and are entitled to absolute immunity from suit in an individual capacity [Op., 8-10].[5]

Under that same reasoning, the Panel affirmed the dismissal of Kellogg's official capacity claims seeking to enjoin the licensing officer's enforcement of unconstitutional state statutes.[6]

Quizzically, the Panel acknowledged that "a litigant seeking to enjoin the enforcement of a statute on constitutional grounds ordinarily sues the *enforcement official*" and "not the court or judges who are supposed to adjudicate the merits of the [law]suit that the enforcement official might bring" [Op., 12 (emphasis added)] the Panel disregarded the fact that § 265.00(10) licensing officers *are* the officials enforcing the § 400.00 licensing regime. Licensing officers do not "adjudicate

---

[5] Notably, in *Libertarian Party*, the Upstate judge's act of "communicating with the United States Attorney for the Northern District of New York" about the plaintiff's pistol license application is antithetical to judicial functions, which forbid extrajudicial fact-finding to create or supplement the record before rendering a decision. *See, e.g.*, *In re Ayres*, 30 N.Y.3d 59, 63–64 (2017) (it is a violation of a judge's solemn oath to abandon the role of neutral decisionmaker or engage in *ex parte* communications on the merits of a case….both actions are fundamentally incompatible with the responsibilities of judicial office") citing *Matter of Blackburne*, 7 N.Y.3d 213, 221 (2006) (when "petitioner abandoned her role as neutral arbiter," she acted in a way "completely incompatible with the proper role of an impartial judge"]; *accord, Matter of George*, 22 N.Y.3d 323, 330 (2013); *Matter of Young*, 19 N.Y.3d 621, 626 (2012); *Matter of Cerbone*, 2 N.Y.3d 479, 485 (2004) (a "[j]udge performing judicial duties must both act and appear to act as an impartial arbiter serving the public interest.... A judge who does not know this, and is not capable of learning it, should not be on the bench.").

[6] While Eleventh Amendment official capacity immunity was not addressed in *Libertarian Party*, the premise of 'judicial capacity' has erected an absolute barrier for the residents of 55 of the 62 counties in New York State to seek redress for violations of their Second Amendment rights caused by the denial of a pistol license.

claims" under Penal Law § 400.00, they issue or deny pistol licenses [*Id.*, 12] and the licensing process is an administrative proceeding - not a "judicial proceeding" [*Id.*].

True, the licensing officers have no "role in criminal prosecutions to enforce the statute" [*Id.*, 15] but they *do* enforce the penalty provisions of § 400.00(11) by suspending and revoking pistol licenses they issue. And the underlying challenge here is to the constitutionality of a licensing statute,[7] not a criminal law.[8]

The Panel's reliance on *Mendez v. Heller*, 530 F.2d 457, 459-61 (2d Cir. 1976) is misplaced. *Mendez* involved a challenge to the jurisdictional requirements of the New York state's matrimonial laws. But divorce actions, by their very nature, involve two litigants who are adversarial to one another with a presiding judge adjudicating legal claims and defenses. As *Mendez* recognized, "a court's investigation of its jurisdiction" to hear the case, whether the parties satisfy New York's two-year residency requirement under Domestic Relations Law § 230, "is eminently a judicial function." *Mendez*, 530 F.2d at 460. Obviously, presiding over a matrimonial action is a judicial function rooted in the equitable principles of common law. Had the plaintiffs filed an actual complaint and suffered dismissal for failure to meet the

---

[7] *See*, § 400.00, located in Part IV of the Penal Law entitled, "Administrative Provisions."

[8] *See*, § 265.00, *et seq.* "Firearms and Other Dangerous Weapons."

13

state's jurisdictional requirements[9], their recourse would have been a direct appeal of the court's judgment.

Under N.Y. Judiciary Law 140-b, Supreme Court Justices possess the general jurisdiction in law and equity that "was possessed and exercised by the supreme court of the colony of New York at any time, and by the court of chancery in England on the fourth day of July, seventeen hundred seventy-six, with the exceptions, additions and limitations created and imposed by the constitution and laws of the state. Subject to those exceptions and limitations the supreme court of the state has all the powers and authority of each of those courts and may exercise them in like manner." N.Y. Judiciary Law § 140-b.

In stark contrast, handgun licensing is a statutory construct. Licensing officers have no 'common law' authority; all licensing authority is derived from the Legislature under § 265.00(10) and § 400.00.

There is no 'remedy at law' for decisions made by pistol licensing officers, unlike litigants aggrieved by a court order. Aggrieved applicants must seek limited redress through a state-created special proceeding under CPLR 7801, *et seq.* (Article 78). Section 400 involves no 'parties', no claims to be adjudicated, no application of

---

[9] *Mendez* involved a hypothetical fact pattern. The plaintiffs "have never filed a complaint for divorce with the courts of the state whose law they seek to challenge. Until they do so, and the complaint is either summarily rejected by the clerk (as they claim it will be) or is considered by the New York courts, the controversy which they seek to litigate in this court has not in my view sufficiently ripened into an active dispute between the parties." *Mendez*, 530 F.2d at 461.

14

common law, and no state court judgment. Moreover, police commissioners downstate perform the *exact* same functions with *equal* authority. As a matter of state law, pistol licensing is not a judicial function.

The Panel's circuit cases are inapposite because they involve inherently judicial conduct: state court actions involving litigants and the adjudication of legal claims [Op., 13-14]. *See, Lindke v. Tomlinson*, 31 F.4th 487, 489 (6th Cir. 2022) (judge granting an order of protection during a child custody proceeding sits as an arbitor adjudicating the claims and defenses of adversarial parties); *Reule v. Jackson*, 114 F.4th 360, 366 (5th Cir. 2024), cert. denied, 145 S. Ct. 1431 (2025) (evaluating validity of claims and controversies of vexatious litigants' to permit/deny permission to file a new lawsuit); *Frazier v. Prince George's Cnty., Maryland*, 140 F.4th 556, 560 (4th Cir. 2025) (criminal court judges ruling on bail hearings pending trial); and *In re Justs. of Supreme Ct. of Puerto Rico*, 695 F.2d 17, 21 (1st Cir. 1982) (justices presided over complaints brought by, *inter alia,* the Secretary of Justice based on an attorney's nonpayment of dues); *Grant v. Johnson*, 15 F.3d 146, 147 (9th Cir. 1994) (judge adjudicating guardianship based on application of third party); *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (same); *Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017) (judge adjudicating parental custody battle).

The Panel cited no case involving judges performing a licensing function. Pistol licensing is neither closely related, nor tied to, the court system or its functions,

15

or the adjudication of complaints and controversies. Licensing officers are not 'presiding' over a 'case.' Nor can licensing officers issue 'orders,' [*see, Goldstein, supra*], so the issue of whether they enforce 'orders' is moot [Op. at 14].

## CONCLUSION

Rehearing of the Opinion and *Libertarian Party* should be granted.

Dated: September 1, 2025
      Scarsdale, New York

Respectfully submitted,

The Bellantoni Law Firm, PLLC
*Attorneys for Plaintiff-Appellant*

By:     *Amy Bellantoni*
                Amy L. Bellantoni
                2 Overhill Road, Suite 400
                Scarsdale, New York 10583
                abell@bellantoni-law.com

16

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word 2016 and, according to that software, it contains 3982 words, not including the cover, Table of Contents, Table of Authorities, and this Certificate of Compliance.

_Amy Bellantoni_
Amy L. Bellantoni