23-8093-cv
Kellogg v. Nichols

# United States Court of Appeals
# for the Second Circuit

August Term, 2024

(Argued: September 25, 2024      Decided: August 18, 2025
Amended: March 5, 2026)

Docket No. 23-8093-cv

_____

JEREMY KELLOGG, JONATHAN HARMON,

*Plaintiffs-Appellants*,

v.

JONATHAN D. NICHOLS, individually and in his capacity as statutory
licensing officer pursuant to Penal Law 265.00(10); 400.00 *et seq.*,

*Defendant-Appellee.*[*]

_____

Before:

    RAGGI, WESLEY, and LOHIER, *Circuit Judges*.

    The Plaintiffs are New York State residents who applied for concealed
carry licenses under the State's firearms licensing laws. Jonathan D. Nichols, a
state court judge serving as a statutory firearms licensing officer, reviewed and

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

denied their applications for failing to meet the statutory criteria for eligibility for a license. The Plaintiffs sued Judge Nichols in his individual and official capacities under 42 U.S.C. § 1983, alleging that New York's firearms licensing laws violate their rights under the Second and Fourteenth Amendments to the Constitution. The United States District Court for the Northern District of New York (Hurd, *J.*) dismissed the Plaintiffs' § 1983 claims, holding that absolute immunity barred their individual-capacity claims because Judge Nichols acted in his judicial capacity in ruling on their applications, and that § 1983 and Article III's case-or-controversy requirement barred their claims for injunctive relief and declaratory relief, respectively. We reaffirm this Court's precedent that judicial officers act in a judicial capacity when they decide firearms license applications and, therefore, enjoy absolute immunity from suit in their individual capacities. We further hold that the Plaintiffs' specific claims for injunctive relief and declaratory relief against Judge Nichols in his official capacity are barred by Article III's case-or-controversy requirement. **AFFIRMED**.

> AMY L. BELLANTONI, The Bellantoni Law Firm, PLLC, Scarsdale, NY, *for Plaintiffs-Appellants*.
>
> JONATHAN D. HITSOUS, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General for the State of New York, Albany, NY, *for Defendant-Appellee*.

PER CURIAM:

This appeal from a dismissal of an action brought under 42 U.S.C. § 1983 concerns judicial immunity and federal jurisdiction to review the decisions of a state court judge. It arises from a federal lawsuit filed by Jeremy Kellogg and Jonathan Harmon against New York state court Judge Jonathan D. Nichols. Judge Nichols, the Plaintiffs claim, unconstitutionally rejected their applications

for a firearms license under New York State's Penal Law § 400.00 in violation of their Second and Fourteenth Amendment rights.

The Plaintiffs sued Judge Nichols in both his individual and official capacities. The District Court dismissed the individual-capacity claims as barred by absolute judicial immunity. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). The District Court also dismissed the Plaintiffs' official-capacity claims for injunctive and declaratory relief.

We agree with the District Court that the Plaintiffs' individual-capacity claims are barred by absolute judicial immunity. We further conclude that Article III's case-or-controversy requirement bars official-capacity claims under § 1983 against state court judges who rule on firearms license applications under New York state law. Affirmed.

## BACKGROUND

"New York maintains a general prohibition on the possession of 'firearms' absent a license." *Antonyuk v. James*, 120 F.4th 941, 974 (2d Cir. 2024) (quoting *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 85 (2d Cir. 2012)). New York Penal Law § 400.00 "is the exclusive statutory mechanism for the licensing of firearms

in New York State." *Id.* Other sections of New York's Penal Law provide criminal penalties for possession of a firearm without a license. *See* N.Y. Penal Law §§ 265.00(3), 265.01 *et seq.*, and 265.20(a)(3).

New York residents can be licensed to "have and carry concealed [pistols or revolvers], without regard to employment or place of possession subject to the restrictions of state and federal law." *Id.* § 400.00(2)(f). To be eligible for a concealed-carry or pistol license, an applicant must demonstrate "good moral character," defined as "the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others." *Id.* § 400.00(1).

New York residents seeking a firearms license must apply to their local licensing officer. *Id.* § 400.00(3). In Columbia County, New York, where the Plaintiffs reside, the licensing officer is "a judge or justice of a court of record having his office in the county of issuance," including, as relevant here, a county court judge.[1] *Id.* § 265.00(10). After a local police investigation, the licensing officer reviews the application and must "either deny the application for reasons

---

[1] In Nassau County, Suffolk County, and the five counties that comprise New York City, the police commissioner or county sheriff serves as the licensing officer. N.Y. Penal Law § 265.00(10).

specifically and concisely stated in writing or grant the application and issue the license applied for." *Id.* § 400.00(4-b).

In 2022 Kellogg and Harmon separately applied for pistol licenses with the Columbia County Sheriff's Office. Their applications were assigned to Judge Nichols in his capacity as a statutory licensing officer for Columbia County. After hearings on the applications, Judge Nichols determined that Kellogg's criminal arrest history and inadequate explanations for failing to disclose that history in his application demonstrated that he lacked the requisite maturity or responsibility to hold a license. As for Harmon, Judge Nichols ruled that Harmon's criminal history, including a youthful-offender adjudication for first-degree robbery, likewise demonstrated that he lacked the requisite maturity or responsibility to have a license.

In June 2023 Kellogg and Harmon filed this action against Judge Nichols, asserting six § 1983 claims for violating the Second and Fourteenth Amendments, as well as one state law claim. The Plaintiffs' § 1983 claims against Judge Nichols in his individual capacity sought nominal monetary damages. The federal claims against Judge Nichols in his official capacity sought both declaratory and injunctive relief. They sought a declaratory judgment that New York's licensing

scheme violates the Second and Fourteenth Amendments.  They also sought an injunction against the enforcement of New York Penal Law Sections 265.01, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04(2), which criminalize the unlicensed possession of firearms, and New York Executive Law Section 296(16), which concerns criminal history disclosures on firearms license applications.  Judge Nichols moved to dismiss the claims for lack of subject matter jurisdiction and for failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

The District Court granted the motion to dismiss.  *Kellogg v. Nichols*, 703 F. Supp. 3d 367, 376 (N.D.N.Y. 2023).  Relying on our decision in *Libertarian Party*, the District Court concluded that judicial immunity barred the Plaintiffs' individual-capacity claims against Judge Nichols, who had acted in his judicial capacity in denying their applications.  *Id.* at 371–73.  The District Court also dismissed the Plaintiffs' official-capacity claims for declaratory relief as barred by Article III's case-or-controversy requirement, and their claims for injunctive relief as barred by § 1983.  *Id.* at 373–75; *see* 42 U.S.C. § 1983 (permitting suit "except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

6

declaratory decree was violated or declaratory relief was unavailable"). The District Court then declined to exercise supplemental jurisdiction over the remaining state law claim. *Kellogg*, 703 F. Supp. 3d at 375.

## DISCUSSION

We review *de novo* both the grant of a motion to dismiss under Rule 12(b)(6) as well as the grant of a Rule 12(b)(1) motion that "is based solely on the complaint and the attached exhibits." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210–11 (2d Cir. 2020); *see Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024). "[A] motion under Rule 12(b)(1) may also rely on evidence beyond the pleadings. When a defendant makes such a fact-based motion, the plaintiff may respond with evidence of its own. We then review the district court's legal conclusions de novo and its factual findings for clear error." *SM Kids*, 963 F.3d at 210 (cleaned up).

## I

We begin with the Plaintiffs' § 1983 claims against Judge Nichols in his individual capacity. "[J]udges generally have absolute [judicial] immunity from suits for money damages for their judicial actions," but not for actions taken in an administrative, legislative, or executive capacity. *Bliven v. Hunt*, 579 F.3d 204,

209–10 (2d Cir. 2009); *see Forrester v. White*, 484 U.S. 219, 227–30 (1988). "In determining whether an act by a judge is 'judicial,' thereby warranting absolute immunity, we are to take a functional approach, for such 'immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches.'" *Bliven*, 579 F.3d at 209–10 (quoting *Forrester*, 484 U.S. at 227). Generally speaking, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Id.* at 210. "The principal hallmark of the judicial function is a decision in relation to a particular case." *Id.* at 211.

In *Libertarian Party*, this Court addressed whether state court judges are immune from individual-capacity claims for actions taken as firearms licensing officers in New York. We determined that two New York state court judges functioned in their judicial capacity when they denied firearms license applications. *Libertarian Party*, 970 F.3d at 123–25. Firearms licensing officers render "[a]ctual rulings," we explained, that "directly address[] the specific applications, refer[] to relevant requirements of § 400.00, and decide[] the merits of the applicants' requests." *Id.* at 124. Because these rulings are "judicial decisions" rather than administrative actions, we held that state court judges are

entitled to absolute immunity from claims asserted against them in their individual capacities as firearms licensing officers. *Id.* at 125.

The Plaintiffs acknowledge that *Libertarian Party* forecloses their individual-capacity claims. They nevertheless ask us to overturn it as wrongly decided. Appellants' Br. 6, 36–38. They argue that *Libertarian Party* is in "conflict with New York State's interpretation" of Penal Law § 400.00 that firearms licensing officers act in an "administrative capacity." Appellants' Br. 37. As the Plaintiffs recognize, however, "we . . . are bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004). The Plaintiffs do not, and cannot, argue that either exception applies to *Libertarian Party* insofar as it addresses judicial immunity. *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 (2d Cir. 2009).

Here, the Plaintiffs' firearms license applications were referred to Judge Nichols because he served as "a judge . . . of a court of record having his office in" Columbia County, New York. N.Y. Penal Law § 265.00(10). In that capacity, Judge Nichols reviewed the Plaintiffs' firearms license applications, decided the merits of those applications based on the requirements of Penal Law § 400.00,

and explained why he denied the licenses.  Consistent with *Libertarian Party*, we must conclude, as the District Court did, that both denials constituted "judicial decisions" for which Judge Nichols was entitled to absolute judicial immunity from suit for damages in his individual capacity.  970 F.3d at 125.  We therefore affirm the District Court's dismissal of the Plaintiffs' individual-capacity claims.[2]

## II

We turn next to the Plaintiffs' § 1983 claims against Judge Nichols in his official capacity.  These claims seek to enjoin enforcement of New York's firearms licensing laws and criminal statutes punishing possession of firearms for self-defense and also seek a declaratory judgment that the State's licensing scheme violates the Second and Fourteenth Amendments and that Judge Nichols violated the Plaintiffs' Second and Fourteenth Amendment rights.  The District Court held that Article III barred the claims for declaratory relief and that the Plaintiffs' specific claims for injunctive relief were not subject to § 1983's narrow

---

[2] Because *Libertarian Party* controls our decision under the circumstances of this case, we express no views on whether decisions legislatively entrusted to judges in certain communities and to law enforcement officers in other communities are properly viewed differently depending on the decisionmaker for the purposes of recognizing whether the officials are entitled to absolute judicial immunity.

exception to Eleventh Amendment immunity for judicial officers.  We conclude

that Article III bars the claims for both declaratory and injunctive relief.

**A**

Article III of the Constitution limits the "judicial Power" of the United

States to actual "Cases" or "Controversies."  U.S. Const. art. III, § 2; *see*

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *S. Jackson & Son, Inc. v. Coffee,*

*Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 431 (2d Cir. 1994).  "A controversy that is

appropriate for judicial determination . . . must be definite and concrete,

touching the legal relations of parties having adverse legal interests."  *In re*

*Motors Liquidation Co.*, 829 F.3d 135, 168 (2d Cir. 2016) (quotation marks omitted).

Without a case or controversy between adverse parties, a federal court does not

have subject matter jurisdiction over an action.  *S. Jackson & Son*, 24 F.3d at 431;

*see also Flast v. Cohen*, 392 U.S. 83, 95 (1968) (explaining that Article III's case-or-

controversy requirement "limit[s] the business of federal courts to questions

presented in an adversary context").  And we may have jurisdiction over some

claims but not others.  Article III jurisdiction "is not dispensed in gross; rather,

plaintiffs must demonstrate" that we have Article III jurisdiction over "each

11

claim that they press and for each form of relief that they seek." *TransUnion*, 594

U.S. at 431.

In general, "no case or controversy" exists "between a judge who

adjudicates claims under a statute and a litigant who attacks the constitutionality

of the statute." *Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984) (citing *In re Justices*

*of Sup. Ct. of P.R.*, 695 F.2d 17, 21 (1st Cir. 1982) (Breyer, *J.*)); *see Whole Woman's*

*Health v. Jackson*, 595 U.S. 30, 39–40 (2021). "Judges sit as arbiters without a

personal or institutional stake on either side of the constitutional controversy."

*In re Justices*, 695 F.2d at 21. That is why a litigant "seeking to enjoin the

enforcement of a statute on constitutional grounds ordinarily sues the

enforcement official authorized to bring suit under the statute," not "the court or

judges who are supposed to adjudicate the merits of the suit that the enforcement

official may bring." *Id.* at 21–22. For that reason, a litigant challenging the

constitutionality of a state law under § 1983 and a state court judge tasked with

applying that law in a judicial proceeding are typically not adverse parties.

*Mendez v. Heller*, 530 F.2d 457, 459–61 (2d Cir. 1976).

*Mendez* is instructive. There we considered whether a New York resident

challenging the state's divorce laws could properly sue a New York Supreme

12

Court Justice in connection with the judge's adjudication of divorce proceedings. *See id. at* 458–60; *Mendez v. Heller*, 380 F. Supp. 985, 987–88 (E.D.N.Y. 1974). We determined that the judge's ruling on the divorce complaint reflected "a judicial function." *Mendez*, 530 F.2d at 460. As such, we held, the plaintiff's suit against the judge was properly dismissed for lack of a justiciable controversy because it did "not present the honest and actual antagonistic assertion of rights" that is "indispens[a]ble to adjudication of constitutional questions." *Id.* (quotation marks omitted); *see id.* at 461 ("We hold that . . . this action does not present the exigent adversity . . . which is an essential condition precedent to federal court adjudication. This, of itself, was a sufficient basis for the district court's dismissal of [the] complaint." (quotation marks omitted)).[3]

---

[3] *Bruen*, *Antonyuk*, and *Libertarian Party* are not to the contrary. While the courts there exercised jurisdiction in cases involving judge defendants, because the first two cases included non-judge defendants, the presence of judge defendants had no practical impact on the Courts' power to declare the law. *Bruen*, 597 U.S. at 16; *Antonyuk*, 120 F.4th at 958. Even if these two cases existed in tension with *Whole Woman's Health*, it appears that the question of adversity between the plaintiffs and the judicial defendants in those cases was simply never considered. *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124–25 (2d Cir. 2010). *Libertarian Party*, in turn, was decided before *Whole Woman's Health v. Jackson*, 595 U.S. at 40 (2021) (stating "no case or controversy exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute" (quotation marks omitted)). In any event, "it is well established that *sub silentio* assumptions of jurisdiction" in prior cases "have no precedential value on the [relevant] jurisdictional question." *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 128 n.2 (2d Cir. 2016); *see Kiobel*, 621 F.3d at 124–25; *see also Pennhurst*

13

Decisions from other circuits support our conclusion that there is no live case or controversy between New York state court judges serving as firearms licensing officers and litigants challenging the State's licensing scheme. "[T]he threshold consideration is whether the judge is acting, under the statute at issue, in an adjudicatory capacity or as an enforcer or administrator." *Lindke v. Tomlinson*, 31 F.4th 487, 491 (6th Cir. 2022) (citing *In re Justices*, 695 F.2d at 21–23); *see Reule v. Jackson*, 114 F.4th 360, 365 (5th Cir. 2024); *Frazier v. Prince George's Cnty.*, 140 F.4th 556, 562 (4th Cir. 2025).[4] Most obviously, a judge acts in an adjudicatory capacity when the judge resolves disputes between adverse parties.

---

*State School & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984) ("[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." (quotation marks omitted)).

[4] *See also Whole Woman's Health*, 595 U.S. at 45–46 (allowing claims to proceed against "executive licensing official[s] who may or must take *enforcement actions* against the petitioners if they violate" state law (emphasis added)). The Fourth, Fifth, and Sixth Circuits have held that there is no case or controversy between a state court judge acting in an adjudicatory capacity under a state statute and a litigant challenging the constitutionality of the same statute. *See Frazier*, 140 F.4th at 561–63; *Reule*, 114 F.4th at 365; *Lindke*, 31 F.4th at 490–95. Similarly, prior to *Whole Woman's Health*, the First, Third, Eighth, and Ninth Circuits have held on nonconstitutional grounds that judges adjudicating cases pursuant to a state statute may not be sued under § 1983 in a suit challenging that state statute. *See In re Justices*, 695 F.2d at 22; *Allen v. DeBello*, 861 F.3d 433, 440–42, 443 n.49 (3d Cir. 2017); *R.W.T. v. Dalton*, 712 F.2d 1225, 1232 n.10 (8th Cir. 1983), *abrogated in part on other grounds by Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990); *Grant v. Johnson*, 15 F.3d 146, 147–48 (9th Cir. 1994).

14

*See generally Adjudication, Black's Law Dictionary* (12th ed. 2024) (defining

"adjudication" as "[t]he legal process of resolving a dispute; the process of

judicially deciding a case").  But a judge also acts in an adjudicatory—rather than

an enforcement or administrative—capacity when the judge, in various non-

adversarial contexts, decides whether single-party applications satisfy relevant

legal requirements, *e.g.*, when authorizing search or arrest warrants, or the

interception of electronic communications, or when ruling on attorney-licensure

applications.  *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 479 (1983).  So, too,

when New York state judges rule on firearm license applications, they are

adjudicating whether the application satisfies the requirements of state law.  Our

Court's rationale for recognizing such decisions as judicial rather than

administrative for purposes of determining judicial immunity in *Libertarian*

*Party*, 970 F.3d at 125, applies equally for purposes of determining jurisdiction.[5]

---

[5] We do not suggest that our conclusion in *Libertarian Party* that judges ruling on licensure applications are entitled to judicial immunity because their decisions are *judicial* rather than administrative is binding with respect to our Article III adversity analysis here.  But *Libertarian Party's* analysis of a judicial function for the purposes of immunity—that judges under this scheme "refer[] to relevant requirements of § 400.00, and decide[] the merits of the applicants' requests . . . referring in detail to the factual and statutory basis for the denial," 970 F.3d at 124–25—informs our functional analysis here even though it is not dispositive.

15

Circuits have adopted a functional approach to evaluate whether a state court judge has acted in a judicial capacity in adjudicating a state statutory claim that is then challenged on constitutional grounds.  *See In re Justices*, 695 F.2d at 21–25; *Allen v. DeBello*, 861 F.3d 433, 440–42 (3d Cir. 2017); *Frazier*, 140 F.4th at 562–63; *Reule v. Jackson*, 114 F.4th 360, 365–66 (5th Cir. 2024); *R.W.T. v. Dalton*, 712 F.2d 1225, 1232–33 (8th Cir. 1983), *abrogated in part on other grounds by Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990); *Grant v. Johnson*, 15 F.3d 146, 148 (9th Cir. 1994).  Using the same approach, we consider factors such as whether the judge may initiate proceedings under the statute, *see Lindke*, 31 F.4th at 493; whether the judge who has issued the order is responsible for enforcing it, *see id.*; whether the judge played a role in enacting the statute pursuant to which the order was issued, *see Allen*, 861 F.3d at 442; whether the judge is adequately alleged to have a personal or institutional stake in upholding the statute, *see In re Justices*, 695 F.2d at 21; whether the challenged act is "a traditionally administrative task," or ministerial task, like "fee collection," *Mendez*, 530 F.2d at 460; and whether the challenged statutory scheme "allows for traditional judicial safeguards," *Reule*, 114 F.4th at 365–66.

16

Applying these factors here, we conclude, based in part on *Libertarian Party*, that Judge Nichols acted as a judicial officer in denying the Plaintiffs' firearms license applications and that the Plaintiffs and Judge Nichols are decidedly not parties "having adverse legal interests" with respect to the Plaintiffs' claims for declaratory and injunctive relief. *See Motors Liquidation Co.*, 829 F.3d at 168. In particular, unlike licensing officers in New York who are not judges, New York judges serving as licensing officers do not have the authority to initiate enforcement actions. While they adjudicate the merits of the applications submitted to them, *see* N.Y. Penal Law § 400.00, they have no independent enforcement authority or role in criminal prosecutions to enforce the statute. Put more concretely, to the extent that the Plaintiffs seek to enjoin Judge Nichols from enforcing N.Y. Penal Law §§ 265.01, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04(2), they chose the wrong target. Under New York law, Judge Nichols has no authority to charge the Plaintiffs for unlawfully carrying firearms.[6]

---

[6] The issue of whether state judges act as enforcers when they "*sua sponte* revoke or cancel a license" is not properly before us. *O'Brien v. Keegan*, 87 N.Y.2d 436, 439 (1996) (citing N.Y. Penal Law § 400.00(11)), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Judge Nichols never revoked or canceled the Plaintiffs' firearm licenses, because they never had licenses in the first place. We

By contrast, New York State, acting through various law enforcement officers, and *not* the judge who adjudicates an application for a firearms license, is authorized to enforce the licensing regime by prosecuting the unlicensed possession of a concealed firearm. *See* N.Y. Penal Law § 265.01 *et seq.*[7] Licensing officers in New York who are not judges, as county and city police commissioners, sheriffs, or the superintendent of state police, *see* N.Y. Penal Law § 265.00(10), thus appear to have a role in enforcing the state statute, *see id.* § 400.00(8) (noting that "[u]pon demand, the license shall be exhibited for inspection to any peace officer, who is acting pursuant to his or her special duties, or police officer"); *see also Bruen*, 597 U.S. at 16 (describing the New York State Police Superintendent as "oversee[ing] the enforcement of the State's licensing laws"). And although New York state judges may revoke or suspend an issued license, a judge revoking a license must then "notify immediately the

accordingly take no position on whether there is Article III adversity between a plaintiff who holds a firearm license and a state judge who revokes or cancels that license.

[7] Although we ultimately take no position on the issue, *see infra* at 25–27, the fact that New York has entrusted such law enforcement officers with licensing as well as enforcement responsibilities could explain why they would be subject to suit when judges are not. *See generally Whole Woman's Health*, 595 U.S. at 45–46 (allowing claims to proceed against "executive licensing official[s] who may or must take enforcement actions against the petitioners if they violate the terms of" the challenged law).

18

duly constituted police authorities of the locality," and notice of such a revocation "shall also include information regarding the ability to appeal." N.Y. Penal Law § 400.00(11). Thus, the authority of Judge Nichols in the context of this case was narrowly confined to adjudicating the firearm-eligibility determination.

Further, judges acting as licensing officers in New York have no role in determining Penal Law § 400.00(1)'s criteria for issuing licenses;[8] if those criteria were ever to change or be declared unconstitutional, judges who issued or declined to issue firearms licenses under the statutory scheme, in contrast to non-

---

[8] The Plaintiffs contend that a group of New York county court judges had a stake in the constitutional litigation relating to the penal statute because they commented on the 1963 bill that was later codified as Penal Law § 400.00. But a careful review of the legislative history reveals that the 1963 bill merely reordered existing statutory standards and made "absolutely no substantive changes." App'x 62. In any event, non-binding comments by judges on legislation do not suggest a substantive role in promulgating the law that affords judges a stake in any litigation on the law. Rather, for this factor to come to bear, we would expect judges to "have power to effectuate plaintiffs' request by promulgation of a rule or issuance of an order" amending the challenged criteria, rule, or law. *Georgevich v. Strauss*, 772 F.2d 1078, 1087–89 (3d Cir. 1985) (permitting suit challenging parole procedures to proceed against judges who served not as "as neutral adjudicators of disputes," but "as administrators of the parole power" who could be ordered to "follow certain due process procedures" implemented by judicial rule or order); *see In re Justs. of Supreme Ct. of Puerto Rico*, 695 F.2d at 23 (holding that judges acting in legislative capacity had "institutional stake in the litigation's outcome"). That is not this case.

19

judge licensing officers, would "not even have an institutional interest in following their prior decisions." *In re Justices*, 695 F.2d at 21.

Next, the nature of the proceedings before Judge Nichols was not merely ministerial or administrative. *See Mendez*, 530 F.2d at 460; *Feldman*, 460 U.S. at 478–79. This is to be contrasted with, for example, a city clerk's issuance of marriage licenses—an operational, non-discretionary function. *See Coogan v. Smyers*, 134 F.3d 479, 484 (2d Cir. 1998) ("The duties of the City Clerk are largely ministerial and include record keeping and the *nondiscretionary* issuance of permits and licenses." (emphasis added)). The latter is ministerial; the former is not.

Finally, New York's licensing regime "allows for traditional judicial safeguards." *Reule*, 114 F.4th at 366. Indeed, the Plaintiffs do not deny that they had a formal hearing where they were allowed to be represented by an attorney, to call witnesses, and to testify under oath, and were informed—in writing—why their applications were denied. Appellee's Br. 4, 19. The right to further judicial review provides yet another important guardrail. "The conclusion that there is no justiciable controversy between the plaintiffs and the judicial defendants does not leave the plaintiffs without a remedy against potentially unlawful judicial

conduct. When a party believes that a judge has violated their rights while acting in an adjudicative capacity, 'the traditional remedy has been some form of appeal' rather than a lawsuit against the judge." *Frazier*, 140 F.4th at 563 (citing *Whole Woman's Health*, 595 U.S. at 39).

A New York judge's licensing decisions are subject to judicial review by the Appellate Division in Article 78 proceedings. *See* N.Y. C.P.L.R. § 7801 *et seq.*; *see, e.g.*, *Diperna-Gillen v. Ryba*, 187 N.Y.S.3d 442, 443 (3d Dep't 2023) (annulling a state judge's licensing determination in an Article 78 proceeding after a provision of N.Y. Penal Law § 400.00 was rendered unconstitutional by *Bruen*, 597 U.S. at 7). "An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims." *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001).

Faced with constitutional challenges to New York state statutes, the Appellate Division can conduct a "hybrid . . . [A]rticle 78 proceeding and declaratory judgment action," *Loehr v. Admin. Bd. of Cts. of State of N.Y.*, 29 N.Y.3d 374, 378 (2017), or "convert the proceeding into an action for a declaratory judgment pursuant to N.Y. C.P.L.R. § 103(c) in order to address [the

plaintiff's] . . . challenges to the constitutionality of the statutes at issue," *Selkin v. State Bd. for Pro. Med. Conduct*, 63 F. Supp. 2d 397, 403 (S.D.N.Y. 1999) ("All challenges to the constitutionality of the relevant statutes, as applied to [the plaintiff], may be raised in the Article 78 proceeding." (citations omitted)); *see also Seymour v. Nichols*, 801 N.Y.S.2d 426, 427 (3d Dep't 2005) (converting constitutionality challenge to N.Y. Penal Law § 400.00, initiated as Article 78 proceeding against state judge, into declaratory judgment action).  Importantly, plaintiffs can sue judges in these state proceedings as permitted by state law.  *See* N.Y. C.P.L.R. § 7804(i) (recognizing state judges as permissible Article 78 respondents); *see also Seymour*, 801 N.Y.S.2d at 427 (considering constitutional challenge to penal law as declaratory judgment action against state judge).

New York's scheme thus maintains "traditional judicial safeguards" by keeping the doors to state court review open for parties to challenge a judge's licensing determination.  *Reule*, 114 F.4th at 366.[9]  The Plaintiffs were thus free to

---

[9] Although in New York, "challenges to administrative agency decisions . . . take the form of [A]rticle 78 proceedings," *Levandusky v. One Fifth Ave. Apartment Corp.*, 75 N.Y.2d 530, 541 (1990), a state's characterization of its proceedings does not control our Article III analysis, *cf. Bliven*, 579 F.3d at 212 ("Notwithstanding the New York Court of Appeals' characterization of 18–B Panel fee awards as administrative for purposes of ensuring their reviewability, we are not persuaded that a judge's decision as to a reasonable attorney's fee is an administrative, rather than a judicial, decision for purposes of determining whether the judge is to have absolute immunity for that

seek state judicial review of the constitutionality of their application denials through Article 78 proceedings or declaratory judgment actions. *See Diperna-Gillen v. Ryba*, 187 N.Y.S.3d at 443; *Seymour*, 801 N.Y.S.2d at 427; *see also Disability L. Ctr. v. Cox*, No. 2:25-CV-00307-RJS, 2025 WL 2050235, at *8 (D. Utah July 22, 2025) ("[A]ppealability can be a proxy to determine whether challenged conduct is adjudicatory, and, in turn, whether there is a case or controversy." (citing *Whole Woman's Health*, 595 U.S. at 39)). But they elected not to do so.

The Plaintiffs argue that firearm-licensing judges are enforcers, not adjudicators, because a number of state-court cases label them as such. Appellants' Br. 8–16.[10] We are not persuaded. Regardless of the labels or titles

---

decision."); *Feldman*, 460 U.S. at 478 ("[I]n determining the nature of the proceedings we must for ourselves appraise the circumstances of the [challenged decision]." (quotation marks omitted)).

[10] This same argument was made to and recently rejected by a different district court:

> Though these [state-court] cases may reference that judges were acting in an administrative capacity, the focus and holding of those cases was not on addressing whether judges were acting in an administrative or judicial capacity as a licensing officer but whether Article 78 proceedings were the proper vehicle for appeal. . . . The references to judges acting in an administrative capacity were mere dicta, therefore, these cases do not compel a different result.

*Morales v. Everett*, No. 7:24-CV-5437-NSR, 2025 WL 1549030, at *2 (S.D.N.Y. May 30, 2025) (citations and parentheticals omitted). Because an appeal has been docketed, *see*

that a state attaches to a particular role, the functional analysis is for the federal courts to undertake. *See Feldman*, 460 U.S. at 478. And even if state court appellate procedure cases were relevant for Article III purposes—a point we do not here decide—the cases themselves are far from clear. While some refer to firearm licensing as "administrative," others refer to them as "quasi-judicial." *See, e.g.*, *McGreevy v. Casale*, 558 N.Y.S.2d 442, 444 (Sup. Ct. 1990) ("The granting of pistol permits and gun dealer licenses is a quasi-judicial function of the court."); *Goldstein v. Schwartz*, 125 N.Y.S.3d 881, 882 (2d Dep't 2020) (substantially same).

The lack of adversity and Article III jurisdiction applies equally to the Plaintiffs' official-capacity claims for declaratory and injunctive relief. Both sets of claims seek to bar the enforcement of a licensing scheme that Judge Nichols has no personal or institutional stake in defending. We therefore affirm the District Court's dismissal of the official-capacity claims on that basis.[11]

---

*Morales v. Everett*, No. 25-1611 (June 27, 2025), we express no view as to the merits of the decision.

[11] We thus avoid addressing whether the injunctive relief claims against Judge Nichols fall within § 1983's bar to such relief against judicial officers "unless a declaratory decree was violated or declaratory relief was unavailable." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (quoting 42 U.S.C. § 1983).

24

**B**

Our decision is narrow. The functional approach necessarily contemplates a case-by-case analysis. All that we consider is our jurisdiction to review the Plaintiffs' § 1983 claims against Judge Nichols in his official capacity under the circumstances of this case.[12] We do not tackle whether Article III would bar claims for declaratory or injunctive relief against state court judges in other circumstances. Nor do we decide whether our analysis would differ if the Plaintiffs had also named defendants with a sufficient personal or institutional stake in defending the challenged law,[13] *cf. Bruen*, 597 U.S. at 16; *Antonyuk*, 120

---

[12] We limit our holding in this case to the record before us, in which plaintiffs were denied licenses, sued *only* the judge who adjudicated their eligibility for licenses, failed to request any prospective relief in the form of requiring Judge Nichols to issue a license, and instead sought broad facial equitable relief declaring New York's entire firearms licensing statutory scheme unconstitutional, and enjoining *enforcement* of the criminal penalties for possession of firearms without a license. Under these circumstances, a declaration and order enjoining Judge Nichols, who the Plaintiffs do not claim has any personal or institutional stake in upholding this statute, would not alter the Plaintiffs' legal rights as to the previously denied applications and would have no effect on the enforcement of New York's criminal laws.

[13] Our decision in *Libertarian Party* does not foreclose the Plaintiffs' standing in any action that they might have brought against non-judge defendants. In *Libertarian Party*, we understood the plaintiffs to allege that they were injured by *the denial of their license applications*. In those circumstances, we explained that "the only defendants to whom [plaintiffs'] alleged injuries were fairly traceable were the judges who denied their respective applications." 970 F.3d at 122. Our statement in *Libertarian Party* did not reflect a broad holding that Upstate plaintiffs have standing to bring pre-enforcement constitutional challenges to New York's licensing scheme *only* against judges who deny

25

F.4th at 958; *Libertarian Party*, 970 F.3d at 116–17 (observing "there was no allegation that . . . claimed injuries had been inflicted by any persons other than the [judicial] defendants who had denied their respective license requests"); *compare United States v. Windsor*, 570 U.S. 744, 763 (2013) (analyzing adversity for the case as a whole), *with Whole Woman's Health*, 595 U.S. at 40 (analyzing adversity party-by-party), or if the Plaintiffs had raised an as-applied constitutional challenge, *cf. Antonyuk*, 120 F.4th at 999. Additionally, we do not address whether Article III would bar a similar action brought against a New York state police commissioner or county sheriff, say, who denies a firearms license application, *see* N.Y. Penal Law § 265.00(10), where those officers possess both the authority to adjudicate such applications and the power to enforce violations of New York's firearms licensing laws. Our decision does not speak to the availability of a pre-enforcement constitutional challenge to "a component of

---

license applications. We said nothing about a plaintiff's standing to sue various non-judge state officials for alleged injuries arising from their processing of license applications or potential enforcement of licensure requirements. *See, e.g., Frey v. City of New York,* 157 F.4th 118, 137–38 (2d Cir. 2025); *Antonyuk*, 120 F.4th at 977–78. Nor do we do so here. We note only that insofar as the Plaintiffs seek the invalidation of the licensing scheme and an injunction against the enforcement of criminal penalties for possession of a firearm without a license, they appear to seek remedies for alleged injuries potentially traceable to, and redressable by, non-judge actors.

26

the application process" where the plaintiff's "injury flows from the application itself, not from the asserted ineligibility for a license." *See Antonyuk*, 120 F.4th at 976, 979.

We decide only that the Plaintiffs and Judge Nichols are not adverse parties with respect to the Plaintiffs' claims for equitable relief and that there is no live case or controversy because rulings on firearms licenses are judicial decisions and Judge Nichols lacks a personal or institutional interest in defending New York's firearms licensing scheme.

## CONCLUSION

We have considered the Plaintiffs' remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

27