# 23-8093-cv

## United States Court of Appeals for the Second Circuit

JEREMY KELLOGG and JONATHAN HARMON,

*Plaintiffs-Appellants,*

v.

JONATHAN C. NICHOLS, individually and in his capacity as statutory licensing officer pursuant to Penal Law 265.00 (10); 400.00, et seq.,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern District of New York

## PETITION FOR REHEARING EN BANC OF AMENDED OPINION

THE BELLANTONI LAW FIRM PLLC
*Attorneys for Plaintiffs-Appellants*
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090
abell@bellantoni-law.com

Amy L. Bellantoni
March 19, 2026

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES..............................................................................................i

RULE 40(b) STATEMENT ...................................................................................... 1

ARGUMENT ........................................................................................................... 3

Standard for En Banc Review................................................................................ 3

I.  The Amended Opinion's Internal Contradiction Regarding § 400.00(11) Enforcement Authority Warrants En Banc Correction. ............................................ 3

II.  The Amended Opinion Misapplies Whole Woman's Health to the § 400.00 Enforcement Analysis. ........................................................................................... 6

III.  The Amended Opinion Creates an Impermissible Geographic Asymmetry in the Availability of Official-Capacity § 1983 Claims Under § 400.00. ................. 9

IV.  The Amended Opinion's Footnote 12 Limitation Undermines the Holding's Internal Coherence and Suggests the Adversity Bar Is Not Categorical. ................11

V.  The Amended Opinion Conflicts with *Baughcum v. Jackson* on the Core Article III Adversity Question. ............................................................................. 13

CONCLUSION...................................................................................................... 15

CERTIFICATE OF COMPLIANCE ................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baughcum v. Jackson*,
  92 F.4th 1024 (11th Cir. 2024) ........................................................... 2, 13, 14, 16

*Goldstein v. Schwartz*,
  185 A.D.3d 929 (2d Dept. 2020) ....................................................................... 6

*Guthmann v. Onondaga Cnty. Sheriff's Dep't*,
  237 A.D.3d 1548 (4th Dept. 2025) .................................................................... 6

*O'Brien v. Keegan*,
  87 N.Y.2d 436 (1996) ....................................................................................... 7

*Sibley v. Watches*,
  194 A.D.3d 1385 (4th Dept. 2021) ................................................................... 6

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021) ................................................................................... 2, 6, 7

**Statutes**

New York Penal Law § 400.00 ...................................................................... Passim
New York Penal Law § 400.00(8) ......................................................................... 8
New York Penal Law § 400.00(11) ............................................................... Passim

**Rules**

Fed. R. App. P. 32(a)(5) ................................................................................... 17
Fed. R. App. P. 32(a)(6) ................................................................................... 17
Fed. R. App. P. 32(g) ....................................................................................... 17
Fed. R. App. P. 35(a) ......................................................................................... 3
Fed. R. App. P. 35(a)(1) ................................................................................... 15
Fed. R. App. P. 40(b)(2) ..................................................................................... 1
Fed. R. App. P. 40(d)(3) ................................................................................... 17

i

## <u>RULE 40(b) STATEMENT</u>

Plaintiffs-Appellants Jeremy Kellogg and Jonathan Harmon ("Plaintiffs") petition for rehearing en banc of the Amended Opinion dated March 5, 2026 (DktEntry 47.1) (the "Amended Opinion"), pursuant to Fed. R. App. P. 40(b)(2), limited to a single discrete issue: whether the Amended Opinion correctly held that no Article III case or controversy exists between the Plaintiffs and Defendant-Appellee Judge Nichols in his **official capacity** with respect to the Plaintiffs' claims challenging the enforcement of New York Penal Law § 400.00 by the statutory licensing officer.

This Petition does not seek rehearing of the Panel's individual-capacity judicial immunity holding. It is directed solely to the official-capacity claims, and solely to the enforcement authority vested in licensing officers by § 400.00 itself — as distinguished from the separate criminal statutes in § 265.01 et seq., which involve different actors and different legal questions.

En banc consideration is necessary for four independent reasons:

**First**, the Amended Opinion acknowledged that § 400.00(11) grants judge licensing officers the power to revoke and suspend issued licenses — an enforcement function expressly located within § 400.00 — yet explicitly declined to determine whether that authority creates Article III adversity. The court then used the absence of revocation in this particular case as a basis for finding no adversity, producing a

1

circular analytical gap that forecloses official-capacity review even where the licensing officer plainly wields enforcement authority under the challenged statute.

**Second**, the Amended Opinion's application of *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), is internally inconsistent. The Supreme Court held that adversity exists against officials who "may or must take enforcement actions" under the challenged law. Section 400.00(11) confirms that judge licensing officers **may** do exactly that –and under certain circumstances **must** take action –yet the Amended Opinion applied a different adversity standard to judge licensing officers than to the non-judge licensing officers it acknowledged could be sued and sidestepped the judges' real enforcement authority tied to the challenged law.

**Third**, the Amended Opinion creates a geographically arbitrary regime in which residents of 55 upstate counties have no viable federal official-capacity forum to challenge § 400.00 — while residents of seven downstate counties served by police commissioners and a sheriff apparently do — solely because of a legislative assignment of the licensing function, not because of any difference in the underlying constitutional injury or the statutory enforcement authority conferred by § 400.00.

**Fourth**, the Amended Opinion conflicts with the Eleventh Circuit's holding in *Baughcum v. Jackson*, 92 F.4th 1024 (11th Cir. 2024), which found Article III adversity between plaintiffs and probate judges performing materially identical statutory firearms licensing functions under Georgia law.

Each ground independently warrants rehearing en banc. Together they present a question of exceptional constitutional importance requiring resolution by the full Court.

## ARGUMENT

### *Standard for En Banc Review*

En banc review is appropriate where a panel decision (1) conflicts with a decision of the United States Supreme Court or of this Court, or (2) presents a question of exceptional importance. Fed. R. App. P. 40(b). Both grounds are satisfied here. The Amended Opinion misapplies the Supreme Court's adversity standard under *Whole Woman's Health*, conflicts with this Court's own precedent requiring functional analysis of enforcement authority, and raises a question of constitutional magnitude affecting the Second Amendment rights of residents in 55 of New York's 62 counties.

## I. The Amended Opinion's Internal Contradiction Regarding § 400.00(11) Enforcement Authority Warrants En Banc Correction.

The dispositive flaw in the Amended Opinion's official-capacity analysis is not what it decided — it is what it deliberately **refused** to decide. The court simultaneously: (1) acknowledged that § 400.00(11) grants judge licensing officers the authority to revoke and suspend issued licenses; (2) declined to determine whether that authority creates Article III adversity; and (3) nonetheless affirmed

3

dismissal on the ground that Judge Nichols lacked enforcement authority. The Amended Opinion states:

> "The issue of whether state judges act as enforcers when they sua sponte revoke or cancel a license is not properly before us. . . . We accordingly take no position on whether there is Article III adversity between a plaintiff who holds a firearm license and a state judge who revokes or cancels that license." Amended Opinion, fn. 6.

This doctrinal sidestep is untenable for three reasons.

**First**, the revocation and suspension power in § 400.00(11) is not peripheral to the statute the Plaintiffs challenged — it is an enforcement mechanism **within** § 400.00 itself. When the Plaintiffs brought official-capacity claims challenging § 400.00's licensing regime and seeking prospective injunctive relief against its enforcement, they were directly implicating the licensing officer's full range of § 400.00 authority, including the authority to revoke and suspend. The panel declined to analyze that authority while simultaneously affirming dismissal for lack of enforcement nexus is circular: it holds that enforcement authority is absent without analyzing the enforcement authority that admittedly exists.

**Second**, the text of § 400.00(11) is unambiguous. It provides that "[t]he license shall be revocable" and confers revocation and suspension authority on **"the licensing officer"** — a term defined in § 265.00(10) to include both police commissioners and "judges of a court of record." The statute draws no distinction

4

between the revocation authority of judge officers and non-judge officers. Both categories of licensing officer hold identical § 400.00(11) enforcement power. If revocation and suspension authority under § 400.00(11) creates adversity for a police commissioner, it necessarily creates adversity for a judge exercising the same statutory power.

**Third**, after a judge revokes a license under § 400.00(11), the statute requires the judge to "notify immediately the duly constituted police authorities of the locality." Amended Opinion at 18-19. This notification requirement is itself a trigger of downstream law enforcement action. The judge's exercise of § 400.00(11) authority directly activates the enforcement apparatus of the state. The Amended Opinion acknowledged this chain of events but offered no explanation for why it fails to satisfy the adversity requirement it simultaneously declined to analyze.

The en banc court should resolve whether the § 400.00(11) revocation and suspension authority — which is textually identical in scope for judge and non-judge licensing officers — creates Article III adversity sufficient to sustain official-capacity claims challenging § 400.00's constitutionality. The Amended Opinion's refusal to answer that question, while affirming dismissal on grounds that presuppose a negative answer, presents exactly the kind of analytical inconsistency that warrants full court resolution.

5

The New York Appellate Division cases cited by the Plaintiffs below — and dismissed by the Amended Opinion in footnote 10 as dicta — uniformly hold that the licensing officer is an *adverse party* in Article 78 proceedings challenging license denials and revocations. *See, e.g., Guthmann v. Onondaga Cnty. Sheriff's Dep't*, 237 A.D.3d 1548, 1548 (4th Dept. 2025)[1]; *Goldstein v. Schwartz*, 185 A.D.3d 929, 930 (2d Dept. 2020); *Sibley v. Watches*, 194 A.D.3d 1385, 1389 (4th Dept. 2021). That the licensing officer is a *necessary party* and adverse party in state proceedings is a direct reflection of the adversarial relationship that § 400.00 creates between the licensing officer and the licensee — the same relationship the Plaintiffs sought to vindicate in federal court through their official-capacity claims.

## II. The Amended Opinion Misapplies *Whole Woman's Health* to the § 400.00 Enforcement Analysis.

The Amended Opinion relies on *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), for the adversity framework, and correctly notes that the Supreme Court allowed claims to proceed against "executive licensing official[s] who **may or must**

---

[1] *Guthmann* dismissed an appeal filed against the county sheriff because "[t]he appropriate procedure for the review of a determination of a County Court Judge, acting in [their] administrative capacity as the firearms licensing officer…is not a direct appeal, but the commencement of a CPLR article 78 proceeding in this Court…[this] appeal cannot be converted into an [Article 78] original proceeding…since the County Court Judge who made the determination is a **necessary party** and was not named or served…" *Id.* (cleaned up) (emphasis added).

**take enforcement actions** against the petitioners if they violate" the challenged law. Amended Opinion at 18 fn. 7 (emphasis in original). But the Amended Opinion then applies this standard inconsistently, reaching different adversity conclusions for defendants who hold **identical** enforcement authority under § 400.00(11).

The Amended Opinion suggests that non-judge licensing officers — police commissioners, county sheriffs, and the Superintendent of State Police — possess an "enforcement role" that judge licensing officers do not. *Id.* at 18. Yet § 400.00(11) grants the revocation power to "the licensing officer" without qualification. *O'Brien v. Keegan*, 87 N.Y.2d 436, 439 (1996), which the Amended Opinion itself cites, confirms that this revocation authority belongs to the licensing officer regardless of whether that officer is a police commissioner or a judge. Both categories of officer "may" take the same enforcement action — suspending or revoking a license — against the same class of plaintiffs — licensees — for the same statutory violations.

Under the *Whole Woman's Health* standard, the question is whether the defendant "may or must take enforcement actions against the petitioners." 595 U.S. at 45-46. Section 400.00(11) provides that the licensing officer **may**–and in certain circumstances **shall**–revoke or suspend a license. The statute uses identical language for judge and non-judge licensing officers. The Amended Opinion acknowledges this — it notes that "New York state judges may revoke or suspend an issued license." Amended Opinion at 18-19. Having acknowledged the enforcement

authority of judge licensing officials, the Amended Opinion should have applied the *Whole Woman's Health* standard and found adversity.

The Amended Opinion's only explanation for the different result as to judge officers is the downstream notification requirement — the fact that a revoking judge must notify police authorities. The judge's role in triggering police enforcement through § 400.00(11) notification strengthens the enforcement nexus, not weakens it. A defendant who revokes a license and then by statute must notify law enforcement is more tightly connected to the enforcement apparatus, not less.

The Amended Opinion also suggests that non-judge officers have a broader enforcement role because of § 400.00(8), which requires licensees to exhibit their license to peace officers and police officers upon demand. But § 400.00(8) does not independently grant enforcement authority to the licensing officer — it merely requires the licensee to produce the license on demand by *any* peace or police officer. The licensing officer's role under § 400.00(8) is not to enforce that requirement; that enforcement belongs to the peace officer making the demand. The Amended Opinion conflates the licensing officer's statutory role with the enforcement activities of separate law enforcement actors.

En banc resolution is required to determine whether the *Whole Woman's Health* "may or must take enforcement actions" standard applies uniformly to all defendants who hold § 400.00(11) revocation and suspension authority, or whether

8

it can be applied asymmetrically based solely on the occupational title of the official to whom the Legislature assigned the licensing function.

### III.  The Amended Opinion Creates an Impermissible Geographic Asymmetry in the Availability of Official-Capacity § 1983 Claims Under § 400.00.

The Amended Opinion produces a result that has no basis in Article III doctrine, the text of § 400.00, or any principle of constitutional law: whether a New York resident can bring an official-capacity § 1983 claim challenging the constitutionality of § 400.00's licensing regime in federal court depends not on the nature of the constitutional right asserted, the severity of the injury suffered, or the text of the statute challenged — but on the county in which the resident happens to live.

Residents of New York City, Nassau County, and Suffolk County are served by police commissioners and sheriffs who, the Amended Opinion implies, have sufficient enforcement authority to be proper defendants in official-capacity § 1983 challenges to § 400.00. Residents of the remaining 55 counties — approximately 88% of New York's geography — are served by judge licensing officers and, under the Amended Opinion, cannot bring official-capacity claims in federal court against anyone who administers the § 400.00 licensing regime as to them, because their licensing officer is deemed to lack adversarial character.

This geographic disparity raises a question of exceptional constitutional importance. Both groups of residents hold the same Second Amendment rights. Both

9

groups are subject to the same § 400.00 eligibility criteria. Both groups face the same legal consequences from license denial. The sole variable is the bureaucratic structure the Legislature chose for administering the licensing function in each county. Article III's case-or-controversy requirement has never been understood to operate differently for identically situated plaintiffs asserting identical constitutional claims under the same statute, based solely on a legislative assignment of administrative functions.

The Amended Opinion's answer to this problem — that plaintiffs can pursue Article 78 proceedings in state court — does not resolve the constitutional question. Section 1983 provides a **federal** cause of action for constitutional violations, and the right to pursue that federal remedy does not depend on the availability of state remedies. The Amended Opinion's suggestion that state Article 78 proceedings are adequate substitutes for federal § 1983 official-capacity claims is inconsistent with the supremacy of federal law and the congressional intent underlying § 1983's enactment.

Moreover, Article 78 proceedings are not coextensive with official-capacity § 1983 claims. Article 78 review is limited to whether the licensing officer's determination was arbitrary and capricious or contrary to law. It does not provide the same scope of constitutional review available in a federal § 1983 action, and it cannot award the same forms of relief. The Amended Opinion acknowledges as

10

much when it notes that the Plaintiffs "*elected not to*" pursue Article 78 relief — an observation that confirms such relief was available but that does not transform it into a constitutional equivalent of federal § 1983 official-capacity review.

The en banc court should address whether Article III's adversity requirement can produce a geographically differentiated regime for federal constitutional review of the same statute, based solely on the identity of the official to whom state law assigns the licensing function. This question is not merely important — it is fundamental to the uniform application of constitutional rights across the Second Circuit.

## IV. The Amended Opinion's Footnote 12 Limitation Undermines the Holding's Internal Coherence and Suggests the Adversity Bar Is Not Categorical.

Footnote 12 of the Amended Opinion limits the holding to the specific record before the court, noting in particular that the Plaintiffs "failed to request any prospective relief in the form of requiring Judge Nichols to issue a license." This limitation carries significant implications for the adversity analysis that the Amended Opinion itself does not address.

If the Amended Opinion's adversity holding were truly categorical — if judge licensing officers can never be adverse parties in official-capacity § 1983 challenges to § 400.00 — the form of prospective relief sought would be irrelevant. A categorical adversity bar would apply regardless of whether the plaintiff sought a declaration, an injunction against future denials, or a mandatory order to issue a

11

license. Yet footnote 12 specifically reserves the question of whether a mandatory injunction *requiring* the licensing officer to issue a license would survive the adversity analysis.

This reservation is analytically significant. A mandatory injunction ordering Judge Nichols to issue a firearms license would directly implicate his § 400.00 authority to grant or deny license applications — the same authority the Amended Opinion characterized as non-adversarial in the context of the declaratory and prohibitory injunctive relief the Plaintiffs actually sought. If mandatory relief could establish adversity, the adversity barrier is not categorical but is instead contingent on the precise form of remedy requested.

This creates doctrinal instability that the en banc court should resolve. Under the Amended Opinion's framework, a plaintiff denied a firearms license by a judge licensing officer could potentially create Article III adversity simply by framing the relief as a mandatory order to issue the license rather than a declaration that § 400.00 is unconstitutional. Such a formal distinction — with identical practical effect on the licensing officer's conduct — cannot bear the constitutional weight the Amended Opinion places on it.

The en banc court should clarify: (1) whether the adversity bar for official-capacity § 1983 claims against judge licensing officers under § 400.00 is categorical or form-of-relief dependent; and (2) if it is form-of-relief dependent, what the

12

operative distinction is between mandatory relief (potentially permissible) and declaratory/prohibitory relief (held impermissible) when both forms of relief require the same licensing officer to apply § 400.00 in a constitutionally compliant manner.

The Amended Opinion's footnote 12 reservation opens this question without answering it, and the answer has practical significance for every § 1983 plaintiff challenging the constitutionality of § 400.00's upstate licensing regime.

## V. The Amended Opinion Conflicts with *Baughcum v. Jackson* on the Core Article III Adversity Question.

In *Baughcum v. Jackson*, 92 F.4th 1024 (11th Cir. 2024), the Eleventh Circuit held that Article III adversity existed between plaintiffs and Georgia probate judges who served as the statutory firearms licensing officers under Georgia law. The Eleventh Circuit reached this conclusion by applying the same functional adversity analysis the Amended Opinion purports to use, but reached the opposite result because it credited the licensing officer's enforcement function within the licensing statute itself.

The Eleventh Circuit's analysis in *Baughcum* proceeded as follows: under Georgia law, processing a weapons carry license was an administrative function the legislature assigned to probate judges; the probate judges were "responsible for issuing [concealed carry] licenses"; declaratory and injunctive relief against the probate judges was proper because "[t]he district court could, if the suit is

13

meritorious, order the probate judges to issue licenses to the plaintiffs..." *Baughcum*, 92 F.4th at 1032-33.

The Georgia licensing statute analyzed in Baughcum is functionally indistinguishable from New York's § 400.00. Both statutes assign the firearms licensing function to judicial officers. Both statutes vest those officers with discretion to grant or deny applications based on eligibility criteria. Both statutes make the licensing officer the sole source of relief for an applicant who wishes to obtain a license. Under *Baughcum*'s reasoning, the Plaintiffs here should have been permitted to maintain their official-capacity claims against Judge Nichols, because a federal court could — if the suit were meritorious — order Judge Nichols to issue licenses to the Plaintiffs.

The Amended Opinion does not acknowledge *Baughcum* in its adversity analysis, and does not distinguish it. The August 18, 2025 original Panel opinion cited *Baughcum* for the proposition that the Eleventh Circuit rejected the defendant judges' immunity argument in that case, but neither decision engaged with *Baughcum*'s adversity holding — which is directly on point for the official-capacity claim analysis.

The conflict between the Amended Opinion and *Baughcum* is not superficial. It goes to the core of how the functional adversity analysis applies to judicial officers exercising statutory licensing functions. If a Georgia probate judge issuing carry

licenses is an adverse party for Article III purposes, a New York county court judge issuing pistol licenses under a materially identical statute must also be an adverse party. The Amended Opinion's contrary conclusion cannot be reconciled with *Baughcum* without a principled explanation of the distinguishing legal principle — and the Amended Opinion offers none.

This inter-circuit conflict satisfies the en banc standard independently of the other grounds raised in this Petition. Fed. R. App. P. 35(a)(1) identifies conflict with "authoritative decisions of other United States courts of appeals" as a basis for en banc review. The conflict with *Baughcum* is direct, outcome-determinative, and unaddressed by the Amended Opinion.

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellants respectfully request that this Court grant rehearing en banc of the Amended Opinion dated March 5, 2026, limited to the question of whether the Plaintiffs' official-capacity § 1983 claims challenging the enforcement of New York Penal Law § 400.00 were properly dismissed for lack of Article III adversity.

En banc review is warranted because: the Amended Opinion acknowledged § 400.00(11) enforcement authority vested in judge licensing officers while refusing to determine whether that authority creates adversity; the Amended Opinion misapplies *Whole Woman's Health* by applying its adversity standard inconsistently

15

to defendants holding identical statutory enforcement authority; the Amended Opinion creates a geographically arbitrary regime that forecloses federal official-capacity review of § 400.00 for residents of 55 of New York's 62 counties; footnote 12's reservation raises unresolved questions about whether the adversity bar is categorical or form-of-relief dependent; and the Amended Opinion conflicts with the Eleventh Circuit's holding in *Baughcum v. Jackson* on materially identical facts.

Dated: March 19, 2026
      Scarsdale, New York

                                     Respectfully submitted,

                                     **THE BELLANTONI LAW FIRM, PLLC**
                                     *Attorneys for Plaintiffs-Appellants*

By:   *Amy L. Bellantoni*
              Amy L. Bellantoni
              2 Overhill Road, Suite 400
              Scarsdale, New York 10583
              abell@bellantoni-law.com

16

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g), I certify that this Petition for Rehearing En Banc:

1. Complies with the type-volume limitations of Fed. R. App. P. 40(d)(3) because it contains 3,361 words, excluding the cover page, tables of contents and authorities, and this certificate; and

2. Complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*Amy L. Bellantoni*

Amy L. Bellantoni

17